## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

GILBERTO PEREIRA BRITO,
FLORENTIN AVILA LUCAS, and JACKY
CELICOURT, individually and on behalf of
all those similarly situated,

*Plaintiffs-Petitioners*,

v.

WILLIAM BARR, Attorney General, U.S.
Department of Justice, MARCOS
CHARLES, Acting Field Office Director,
Enforcement and Removal Operations, U.S.
Immigration and Customs Enforcement,
MARK MORGAN, Acting Director, U.S.
Immigration and Customs Enforcement,
KEVIN MCALEENAN, Secretary, U.S.
Department of Homeland Security, JAMES
MCHENRY, Director, Executive Office of
Immigration Review, U.S. Department of
Justice, ANTONE MONIZ, Superintendent
of the Plymouth County Correctional
Facility, YOLANDA SMITH,
Superintendent of the Suffolk County House
of Correction, STEVEN SOUZA,
Superintendent of the Bristol County House
of Correction, CHRISTOPHER BRACKETT,
Superintendent of the Strafford County
Department of Corrections, and LORI
STREETER, Superintendent of the Franklin
County House of Corrections, in their official
capacities,

*Defendants-Respondents.*

Case No. _____

1

## HABEAS CORPUS PETITION AND
## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Liberty is supposed to be the norm throughout the American legal system, and detention a carefully limited exception.   In immigration proceedings, however, this principle is reversed.   Although these are civil proceedings, U.S. Immigration and Customs Enforcement (ICE) is jailing numerous alleged noncitizens—including Petitioners Gilberto Pereira Brito, Florentin Avila Lucas, and Jacky Celicourt—simply for failing to affirmatively prove, to the satisfaction of an immigration judge, that they should be free.   Courts have repeatedly held that such detention is unlawful, but the government's practice has not abated.   Unless this Court intervenes, ICE will continue to imprison the Petitioners and others like them without ever being required to prove that this imprisonment is necessary to protect public safety or ensure their appearance in immigration court.

2.      Petitioners bring this action to compel the government to provide constitutionally adequate detention hearings (colloquially known as "bond hearings" in immigration court) for them and a class of similarly situated people.   The proposed class would include all people who are or will be detained under 8 U.S.C. § 1226(a), either within Massachusetts or otherwise within the jurisdiction of the Boston Immigration Court.   On behalf of themselves and the class, Petitioners seek declaratory and injunctive relief that prohibits further detention without an adequate bond hearing.   That hearing is one in which the government bears the burden to prove

by clear and convincing evidence that detention is necessary because the detainee is a danger to others or a flight risk, and that there is no condition or combination of conditions that will reasonably assure the detainee's future appearance and the safety of the community, and which includes consideration of the detainee's ability to pay in selecting the amount of any bond and suitability for release on alternative conditions of supervision.

## PARTIES

3.      Petitioner[1] Gilberto Pereira Brito is a resident of Brockton, Massachusetts.  He has been held in immigration detention since March 3, 2019.  He is currently detained by ICE at Plymouth County Correctional Facility in Plymouth, Massachusetts.

4.      Petitioner Florentin Avila Lucas is a resident of Claremont, New Hampshire.  He has been held in immigration detention since March 20, 2019.  He was initially detained at the Strafford County Department of Corrections in Dover, New Hampshire.   He was then transferred by ICE to the Plymouth County Correctional Facility in Plymouth, Massachusetts, where he is currently detained.

5.      Petitioner Jacky Celicourt is a resident of Nashua, New Hampshire.  He has been held in immigration detention since January 16, 2019.  He was initially detained at the Strafford County Department of Corrections in Dover, New Hampshire.  He was then transferred by ICE to the Plymouth County Correctional Facility in Plymouth, Massachusetts, where he is currently detained.

---

[1] Plaintiffs-Petitioners will be referred to throughout as "Petitioners," and Defendants-Respondents will be referred to throughout as "Respondents."

6.    Respondent Antone Moniz is the Superintendent of the Plymouth County Correctional Facility, and is the immediate custodian of Mr. Avila Lucas, Mr. Pereira Brito, Mr. Celicourt, and numerous members of the putative class.  He is sued in his official capacity.

7.    Respondent Yolanda Smith is the Superintendent of the Suffolk County House of Correction, and is the immediate custodian of numerous members of the putative class.  She is sued in her official capacity.

8.    Respondent Steven Souza is the Superintendent of the Bristol County House of Correction, and is the immediate custodian of numerous members of the putative class.  He is sued in his official capacity.

9.    Respondent Lori Streeter is Superintendent of the Franklin County Jail and House of Correction, and is the immediate custodian of numerous members of the putative class.  She is sued in her official capacity.

10.    Respondent Christopher Brackett is the Superintendent of the Strafford County Department of Corrections in Dover, New Hampshire, and is the immediate custodian of numerous members of the putative class.  He is sued in his official capacity.

11.    Respondent Marcos Charles is the Acting Field Office Director for the Boston Field Office of ICE's Enforcement and Removal Operations (ERO), located in Burlington, Massachusetts.  He is sued in his official capacity.  The Boston Field Office is responsible for and has authority over ICE's apprehension, detention, and removal operations in Massachusetts, New Hampshire, Connecticut, Rhode Island,

Maine, and Vermont.  Mr. Charles is the immediate legal custodian of Petitioners and all members of the putative class.

12.     Respondent Mark Morgan is the Acting Director of ICE.   In this capacity, he directs all ICE operations.   As a result, Respondent Morgan has responsibility for the administration of the immigration laws, and is a legal custodian of the Petitioners.  He is sued in his official capacity.

13.     Respondent Kevin McAleenan is the Acting Secretary of the U.S. Department of Homeland Security (DHS).   In this capacity, he directs each of the component agencies within DHS, including ICE.  As a result, Respondent McAleenan has responsibility for the administration of the immigration laws, and is a legal custodian of the Petitioners.  He is sued in his official capacity.

14.     Respondent James McHenry is the Director of the Executive Office for Immigration Review (EOIR), a component of the U.S. Department of Justice.  In this capacity, he is responsible for the policies and operations of the immigration courts. He is sued in his official capacity.

15.     Respondent William Barr is the Attorney General of the United States. In this capacity, he is responsible for the policies and operations of the U.S. Department of Justice, including EOIR.  He is sued in his official capacity.

## **JURISDICTION AND VENUE**

16.     This Court has jurisdiction, including pursuant to 28 U.S.C. §§ 2241 *et seq*., Art. I § 9, cl. 2 of the U.S. Constitution (the Suspension Clause), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1361 (mandamus statute).

17.     Venue is proper under 28 U.S.C. §§ 1391(b)(2) and (e), and 28 U.S.C. §§ 2241 *et seq*.  Petitioners and most members of the putative class are detained within this District, and a substantial part of the events giving rise to the claims and relevant facts occurred within this District, including the activities and decisions of the Boston Immigration Court and the Boston Field Office of ICE-ERO.  Respondent Charles is located within this District and possesses day-to-day authority over the custody of Petitioners and all class members.

## DETENTION UNDER THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1226(a)

18.     Although individuals detained under 8 U.S.C. § 1226(a) are eligible for release on bond, the government places the burden of proof in the bond hearing on the individual, and fails to consider whether conditions of release can mitigate risk or whether a bond amount is within an individual's ability to pay.  These inadequate bond hearings violate Petitioners' constitutional and statutory rights.

19.     Immigration removal proceedings begin when ICE accuses a person of being a noncitizen subject to being removed (commonly, "deported") from the United States.  The person may contest that they are subject to deportation, and may also apply for various forms of relief from deportation.  Many people placed in removal proceedings will not ultimately be deported.  However, it takes months or years for the courts to decide if a person should be deported or if they are legally entitled to remain in the United States.

20.     The government's authority to jail people during their removal proceedings is generally governed by 8 U.S.C. § 1226.  Those people are eligible to be

released on bond under 8 U.S.C. § 1226(a) unless they are subject to a mandatory detention provision, 8 U.S.C. § 1226(c), which prohibits release on bond for noncitizens who are removable on the basis of certain criminal or national security grounds.

21.    ICE makes an initial custody determination to decide if an individual should be detained or released on bond or other conditions of supervision.  8 C.F.R. § 1236.1(c)(8).

22.    The individual may then request a custody redetermination of ICE's decision from an immigration judge, through what is colloquially referred to as a "bond hearing."[2]  *See* 8 C.F.R. § 1236.1(d)(1).

23.    Neither the statute nor the regulations require the individual to bear any burden of proof in his or her bond hearing.  Indeed, from 1976 to 1999, the Board of Immigration Appeals (BIA)—which makes controlling precedent for immigration judges—held that "[a]n alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security, or that he is a poor bail risk," and required that the government provide reasons to justify detention.  *See Matter of Patel*, 15 I&N Dec. 666, 666-67 (BIA 1976) (citations omitted).

24.    In 1999, the BIA arbitrarily reversed course and made detainees bear the burden of proof in bond hearings.  *See Matter of Adeniji*, 22 I&N Dec. 1102 (BIA

---

[2] Consistent with the usual terminology, a detention hearing in immigration court will be referred to throughout as a "bond hearing."  To be clear, however, the "bond hearing" requested through this action would include consideration of conditions of release other than a monetary bond.

1999).  In doing so, the BIA failed to provide a reasoned explanation for reversing its prior precedent, and incorrectly relied upon an inapplicable regulation contained in 8 C.F.R. § 236.1(c)(8).  *See id.*  Under *Adeniji* and its progeny, the BIA currently requires that people seeking release prove to the satisfaction of an immigration judge that they do not pose a danger to property or persons, and are likely to appear for any future proceeding.  *See id.* at 1113; *see also* Ex. A (Noureddine Aff't) ¶¶3-5; *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006).

25.     Consequently, ICE routinely holds allegedly removable people in jail without ever being required to show that such detention is necessary.  These people may receive bond hearings before immigration judges.  However, at those hearings, the *individuals* bear the burden to prove that they should *not* be jailed because they are *not* a danger to the community and *not* a flight risk.  People are being deprived of freedom—jailed, and separated from their families and livelihoods—because they cannot prove a negative.

26.     Furthermore, individuals who satisfy this unfair evidentiary burden may face an additional hurdle: their release is routinely conditioned on a bond set without consideration of their ability to pay.  *See* Ex. A (Noureddine Aff't) ¶6; *see also Guerra*, 24 I. & N. Dec. at 40 (enumerating factors that the immigration judge may consider in setting bond, without mention of ability to pay).  Bail set beyond a person's ability to pay is simply a *de facto* detention order.  Nor do immigration judges generally consider individuals for alternative conditions of release that do not require the posting of bond.

27.     Courts have repeatedly held that the government is violating detainees'
constitutional rights by providing these flawed bond hearings.  *See Pensamiento v.
McDonald*, 315 F. Supp. 3d 684, 692 (D. Mass. 2018), *appeal dismissed by gov't*, No.
18-1691 (1st Cir. Dec. 26, 2018); *Padilla v. ICE*, No.18-928, 2019 WL 1506754, at *9
(W.D. Wash. Apr. 5, 2019); *Doe v. Tompkins*, No. 18-12266, 2019 U.S. Dist. LEXIS
22616, at *3 (D. Mass. Feb. 12, 2019), *appeal noticed*, No. 19-1368 (1st Cir.); *Diaz Ortiz
v. Tompkins*, No. 18-12600, 2019 U.S. Dist. LEXIS 14155, at *1 (D. Mass. Jan. 29,
2019), *appeal noticed*, No. 19-1324 (1st Cir.); *Brevil v. Jones*, No. 17-1529, 2018 WL
5993731, at *4 (S.D.N.Y. Nov. 14, 2018); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435
(S.D.N.Y. 2018); *Alvarez Figueroa v. McDonald*, No. 18-10097, 2018 WL 2209217, at
*5 (D. Mass. May 14, 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 990-94 (9th
Cir. 2017); *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Lett v. Decker*, 346
F. Supp. 3d 379, 389 (S.D.N.Y. 2018), *appeal noticed*, No. 18-3714 (2d Cir.); *Brissett
v. Decker*, 324 F. Supp. 3d 444, 454 (S.D.N.Y. 2018).[3]

28.     Nevertheless, in this District and elsewhere, the government continues
to make individuals bear the burden of proof when they seek release from detention,
and to detain individuals on bond without consideration of their financial
circumstances or suitability for alternative conditions of release.  *See* Ex. A
(Noureddine Aff't) ¶¶4-6.

29.     Unless this Court orders class-wide relief, the government's practices
will routinely deny fundamental due process to immigration detainees.  To comport

---

[3] *Cf.* 18 U.S.C. § 3142(c)(2); *United States v. Mantecon-Zayas*, 949 F.2d 548, 551 (1st
Cir. 1991).

with the Due Process Clause and other governing law, at a bond hearing for an 8 U.S.C. § 1226(a) detainee, the government must be required to prove by clear and convincing evidence: (1) that the detainee is a danger to others or a flight risk; and (2) that no condition or combination of conditions will reasonably assure his/her future appearance and the safety of the community.   Additionally, where an immigration judge determines that release on bond is warranted, the immigration judge must consider the detainee's ability to pay the bond before determining the bond amount, as well as whether alternative, nonmonetary conditions are sufficient to permit his or her release.

30.     As described below, Petitioners' continued civil detention is unlawful because they have not received a bond hearing that meets these standards.  Instead, each received a bond hearing in which the immigration court placed the burden of proof on him.  Each was prejudiced by the government's error and remains detained.

## STATEMENT OF FACTS

**I.     Petitioner Gilberto Pereira Brito is not dangerous, does not present a flight risk, and was prejudiced by a flawed bond hearing.**

31.     Petitioner Gilberto Pereira Brito has been detained under 8 U.S.C. § 1226(a) since March 3, 2019. Although he is the primary breadwinner and support for three U.S. citizen children and a U.S. citizen wife with serious health problems, an immigration judge denied him bond based on motor vehicle charges from more than a decade ago.

32.     Mr. Pereira Brito is 39 years old and lives in Brockton, Massachusetts, with his wife and three children, ages 10 years old, 4 years old, and 11 months old.

33.     Mr. Pereira Brito's wife is disabled and cannot work.  His family depends on him to support the family financially.   Before being detained, he worked as a painter and in light construction.  Without him, his family is unable to pay their rent and other expenses.

34.     Mr. Pereira Brito was born in Brazil.  He entered the United States in April 2005 and was apprehended shortly thereafter.  He was released on personal recognizance and given a putative Notice to Appear.  However, the putative Notice to Appear did not provide him with the date, time, and place of his scheduled hearing, but rather purported to order him to appear at the JFK Federal Building at 1:30 a.m., when the immigration court was not in session and no hearing was scheduled.  A removal order entered the next day *in absentia*.

35.     In 2007, Mr. Pereira Brito was pulled over in Dorchester, Massachusetts, and charged with unlicensed operation of a motor vehicle and operation of a motor vehicle under the influence of alcohol.  In August 2008, he admitted sufficient facts, and the case was continued without a finding until July 2009.[4]

36.     In May 2009, Mr. Pereira Brito was charged in Hingham, Massachusetts, with driving after suspension of his license.  He was released on personal recognizance at arraignment.  Mr. Pereira Brito misunderstood the judge's instructions and was incorrectly under the impression that the case was resolved.  It

---

[4] Police also initially alleged that a marijuana cigarette was found in the vehicle (which had three passengers when it was pulled over, in addition to Mr. Pereira Brito), but the possession charge against Mr. Pereira Brito was dropped at the request of the Commonwealth.

appears a default entered in June 2009, although the Commonwealth took no further action.  It also appears that this charge triggered a violation of probation notice in the original 2007 case.  But the notice was mailed to the wrong address, and Mr. Pereira Brito was not aware of it.

37.     Since May 2009—more than a decade ago—Mr. Pereira Brito has not been arrested, and has not been charged with or convicted of any crimes.

38.     ICE arrested Mr. Pereira Brito at his home on March 3, 2019.  Mr. Pereira Brito has been held in immigration detention continuously since that time, now more than three months.

39.     After being detained, Mr. Pereira Brito filed a motion to reopen his removal proceeding.  That motion was granted by the immigration court on or about March 18, 2019.

40.     Mr. Pereira Brito intends to apply for relief, including cancellation of removal, a defense to removal that is available to certain individuals who have been in the United States for more than 10 years and have U.S. citizen family members who would suffer an "exceptional and extremely unusual hardship" if the noncitizen were removed.[5]

41.     On April 4, 2019, Mr. Pereira Brito received a bond hearing before an immigration judge in the Boston Immigration Court pursuant to 8 U.S.C. § 1226(a). The immigration judge required that, in order to be released on bond, Mr. Pereira

---

[5] Mr. Pereira Brito is also the beneficiary of an approved I-130, Petition for Alien Relative, filed by his wife.  That petition could become the basis for an application for lawful permanent resident status at a future date.

Brito bear the burden to prove that he is not a danger or flight risk. *See* Ex. B (memorandum of bond decision).

42. In connection with that bond hearing, Mr. Pereira Brito's counsel submitted an affidavit by his wife, Darcy Pereira Brito. *See* Ex. C (D. Pereira Brito Aff't). His counsel also submitted medical documentation and Social Security Administration documentation relating to her disability. Additionally, his counsel filed documents demonstrating his strong ties to the community, including letters of support and family photographs. *See, e.g.*, Exs. D & E. For example, Dr. Nancy Chapin, the family's pediatrician, explained that "without [Mr. Pereira Brito's] emotional and financial support his family would suffer tremendously." *See* Ex. D.

43. At the bond hearing, Mr. Pereira Brito learned that his 2007 and 2009 cases were still open, and that the government was relying on these decade-old cases as bases to argue that he should remain detained.

44. The immigration judge denied bond. In a subsequent explanatory decision, the immigration judge acknowledged that Mr. Pereira Brito "has been in the United States for over a decade, has a fixed address, and has existing family ties." However, the court nevertheless ruled that Mr. Pereira Brito "did not meet his burden to demonstrate that he neither poses a danger to the community nor is a risk of flight," based on the two decade-old cases and his purported failure to demonstrate that "he has a strong case for eligibility for relief from removal." *See* Ex. B (memorandum of bond decision).

45.     Mr. Pereira Brito appealed this decision to the BIA on or about May 3, 2019.  The appeal remains pending.

46.     On May 30, 2019, Mr. Pereira Brito's immigration attorney filed a motion for a new bond hearing based on a change in circumstances, including his wife's deteriorating medical condition.  The motion was denied on or about June 10, 2019.

47.     While detained, Mr. Pereira Brito has engaged criminal defense counsel to help him resolve the two old cases.  The violation of probation proceeding in the 2007 case has now been dismissed, and the case is therefore resolved.  The 2009 case is scheduled for a hearing on June 17, 2019, at which time it will likely be resolved.

48.     Mr. Pereira Brito's immigration proceedings have been pending since March and will likely continue for some time.  His next hearing is currently scheduled for June 28, 2019.

49.     Without an adequate bond hearing, Mr. Pereira Brito will likely remain detained throughout the pendency of these proceedings.  He has already been in jail for more than three months.

50.     Had Mr. Pereira Brito received an adequate bond hearing, he could have—and likely would have—been released. Mr. Pereira Brito was prejudiced by the error.

## II.     Petitioner Florentin Avila Lucas is not dangerous, does not present a flight risk, and was prejudiced by a flawed bond hearing.

51.     Petitioner Florentin Avila Lucas has been detained pursuant to 8 U.S.C. § 1226(a) since March 20, 2019.  He has never been charged with or convicted of any

crime. Since 2006, he has lived and worked at the same dairy farm in Claremont, New Hampshire. Nevertheless, an immigration judge denied him bond based on the government's allegation that—when approached and questioned by a plainclothes Border Patrol agent at a thrift store—he did not immediately permit himself to be handcuffed.

52.     Mr. Avila Lucas is 40 years old. He works 60 to 70 hours per week.

53.     On March 20, 2019, Mr. Avila Lucas drove with a friend into Lebanon, New Hampshire. Mr. Avila Lucas planned to take his friend out for lunch for his birthday. Lebanon is located approximately 95 miles south of the U.S.-Canada border.

54.     In Lebanon, Mr. Avila Lucas and his friend stopped at a thrift store so that his friend could buy some new work clothes.

55.     Mr. Avila Lucas was unaware that two plainclothes Border Patrol agents in an unmarked vehicle were conducting a surveillance operation in the area. The agents trailed his vehicle and followed him into the store.

56.     While Mr. Avila Lucas was in the store, one of the Border Patrol agents approached him and asked him to step out to the parking lot. In the parking lot, the agent asked Mr. Avila Lucas several questions. The agent then grabbed Mr. Avila Lucas, pushed him to the ground, handcuffed him, and took him into custody.

57.     On or about March 26, 2019, the government served Mr. Avila Lucas with a Notice to Appear charging that he is a removable alien and seeking his deportation to Guatemala.

58.    On May 2, 2019, Mr. Avila Lucas received a bond hearing before an immigration judge in the Boston Immigration Court pursuant to 8 U.S.C. § 1226(a). The immigration judge required that, in order to be released on bond, Mr. Avila Lucas bear the burden to prove that he is not a danger or flight risk.

59.    In connection with that bond hearing, Mr. Avila Lucas's counsel submitted letters from members of the Claremont community attesting to his good character and work ethic.  The family that operates the dairy farm where Mr. Avila Lucas works described him as "a valued part of our team and like family to us," extolled his "quiet, calm demeanor," and noted that "[h]is moral conduct is something we should all strive for" and that "[t]he work ethic he shows on a daily basis is one not often seen in today's society." *See* Ex. F (letters).

60.    Also in connection with that bond hearing, the government submitted reports of Mr. Avila Lucas's arrest prepared by the Border Patrol agents.  Among other things, these documents assert that, when the Border Patrol agent—who was not in uniform, and was operating far from any international boundary—first showed Mr. Avila Lucas the handcuffs, Mr. Avila Lucas withdrew his hands and stepped away.  The documents further claim that the Border Patrol agent then pulled Mr. Avila Lucas to the ground, and that Mr. Avila Lucas had his hands under his body and said "no" when instructed to withdraw them.  The documents state that "[a]fter a short time," Mr. Avila Lucas was handcuffed and became cooperative.  *See* Ex. G.

61.    Despite the fact that Mr. Avila Lucas has no criminal record and is an established member of his community, the immigration judge denied Mr. Avila

Lucas's request for release.   Instead, based upon the Border Patrol agents' allegations, the immigration judge ruled that Mr. Avila Lucas "failed to meet his burden of proof to show that he is not a danger or flight risk." *See* Ex. H (May 2, 2019 Order).

62.     Mr. Avila Lucas appealed this decision to the BIA on or about May 30, 2019.  The appeal remains pending.

63.     Mr. Avila Lucas's immigration proceedings have been pending since March and will likely continue for some time.  Mr. Avila Lucas has filed a motion to suppress various evidence—including evidence that the government is relying upon to prove his alienage—based upon the government's egregious violations of law in connection with his interrogation and arrest on March 20, 2019.  *See* Ex. I (motion to suppress and declaration of Mr. Avila Lucas).  A hearing is currently scheduled for June 18, 2019.  If that motion is denied, or the government is otherwise able to prove that Mr. Avila Lucas is a removable alien, then Mr. Avila Lucas expects to apply for relief from removal, including withholding of removal based on a likelihood of persecution if he is deported to Guatemala.

64.     Without an adequate bond hearing, Mr. Avila Lucas will likely remain jailed throughout the pendency of these proceedings.  He has already been in jail for almost three months.

65.     Had Mr. Avila Lucas received an adequate bond hearing, he could have—and likely would have—been released.  Mr. Avila Lucas was prejudiced by the error.

### III.   Petitioner Jacky Celicourt is not dangerous, does not present a flight risk, and was prejudiced by a flawed bond hearing.

66.   Petitioner Jacky Celicourt has been detained under 8 U.S.C. § 1226(a) since January 16, 2019.  Mr. Celicourt fled to the United States to escape political persecution after being the victim of an attempted murder.  The immigration judge denied him bond based on an allegation that he had attempted to steal a pair of headphones worth $5.99.

67.   Mr. Celicourt is 37 years old.  He resides in Nashua, New Hampshire. Before being detained, he worked in construction.

68.   Mr. Celicourt was born in Haiti.  He was a volunteer and political activist for one of Haiti's political parties, including during the turbulent election period in 2015 and 2016.

69.   In 2017, Mr. Celicourt was the target of an attempted murder based on his political activity.  He fled the country in December 2017, and resided briefly in the Dominican Republic.  In March 2018, he entered the United States on a tourist visa.

70.   About nine months later, in December 2018, Mr. Celicourt went to a discount store in Nashua, New Hampshire, to purchase socks and gloves for work. While he was there, he decided to also purchase a pair of $5.99 earbuds.  He received a phone call while in the store, and used the earbuds to answer the call.  He then placed the earbuds in his pocket.

71.   When Mr. Celicourt went to the checkout counter, he paid for his gloves and socks, but he forgot about the earbuds.  A store employee asked him about the

earbuds, and he offered to pay for them.  Instead, the employee demanded his identification.  When the employee saw his Haitian identification documents, she told him, "I don't want your money, I want you deported back to your country," or words to that effect.  She called the police.

72.   The police charged Mr. Celicourt with a single count of Theft by Unauthorized Taking between $0 and $1,000.   He was released on personal recognizance.  *See* Exs. J (docket) & K (bail order).

73.   On January 16, 2019, Mr. Celicourt appeared as required in the Nashua district court in Nashua, New Hampshire, to respond to the charge.  Mr. Celicourt pled guilty and was fined $310.[6]  *See* Ex. J (docket).  ICE arrested him as he walked out of the courtroom.

74.   Shortly after he was arrested by ICE, the government served Mr. Celicourt with a Notice to Appear charging that he is a removable alien and seeking his deportation to Haiti.

75.   On February 7, 2019, Mr. Celicourt received a bond hearing before an immigration judge in the Boston Immigration Court pursuant to 8 U.S.C. § 1226(a). The immigration judge required that, in order to be released on bond, Mr. Celicourt bear the burden to prove that he is not a danger or flight risk.

76.   In connection with that bond hearing, Mr. Celicourt's counsel submitted eight letters of support from friends.  The letters described Mr. Celicourt as "a very excellent person to everyone," "a very hard working gentleman," "kind with my

---

[6] Court staff have informed counsel that the fine was suspended for one year.

children," and "one of the most helpful human being[s] that I know." *See* Ex. L (letters of support).

77.     At the bond hearing, the government submitted no evidence of any criminal history except for Mr. Celicourt's recent arrest and conviction for neglecting to pay for less than six dollars' worth of merchandise, which the government asserted was a "crime of moral turpitude."   *See* Ex. M (bond hearing transcript) & N (bond order).

78.     The immigration judge denied bond.  The judge found that Mr. Celicourt had "failed to meet his burden of proof to show he is not a danger to property or a flight risk" because he had been convicted of taking the $5.99 earbuds, had overstayed his visa, and had worked without employment authorization.  *See* Ex. M (bond hearing transcript) & N (bond order).

79.     Mr. Celicourt's immigration proceedings have been pending since January and will likely continue for some time.  Mr. Celicourt applied from asylum and withholding of removal based on his persecution and the attempt to murder him in Haiti.  On April 10, 2019, the immigration judge found that Mr. Celicourt was "a credible witness," but nevertheless denied his application.  Mr. Celicourt appealed the denial to the BIA on or about May 9, 2019.  That appeal remains pending.  The appeal may result in Mr. Celicourt being granted asylum, or in his case being remanded to the immigration judge for further proceedings, or (if the denial of asylum is affirmed) in his filing a petition for review in the U.S. Court of Appeals for the First Circuit.

80.     Mr. Celicourt remains detained pursuant to 8 U.S.C. § 1226(a) and eligible for release.

81.     Without an adequate bond hearing, Mr. Celicourt will likely remain detained throughout the pendency of these proceedings.  He has already been in jail for almost six months.

82.     Had Mr. Celicourt received an adequate bond hearing, he could have— and likely would have—been released. Mr. Celicourt was prejudiced by the error.

## CLASS ALLEGATIONS

83.     The foregoing allegations are re-alleged and incorporated herein.

84.     Petitioners seek to represent a class defined as people who, now or at any future time, are detained pursuant to 8 U.S.C. § 1226(a), and either are being held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court.  The class thus includes individuals who are detained in New Hampshire, or other New England states, but appear in the Boston Immigration Court for their bond hearings and removal proceedings.  It also includes individuals who are detained in western Massachusetts but appear in the Hartford Immigration Court.  The members of the class are readily ascertainable through Respondents' records.

85.     Petitioners bring this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), and as a representative habeas class action, on behalf of themselves and all other similarly-situated persons who are either are being held in immigration

detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court.

86.     The class is so numerous that joinder of all members is impracticable. Publicly available information concerning the number of ICE detainees in Massachusetts and New Hampshire indicates that the portion of the class consisting of current detainees under 8 U.S.C. § 1226(a) consists of at least several hundred individuals.  In the past six months alone, at least 268 bond hearings in the Boston and Hartford immigration courts resulted in a denial of bond.  The class is substantially larger when all future potential detainees under § 1226(a) are included.

87.     There are multiple questions of law and fact common to the members of the proposed class. These common questions include, but are not limited to, the following:

    a.     Whether Respondents are violating the Petitioners' and the class members' due process rights by detaining them without a hearing in which the government bears the burden to prove the necessity of detention, and by failing to consider their ability to pay in determining the appropriate amount of bond and to determine if they may be released on alternative conditions of supervision;

    b.     Whether Respondents' bond hearing practices violate Petitioners' statutory rights.

88.     Petitioners' claims are typical of the claims of the proposed class, and Petitioners will fairly and adequately protect the interests of the proposed class.

Petitioners' interests do not conflict with those of other members of the proposed class, and Petitioners have retained competent counsel experienced in class actions and immigration law.

89.     Moreover, certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because class members are subject to a common practice by Respondents: subjecting them to detention based upon an inadequate bond hearing at which the detainee bears the burden of establishing that he or she is not a flight risk and does not pose a danger to the community.

## CLAIMS FOR RELIEF

### Count One – Detention in Violation of the U.S. Constitution

90.     The foregoing allegations are re-alleged and incorporated herein.

91.     Petitioners, and all members of the putative class, are or will be subjected to detention without a bond hearing at which the government bears the burden to justify continued detention by proving by clear and convincing evidence that the detainee is a danger to others or a flight risk, and, even if he or she is, that no condition or combination of conditions will reasonably assure the detainee's future appearance and the safety of the community, and which includes consideration of the detainee's ability to pay in selecting the amount of any bond and suitability for release on alternative conditions of supervision.

92.     Petitioners, and all members of the putative class, are or will be detained without receiving a bond hearing that satisfies the requirements of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

## Count Two – Detention in Violation of the Immigration and Nationality Act and the Administrative Procedures Act

93.     The foregoing allegations are re-alleged and incorporated herein.

94.     Petitioners, and all members of the putative class, are or will be detained in violation of the Immigration and Nationality Act and the Administrative Procedures Act.  The BIA decision establishing the present burden allocation, *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999), constituted a departure from prior precedent without reasoned explanation, and incorrectly relied upon inapplicable regulations.

## **PRAYER FOR RELIEF**

Wherefore, Petitioners asks this Court to grant them the following relief:

1. Enter an order compelling the release of each named Petitioner unless, within seven days of this Court's order, he is provided with an adequate bond hearing as described in paragraph 4, below.

2. Certify a class defined as: All people who, now or at any future time, are detained pursuant to 8 U.S.C. § 1226(a), and either are being held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court.

3. Name the individually named Petitioners as representatives of the class, and appoint Petitioner's counsel as class counsel.

4. Declare that each class member is entitled to a bond hearing at which the government bears the burden to justify continued detention by proving by clear and convincing evidence that the detainee is a danger to others or a flight risk, and, even if he or she is, that no condition or combination of conditions will reasonably assure the detainee's future appearance and the safety of the community, and which includes consideration of the detainee's ability to pay in selecting the amount of any bond and suitability for release on alternative conditions of supervision.

5. Order that each class member be released unless provided with a bond hearing consistent with paragraph 4 within a reasonable period, determined by the Court, after this order enters or after their detention under 8 U.S.C. § 1226(a) begins.

6.  Grant attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504 *et seq.*, if applicable; and

7.  Grant any other and further relief that this Court may deem fit and proper.

Dated: June 13, 2019

Respectfully submitted,

GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, and JACKY CELICOURT, individually and on behalf of all those similarly situated,

By and through their counsel,

   */s/ Susan M. Finegan*
Susan M. Finegan (BBO # 559156)
Susan Cohen (BBO # 546482)
Andrew Nathanson (BBO # 548684)
Mathilda S. McGee-Tubb (BBO # 687434)
Ryan Dougherty (BBO # 703380)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
smfinegan@mintz.com
sjcohen@mintz.com
annathanson@mintz.com
msmcgee-tubb@mintz.com
rtdougherty@mintz.com

Matthew R. Segal (BBO# 654489)
Daniel L. McFadden (BBO# 676612)
Adriana Lafaille (BBO# 680210)

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
211 Congress Street
Boston, MA 02110
Tel: (617) 482-3170
msegal@aclum.org
dmcfadden@aclum.org
alafaille@aclum.org

Gilles R. Bissonnette (BBO # 669225)
Henry R. Klementowicz (BBO # 685512)
SangYeob Kim (N.H. Bar No. 266657)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NEW HAMPSHIRE
New Hampshire Immigrants' Rights Project
18 Low Ave.
Concord, NH 03301
Tel.: 603.333.2081
gilles@aclu-nh.org
henry@aclu-nh.org
sangyeob@aclu-nh.org

Michael K. T. Tan*
ACLU FOUNDATION IMMIGRANTS'
RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Tel: 212-549-2660
mtan@aclu.org

*Application for admission pro hac vice
forthcoming

*Attorneys for Petitioners*