# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, JACKY CELICOURT, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | C.A. No. 1:19-cv-11314-PBS |
| WILLIAM P. BARR, U.S. Attorney General, *et. al*, | ) ) | |
| Respondents. | ) ) | |

## <u>RESPONDENTS' OPPOSITION<br>TO PETITIONERS' MOTION FOR CLASS CERTIFICATION</u>

# I.   INTRODUCTION

In this putative class action, Petitioners allege that the procedures that have governed custody redetermination hearings (or "bond hearings") under 8 U.S.C. § 1226(a) for nearly 20 years violate their right to due process. *See, generally,* ECF No. 1. Respondents oppose Petitioners' motion for class certification, because, regardless of their merit, the due process claims set forth in the complaint are not amenable to classwide resolution. *See* ECF Nos. 17, 18.

The Court should refuse to certify the proposed class for several reasons. First, as a threshold matter, 8 U.S.C. § 1252(f)(1) precludes the Court from exercising jurisdiction to grant classwide injunctive relief and corresponding declaratory relief. *See Jennings v. Rodriguez*, 138 S. Ct. 838, 851 (2018). Indeed, Petitioners seek both injunctive relief and corresponding declaratory relief in this matter. But 8 U.S.C. § 1252(f)(1) bars this Court from considering these claims.

Second, even if Petitioners' claims were not subject to the statutory bar of 8 U.S.C. § 1252(f)(1), their proposed class still fails to meet Rule 23's express requirements. Particularly, the Petitioners' proposed class cannot satisfy the commonality and typicality requirement. Instead, the relief they seek requires a fact-dependent inquiry to determine whether a constitutional error, if any, resulted in prejudicial injury for each and every individual petitioner. At the outset of Petitioners' memorandum in support of class certification, Petitioners cite several of this Court's prior decisions in cases where *individuals* brought similar challenges to the detention procedures under custody redetermination hearings under 8 U.S.C. § 1226(a). *See* ECF No. 18 at 1 (citing *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 692 (D. Mass. 2018); *Figueroa v. McDonald*, No. CV 18-10097-PBS, 2018 WL 2209217, at *14 (D. Mass. May 14, 2018); *Doe v. Tompkins*, No. 1:18-cv-12266, 2019 U.S. Dist. LEXIS 22616 at *2 (D. Mass. Feb.

12, 2019); *Diaz Ortiz v. Tompkins*, No. 1:18-cv-12600, 2019 U.S. Dist. LEXIS 14155 at *2 (D.

Mass. Jan. 29, 2019)). Each of these very decisions, however, reflects an individualized

determination of whether a detainee was prejudiced by the rule that requires the detainee to bear

the burden at a bond hearing. Thus, those cases demonstrate that the required fact-dependent

inquiry undermines the commonality and typicality requisites under Rule 23.

Third, the named Petitioners are inadequate class representatives because they have

already been issued new bond determinations and have since been released. Further, applying the

required fact-dependent prejudice analysis would show that some Petitioners may have much

stronger claims than others under the required fact-dependent prejudice analysis.

Finally, Rule 23(b)(2) precludes Petitioners' proposed class. Determining whether

placing the burden on an alien detained under Section 1226(a) in a bond hearing violates the Due

Process Clause of the Constitution would require a fact-dependent inquiry that would necessarily

vary depending on individual circumstances. Thus, no blanket class relief would resolve every

individual circumstance for each petitioner. Consequently, Rule 23(b)(2) precludes certification

of Petitioners' proposed class.

To the extent Petitioners bring an alternative statutory claim under the Immigration and

Nationality Act ("INA") or the Administrative Procedure Act ("APA") challenging the Board of

Immigration Appeals ("BIA") decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999),

*see* ECF No. 1 at ¶¶ 93-94, the named Petitioners are inadequate class representatives because

they are not in fact detained, and therefore lack a live interest in the resolution of this issue.

For these reasons, this Court should deny Petitioners' motion for class certification.

## II.     FACTUAL AND PROCEDURAL HISTORY

On June 13, 2019, Petitioners filed a petition for a writ of habeas corpus and complaint for declaratory judgment. ECF No. 1. Petitioners' habeas petition asserts two primary claims: first, that the Due Process Clause of the Fifth Amendment of the Constitution requires that the Government bear the burden of proof to justify continued detention of an alien detained under 8 U.S.C. § 1226(a) by proving by clear and convincing evidence that the alien is a danger to others or a flight risk; and second, that detention without placing the burden on the Government violates the INA and the APA. *See, id.*[1] Petitioners' complaint included three named petitioners: Mr. Gilberto Pereira Brito, Mr. Florentin Avila Lucas, and Mr. Jacky Celicourt. *Id.* On June 18, 2019, Petitioners moved to certify a class, which they define as including "[a]ll people who, now or in the future, are detained pursuant to 8 U.S.C. § 1226(a), and are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court." ECF No. 17 at 2.

On June 25, 2019, Respondents moved this Court to stay all deadlines and hold proceedings in this case in abeyance pending the United States Court of Appeals for the First Circuit decision in *Doe v. Smith, et al*, No. 19-1368 (1st Cir. Apr. 18, 2019) (appealing this Court's decision in *Doe v. Smith, et al*, No. 1:18-cv-12266-PBS (D. Mass., Feb. 12, 2019)). Indeed, both this case and *Doe* present the identical question of whether the existing procedures for bond hearings held pursuant to 8 U.S.C. § 1226(a) satisfy the Due Process Clause of the Fifth

---

[1] Petitioners also assert various ancillary arguments relating to alternative means to detention. ECF No. 1 at ¶¶ 18, 26-29, 91. But for the purposes of this motion, the Court needs not to address these issues at this juncture.

Amendment to the Constitution.[2] This Court summarily denied Respondents' motion on June 26, 2019. ECF No. 33.

At a status conference held on June 26, 2019, Petitioners clarified that their class action complaint also "encompasses" individual habeas petitions for the named petitioners. June 26, 2019 Tr. 7:18-10:1. In turn, the Court set a deadline of July 8, 2019, for Respondents' answer to the construed individual habeas petitions. June 26, 2019 Tr. 12:15-14:1; *cf.* ECF No. 34 (Electronic Clerk's Notes reflecting that the Government should file a response to the individual petitioners by July 8, 2019). However, these amended deadlines for the individual habeas petitions were rendered moot after the release of the named petitioners prior to July 8, 2019. *See* ECF Nos. 32 at Ex. A, 37, 40.[3] At the conclusion of the hearing, this Court set a deadline of July 19, 2019, for Respondents to file an opposition to Petitioners' Motion for Class Certification. *See* ECF No. 34.

## III.    ARGUMENT

### A.    The Court lacks jurisdiction to enjoin the normal operation of 8 U.S.C. § 1226(a) on a classwide basis.

Petitioners request injunctive and corresponding declaratory relief, on a classwide basis, that would enjoin the normal operation of Section 1226(a), which courts have long interpreted to place the burden of proof in bond hearings on the detainee. The Court should deny Petitioners'

---

[2] In *Doe*, the Government appealed this Court's holding that the Due Process Clause requires placing the burden of proof on the Government in bond proceedings under section 1226(a) by referencing the Court's own prior ruling in *Pensamiento v. McDonald*, 315 F. Supp. 3d 684 (D. Mass. 2018). *Doe v. Smith*, No. 1:18-cv-12266, ECF No. 36, at 5 (D. Mass., Feb. 12, 2019).

[3] Mr. Brito was released on June 25, 2019. *See* ECF No. 32 at Ex. A. On June 28, 2019, ICE revisited the custody of the remaining named petitioners, Mr. Lucas and Mr. Celicourt, and issued new custody determinations. *See* ECF No. 37. Consequently, Mr. Lucas was released on July 1, 2019, after he posted his new bond. *See id.* at Ex. A. Similarly, Mr. Celicourt was released on July 2, 2019, after he posted his new bond. *See* ECF No. 40.

motion for class certification, however, because Congress has barred judicial review of this claim (and the subsequent affording of relief) under Section 1252(f)(1).

> ### i.   Petitioners' requested relief would enjoin the "operation" of Section 1226(a).

At the outset, 8 U.S.C. §1252(f)(1) plainly eliminates the classwide relief that Petitioners seek. Under that section, no court (other than the Supreme Court) has jurisdiction to enjoin or restrain the operation of the provisions of 8 U.S.C. §§ 1221-1254a on a classwide basis.  Section 1252(f)(1) specifically states:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this sub-chapter [8 U.S.C. §§ 1221-1254a], as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). The "restrain the operation of" language found in Section 1252(f)(1) is clear: By limiting class action claims that "enjoin" or "restrain," Congress intended the statutory language to encompass any action that restrains the operation of a detention statute, as well as any class action claim that seeks to enjoin a detention statute. Specifically, Congress recognized that a classwide injunction, such as the one sought here, would override the laws governing detention. *See* H.R. Rep. No. 104-469, pt. 1, at 161 (1996).[4]

The injunctive relief Petitioners request here would necessarily enjoin and restrain the operation of Section 1226(a). An order employs 'the extraordinary remedy of injunction,' *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), when

---

[4] "[C]ourts may issue injunctive relief pertaining to the case of an individual alien, and thus protect against immediate violation of [individual] rights. However, a single district court or court of appeals does not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the United States."

it directs the conduct of a party, and does so with the backing of its full coercive powers. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (citing Black's Law Dictionary 784 (6th ed.1990) (defining "injunction" as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury")).

First, Petitioners seek an order compelling the release of each class member unless the class member is provided a bond hearing with the burden on the Government within a reasonable amount of time. Complaint, ECF. No. 1 at 24, ¶ 5. An order mandating an alien's release from detention would enjoin and restrain the operation of section 1226(a). Section 1226(a) authorizes the Attorney General (who has delegated this authority to IJs) to detain an alien or release the alien on bond during the pendency of removal proceedings. Section 1226(a) conditions an alien's release from custody on a discretionary determination by an IJ; it does not require an alien's automatic release if certain procedures are not provided to the alien at a bond hearing or the hearing is not held within a "reasonable amount of time." An order mandating automatic release unless the Government complies with certain procedures within a certain amount of time would clearly enjoin or restrain section 1226(a).

Moreover, for over 20 years, immigration courts nationwide have consistently held that the detainee bears the burden of proof at a bond hearing. *See e.g.*, *Matter of Adeniji*, 22 I. & N. Dec. at 1110-11; *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11, 14 n.1 (D. Mass. 2017) (noting that the BIA's statutory interpretation of placing the burden on aliens detained under Section 1226(a) at bond hearings was reasonable and entitled to deference) (internal citation omitted)). An order to shift the burden to the Government, on the other hand, would reverse years of practical operation and application of bond hearings under Section 1226(a). This type of injunction and restraint certainly runs contrary

6

to congressional intent and to the statutory language of Section 1252(f)(1). Indeed, placing the burden on the detainee is supported by Congressional intent. In *Matter of Adeniji*, the Board analyzed the standards governing bond hearings for individuals detained under the general bond provisions of section 1226(a). 22 I. & N. Dec. at 1112.  In that decision, the Board relied on 8 C.F.R. § 236.1(c)(8), which was promulgated in response to Congress passing the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1997. *Id*. In promulgating these regulations implementing section 1226, the INS explained that the regulation was intended to achieve Congress's intent, which was to increase detention to ensure the removal of aliens. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 at 10,323 (1997) ("Several commenters stated that § 236 of the proposed rule as written is a reversal of long established procedure that provides that a noncriminal alien is presumptively eligible for release. . . . The mandate of Congress, as evidenced by budget enhancements and other legislation, is increased detention to ensure removal. Accordingly, because the Service believes that the regulation as written is consistent with the intent of Congress, the interim rule has not modified the proposed rule in this regard.").  An order placing the burden on the Government would enjoin or restrain the operation of the statute intended by Congress.

Beyond that, Section 1252(f)(1)'s text unambiguously forecloses Petitioners' claims by expressly reserving individual access to a habeas writ, while eliminating the Court's jurisdiction to enter classwide injunctions "[r]egardless of the nature of the action or claim." Petitioners cannot, therefore, plausibly argue that Section 1252(f)(1) does not encompass habeas class actions. Indeed, the Supreme Court has confirmed that the provision is a bar on "classwide injunctive relief against the operation of §§ 1221-1231" with an exception that applies to

"*individual cases.*" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999) ("*AADC*") (emphasis added). Thus, the bar does not cover individual petitioners, meaning that any individual can still seek the writ. Consequently, Petitioners cannot assert that Section 1252(f)(1) suspends the writ of habeas corpus.

It is worth noting, furthermore, that the Supreme Court has never taken issue with congressional limitations on certain remedies where other remedies are available. *See, e.g., Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330 (1938) (rejecting constitutional challenge to statutory restrictions on injunctive relief); *Cary v. Curtis*, 44 U.S. 236, 250 (1845) (upholding Congress's abolition of a cause of action in part because the claimant "was not without other modes of redress"); *cf. Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").

Rather, Congress has entrusted the Secretary of Homeland Security and the Attorney General with enforcing and administering the immigration laws. *See* 8 U.S.C. § 1103(a)(1), (3) (DHS); § 1103(g)(2) (Attorney General). Absent constitutional constraints or compelling circumstances, administrative agencies are "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543 (1978) (internal citations omitted)). Thus, to the extent that Petitioners allege that Respondents' application of Section 1226(a) has violated their rights, those claims should be heard in the context of an individual habeas petition. To comply with congressional intent, the Court, therefore, should not accept Petitioners' invitation to step into a legislative role in lieu of appropriately adjudicating petitions for a writ of habeas corpus on a case-by-case basis and

should deny their motion for class certification. *See* H.R. Rep. Accordingly, Section 1252(f)(1) precludes Petitioners' class claims for injunctive relief.

### ii. Section 1252(f)(1) prohibits classwide injunctions and corresponding declaratory relief under Rule 23(b)(2)

Petitioners assert that the proposed class meets the requirements of Fed. R. Civ. P. 23(b)(2), but this assertion is unsupported by the facts or the relevant law. ECF No. 18 at 9-10. Rule 23(b)(2) provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Thus, Petitioners must show that either injunctive relief or corresponding declaratory relief would be proper for every class member.

As indicated above, however, Section 1252(f)(1) bars Petitioners' requested injunctive relief. Likewise, Section 1252(f)(1)'s prohibition on injunctive relief applies with equal force to Petitioners' request for corresponding declaratory relief. *See Jennings v. Rodriguez*, 138 S. Ct. at 851.[5] The Advisory Committee defines "corresponding declaratory relief" as any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment; 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.). The Advisory Committee's definition makes clear that the purpose of the Rule 23(b)(2) class was to enjoin certain action or inaction on a classwide basis and that any declaratory relief issued to a 23(b)(2) class should be equivalent to an injunction. *See id.*; *see also Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 98 F.R.D. 254, 271

---

[5] Respondents do not argue that section 1252(f)(1) would preclude declaratory relief if Petitioners were seeking class certification under Rule 23(b)(1) or (b)(3), although that issue is not before this Court. Consistent with the Supreme Court's decision in *Jennings,* Respondents maintain that, because Petitioners seek to certify a class under Rule 23(b)(2), Section 1252(f)(1) applies to both injunctive relief and the *corresponding* declaratory relief.

(D. Del. 1983) (refusing to certify a Rule 23(b)(2) class where "determination of these issues would not result in corresponding declaratory relief that would have the effect of enjoining the defendant from acting in the future"). Because Rule 23(b)(2) only allows declaratory relief that has the same practical effect as an injunction, and because Section 1252(f)(1) bars classwide injunctive relief, Petitioners cannot obtain either injunctive or declaratory relief.

The Supreme Court in *Jennings* acknowledged this point when it suggested that if Section 1252(f)(1) prohibited classwide injunctive relief, then it would equally prohibit any *corresponding* declaratory relief. *See Jennings*, 138 S. Ct. at 851 ("if the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own") (citing Rule 23(b)(2) (requiring "that final injunctive relief or *corresponding* declaratory relief [be] appropriate respecting the class as a whole") (emphasis in original)). Recognizing that *Jennings* changed the Section 1252(f)(1) landscape, the First Circuit subsequently withdrew its opinion affirming class certification in an immigration habeas class action, remanding to the district court to re-examine whether Section 1252(f)(1) precludes classwide relief. *See Reid v. Donelan*, 2018 WL 4000993 (1st Cir. 2018).[6]

Yet Petitioners still request that this Court "declare" that each class member is entitled to a bond hearing at which the Government bears the burden to demonstrate by clear and convincing evidence that the detainee is either a flight risk or a danger to others. ECF No. 1 at 24. This declaratory relief is quintessential "corresponding declaratory relief" as defined by the

---

[6] This Court recently held that Section 1252(f)(1) does not preclude declaratory relief in *Reid*, which dealt with mandatory detention under Section 1226(c). *See Reid v. Donelan*, 2018 WL 5269992 at *7 (D. Mass. Oct. 23, 2018). Petitioners here, however, seek relief under Section 1226(a), a situation that the Government did not address in the *Reid* briefing. As such, this Court's opinion in *Reid* does not address each of Respondents arguments applying Section 1252(f)(1). *See id.* Accordingly, Respondents urge the Court to adopt the arguments presented herein.

Advisory Committee, because if the Court granted such relief and Respondents acted contrary to it, Petitioners would likely contend that the violation serves as a basis for enjoining detention of any member of the putative class. And any injunction that issued from such a violation would likely be identical to the injunction Petitioners seek.

Consequently, Section 1252(f)(1) would have no practical effect if it were only applied to Petitioners' requested injunctive relief and not to the declaratory relief they seek. *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971) (declaratory as well as injunctive relief was barred where "the declaratory relief alone has virtually the same practical impact as a formal injunction would"). The Sixth Circuit recently echoed this sentiment, stating it was "skeptical" that "Petitioners would prevail" on whether § 1252(f)(1) bars declaratory relief. *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018). It stated that, while "[i]t is true that 'declaratory relief will not always be the functional equivalent of injunctive relief,' … in this case, it is the functional equivalent." *Id.* (citing *Alli v. Decker*, 650 F.3d 1007, 1014 (3d Cir. 2011)). "The practical effect of a grant of declaratory relief as to Petitioners' detention would be a class-wide injunction against the detention provisions, which is barred by § 1252(f)(1)." *Id*. This is precisely the circumstances Petitioners present to this Court. Consequently, the Court must apply Section 1252(f)(1) to bar Petitioners' requested injunctive *and* declaratory relief.

**B.      The proposed class fails to meet the requirements of Rule 23(a).**

Even if Section 1252(f)(1) did not bar Petitioners' action, this Court should still deny their motion for class certification, because the proposed class does not meet the requirements of Rule 23(a). The class action proponent must satisfy Federal Rules of Civil Procedure 23(a) *and* 23(b). *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). A petitioner must first show that the four requirements in Rule 23(a) have been satisfied — namely:

(1) a class so numerous that joinder of all members is impracticable (numerosity); (2) common questions of law or fact to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative will adequately protect the class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 344 (2011). These four requirements, the Supreme Court underscored, "effectively limit the class claims to those fairly encompassed by the named plaintiff's class." *Wal-Mart Stores, Inc.*, 564 U.S. at 347. Further, even if a proponent can satisfy Rule 23(a), he or she still must show that the class falls within one of the three types of class actions identified in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *see also Smilow*, 323 F.3d at 38.

The class proponent has the burden of proof. *Smilow*, 323 F.3d at 38. The district court must undertake a "rigorous analysis" to determine if Rule 23 requirements have been met. *See Wal-Mart Stores, Inc.*, 564 U.S. at 349. Even where the class certification requirements are met, the court still has broad discretion to deny certification. *Id.*

### i.     Petitioners do not present common questions or legal interest typical of all class members.

Petitioners' proposed class fails the commonality and typicality requirement because the relief they seek hinges on myriad factual circumstances. Rule 23's commonality and typicality requirements occasionally merge, as both serve as guideposts in determining whether maintenance of a class action is economical and whether the named plaintiff and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5; *see also DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 100 (D. Mass. 2010) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 n. 13 (1982) (internal quotations omitted)).

The "commonality" requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). More specifically, the putative class's "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 349. Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification . . . is not the raising of common questions — even in droves — but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Moreover, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (citation omitted). Petitioners have the burden of demonstrating that the factual differences in their proposed class are immaterial and that their questions can be answered (and any violation remedied) the same way for every member of the class. *See id.* at 350.

Petitioners' proposed class, however, lacks commonality for the same reason it lacks typicality: The putative class is made up entirely of individuals whose claims of due process violations are based on the unique facts of their individual situations. To determine whether a class member would be prejudiced if the class member carried the burden at a bond hearing the Court must look at the facts and circumstances of that individual's case. *Jennings*, 138 S. Ct. 852 ("Due process is flexible, we have stressed repeatedly, and it calls for such procedural protections as the particular situation demands.") (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). Accordingly, some legal arguments may

apply to discrete members of the class, but not to others, dissolving the assertion of commonality.

For an alien to succeed in asserting a due process claim, showing some sort of error alone does not satisfy the burden, because prejudice is an essential element. *Pulisir v. Mukasey*, 524 F.3d 302, 311 (1st Cir. 2008); *see also Amouri v. Holder*, 572 F.3d 29, 36 (1st Cir. 2009) (acknowledging error by an IJ but still finding that this error did not constitute a due process violation because there was no prejudice). Indeed, the First Circuit has held that "an alien is entitled to a fair hearing, not necessarily a perfect one." *Id.* (citing *Aguilar-Solís v. INS*, 168 F.3d 565, 569 (1st Cir.1999)). Rather, "prejudice is an essential element of a viable due process claim in this context." *Id.* (citing *López–Reyes v. Gonzales*, 496 F.3d 20, 23 (1st Cir.2007)). District courts must conduct a fact and circumstance specific prejudice analysis to determine whether prejudice exists in each case. *Id.* Specifically, district courts must determine whether the alleged error was "likely to have affected the outcome of the proceedings." *Id.* (internal citation omitted); *López–Reyes v. Gonzales*, 496 F.3d at 23 (finding that "no colorable due process claim" existed after reviewing the facts of that case).

Notably, the First Circuit has undisputedly affirmed that a district court must conduct the above-referenced fact-dependent prejudice analysis when an alien challenges the burden allocation at a bond hearing. *Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d at 12, *aff'd  by Maldonado-Velasquez v. Moniz*, Case No. 17-1918, Doc No. 00117268737, n. 2 (Mar. 22, 2019) (confirming that prejudice was a necessary showing). In *Maldonado-Velasquez*, the district court declined to reach the merits of Maldonado-Velasquez's constitutional arguments regarding the allocation of the burden of proof at a bond hearing because he could not prove that he was prejudiced based on his facts and circumstances. *Id.*

14

Likewise, this Court has consistently held that an alien detained under Section 1226(a) must establish that the alleged error resulted in prejudice in order to succeed on a due process claim. *See e.g.*, *Pensamiento v. McDonald*, 315 F. Supp. 3d at 693 ("Petitioner must show he was prejudiced by the constitutional error"); *Figueroa v. McDonald*, No. CV 18-10097-PBS, 2018 WL 2209217, at *6; *Doe v. Tompkins*, No. 1:18-cv-12266, 2019 U.S. Dist. LEXIS 22616 at *8; *Diaz Ortiz v. Tompkins*, No. 1:18-cv-12600, 2019 U.S. Dist. LEXIS 14155 at *3. And, as noted above, this prejudice analysis requires the district court to review the specific facts and circumstances of each habeas petition. This highly individualized approach undermines any notion of commonality and typicality, such that Petitioners cannot meet their burden under Rule 23(a).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the *same injury*." *See Wal-Mart, Inc.*, 564 U.S. at 374. A court adjudicating the question, therefore, must engage in a fact-dependent inquiry to determine if any prejudicial injury exists at all. But as demonstrated in the litany of cases referenced above, while some legal errors may constitute prejudice for some Petitioners, not all Petitioners suffer the "*same injury*" as Rule 23(a)(2) requires to meet the commonality element. *Id.* In the absence of typicality and commonality, a class action is not an appropriate method for adjudicating the Petitioners' claims. This is especially true here, where Petitioners have adequate alternative remedies, such as filing individual habeas petitions, which can better address the individual legal and factual questions in each case. Accordingly, the Court should deny Petitioners' motion for class certification.

### ii.    Petitioners lack an adequate class representative under Rule 23.

The Court should also deny Petitioners' motion for class certification because this matter lacks an adequate class representative. An adequate class representative is one who will "fairly

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires

that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32,

43 (1940). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest

between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 625 (1997). To justify a departure from the general rule that litigation is to be

conducted by and on behalf of the named parties, "a class representative must be part of the class

and possess the same interest and suffer the same injury as the class members." *Abla v. Brinker*

*Rest. Corp.*, 279 F.R.D. 51, 55 (D. Mass. 2011).

The adequacy analysis contains two steps. To establish this element, the Court must

conduct an "inquiry into whether the putative representative plaintiff's interests are aligned with

other class members and whether the plaintiff is in a position to vigorously protect the class'

interests." *Id.* Further, if the named plaintiff is not a member of the class he or she purports to

represent, the named plaintiff cannot be expected to represent fairly and adequately the interests

of the class. *See E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 404-05 (1977).

Here, all three named Petitioners have received new bond determination and have been

released from custody. *See* ECF Nos. 32 at Ex. A, 37, 40. Thus, their individual claims and

interest in this matter are now moot. *Amchem Prod., Inc.*, 521 U.S. at 594-595 ("In order to

satisfy requirement for certification of class action that named parties will fairly and adequately

protect interests of class, class representative must be part of class and possess same interest and

suffer same injury as class members."). Further, the named Petitioners' release also means that

they lack any connection in law or privity to the detention and potential release of the remaining

petitioners. Because the issue of whether each petitioner has suffered any prejudicial injury is

fact determinative, moreover, the legal interests of the class cannot depend on the unique

circumstances of just one individual alien. Accordingly, the strategies and justification used to litigate a prejudicial claim will differ for each petitioner, such that Petitioners have failed to meet the adequacy requirement of Rule 23(a)(4). For the same reasons, the lack of an adequate class representative also undercuts Petitioners' alternative statutory claims under the INA and the APA. Petitioners challenge the BIA's decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999), under both of the referenced statutes. *See* ECF No. 1 at ¶¶ 93-94. That is, the lack of a class representative with a live interest who has suffered the same injury as the class members undermines Petitioners' ability to satisfy the adequacy element. *Abla*, 279 F.R.D. at 55.

**C.      Rule 23(b)(2) precludes Petitioners' proposed class**.

Rule 23(b)(2) provides that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Petitioners assert that their proposed class satisfies the requirements of Rule 23(b)(2). *See* June 26, 2019 Tr. 17:2-14; *see also* ECF No. 18 at 3. But Petitioners due process claims require this Court to conduct a fact-dependent inquiry for each petitioner to determine if any of them suffered prejudicial injury. Indeed, Petitioners' claims hinge on varying factual circumstances. Accordingly, as noted, *supra*, to determine whether an alien detained under Section 1226(a) was prejudicially injured by carrying the burden at a bond hearing, in violation of the Due Process Clause of the Constitution, a court must conduct a fact-dependent inquiry that will necessarily vary depending on individual circumstances. Consequently, Rule 23(b)(2) precludes certification of Petitioners' proposed class. Accordingly, this Court must deny Petitioners' motion for class certification.

## IV.    CONCLUSION

Because the Court lacks subject-matter jurisdiction to hear Petitioners' claims, and

because Petitioners cannot meet the typicality, commonality, and adequacy requirements of Rule

23(a), the Court should deny Petitioners' motion for class certification.  Additionally, the Court

should deny the motion because Petitioners cannot show that they meet the requirements of Rule

23(b).

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

ELIANIS N. PÉREZ
Assistant Director

J. MAX WEINTRAUB
Senior Litigation Counsel

By: s/ *C. Frederick Sheffield*
C. FREDERICK SHEFFIELD
Florida Bar No. 59505
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4737
Carlton.f.sheffield@usdoj.gov

By: s/ *Huy M. Le*
HUY M. LE
M.A. BBO No. 697256
Trial Attorney
United States Department of Justice

18

Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4028
Huy.M.Le2@usdoj.gov

*Attorneys for Respondents*

## <u>CERTIFICATE OF SERVICE</u>
Civil No. 1:19-cv-11314-PBS

I hereby certify that this document will be filed through the electronic filing system of the

Court, which system will serve counsel for all parties.

Dated: July 19, 2019                         */s/ C. Frederick Sheffield*
                                             C. FREDERICK SHEFFIELD
                                             Senior Litigation Counsel