**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, JACKY CELICOURT,

Petitioners,

v.

WILLIAM P. BARR, U.S. Attorney General, *et al.*,

Respondents.

C.A. No. 1:19-cv-11314-PBS

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR FINAL JUDGMENT**

## I. INTRODUCTION

Petitioners move this Court to enter a premature final judgment by certifying their class and granting their request for permanent injunctive and corresponding declaratory relief. *See* ECF Nos. 52, 53. The Court should deny that motion. In this putative class action, Petitioners allege that the procedures that have governed custody redetermination hearings (or “bond hearings”) under 8 U.S.C. § 1226(a) for nearly 20 years violate their right to due process. *See* ECF No. 1. Petitioners’ requested relief would require the immigration court to conduct retroactive bond hearings for *every single* putative class member detained under Section 1226(a), regardless of the merits or the likelihood of release for each detainee. Thus, a final judgment in this class action lawsuit and at this juncture would have severe ramifications on immigration procedures.

The Court should deny Petitioners’ motion for final judgment for several additional reasons, as well. First Petitioners failed to cite any authority, Federal Rule of Civil Procedure, or procedural vehicle as a basis for their motion. At the very least, Respondents request that the Court order Petitioners to proffer the authority and rule upon which they base their motion, so that Respondents can prepare a proper opposition. Second, entering a final judgment at this juncture would run contrary to the judicial policy against piecemeal appellate review because this case presents the identical underlying salient question to one that the First Circuit is considering in *Doe v. Smith, et al*, No. 19-1368 (1st Cir. Apr. 18, 2019) (appealing this Court’s decision in *Doe v. Smith, et al*, No. 1:18-cv-12266-PBS (D. Mass., Feb. 12, 2019)).[1] Third, Petitioners’ request for a final judgment on their

[1] On July 25, 2019, the First Circuit granted an extension on the Government’s deadline to file its brief and appendix. *See Doe v. Smith, et al*, No. 19-1368 (1st Cir. Apr. 18, 2019). The Government’s new deadline is August 12, 2019. The Government intends to include the status of this case in its brief, as requested by this Court. *See* June 26, 2019 Tr. 16:17-19.

request for a permanent injunction would be inappropriate because such an injunction would impose severe burdens on the Government and would have adverse effect on public interests.

For these reasons, this Court should deny Petitioners' motion for entry of final judgment.

## II. FACTUAL AND PROCEDURAL HISTORY

Respondents have previously documented this case's procedural history in their Opposition to Class Certification (ECF No. 51 at 3-4). Accordingly, Respondents incorporate by reference the procedural history of this case, as detailed in Respondents' prior filing.

Petitioners filed their motion for class certification on June 18, 2019. ECF No. 18. Consistent with the deadlines set by the Court (*see* ECF No. 37), Respondents timely filed their opposition on July 19, 2019. ECF No. 51. On the *same day*, Petitioners additionally moved this Court to enter final judgment while the motion for class certification remained pending. ECF No. 53. Petitioners' motion for class certification and motion for entry of final judgment remain pending before this court. *See* ECF Nos. 18, 52, 53.

## III. ARGUMENT

### A. Petitioners fail to cite any authority to support their motion for final judgment.

Petitioners request injunctive and corresponding declaratory relief, on a classwide basis, that would enjoin the normal operation of Section 1226(a) in the Boston and Hartford Immigration Courts, which the agencies and the courts have long interpreted to place the burden on the detainee. Despite the unprecedented and sweeping requested relief, Petitioners fail to cite a single rule or authority as a basis for their motion. The lack of legal citation leaves the Court to speculate as to the procedural basis Petitioners request the Court to rule under and potentially reform immigration operations.

Petitioners' motion mainly relies on substantive issues that they allege warrant granting them a final judgment from this Court. *See generally* ECF Nos. 52, 53. Yet Petitioners fail to cite any

authority or procedural vehicle for this Court to even consider their motion. Neither the local rules nor the Federal Rules of Civil Procedure provide a section entitled "MOTION FOR ENTRY OF FINAL JUDGMENT," as stylized by Petitioners. *See* ECF Nos. 52, 53. As a matter of fundamental fairness, Respondents cannot prepare a proper opposition absent notice of the legal standards pursuant to the relevant authority or Federal Rules of Civil Procedure.

Accordingly, the Court should deny Petitioners' motion for entry of final judgment. At the very least, Respondents request an order requiring Petitioners to proffer the authority and rule upon which they base their motion.

**B. Final judgment would be improper before First Circuit's forthcoming decision in *Doe*.**

Entering a final judgment at this juncture would run contrary to judicial policy against piecemeal appellate review. There is a "strong judicial policy disfavoring piecemeal appellate review." *Credit Francais Int'l S.A. v. Bio-Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996) (quoting *Kersey v. Dennison Mfg. Co.*, 3 F.3d 482, 487 (1st Cir. 1993)). This case presents the identical underlying salient issue that is before the United States Circuit Court of Appeals for the First Circuit in *Doe*. Just like this Court, the First Circuit is considering whether the existing procedures for custody redetermination hearings held pursuant to 8 U.S.C. § 1226(a) satisfy the Due Process Clause of the Fifth Amendment to the Constitution. Thus, the First Circuit's forthcoming decision in *Doe* will narrow or resolve the issues and assist in the resolution of the relevant questions of law. Accordingly, judicial economy favors denying Petitioners' motion for entry of final judgment.

**C. Permanent Injunction is not appropriate because it would violate congressional intent and impose a severe burden on the Government.**

Notwithstanding the above considerations, Petitioners have not shown that final judgment on their request for a permanent injunction would be appropriate under the requisite standard. In order to succeed in a request for a permanent injunction, Petitioners must prove that: "(1) plaintiffs prevail on

the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction." *Healey v. Spencer*, 765 F.3d 65, 74 (1st Cir. 2014) (internal citations omitted)). Applying these factors demonstrates that a premature permanent injunction remains unwarranted because an order severely overhauling 20 years of detention operations would: 1) overwhelm the immigration court's docket; and 2) would not serve the public interest because such judicial reform runs contrary to congressional intent as well as Congress's plenary authority to create procedures for removing noncitizens in the United States. Thus, the Court should deny Petitioners' request for final judgment.

**i. A permanent injunction would impose a substantial burden on the Government that outweighs Petitioners' interest on balance.**

A permanent injunction would impose a substantial burden on Respondents that outweighs Petitioners' interest. *Healey*, 765 F.3d at 74 (plaintiff must prove that "the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction."). Here, Petitioners cannot show that their harm would be greater than the burden an injunction would impose on Respondents. Rather, as Respondents explained in their Opposition to Class Certification (ECF No. 51), Petitioners' harm would be the requirement that they seek the relief Congress afforded them. *See, e.g., Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330 (1938) (rejecting constitutional challenge to statutory restrictions on injunctive relief); *Cary v. Curtis,* 44 U.S. 236, 250 (1845) (upholding Congress's abolition of a cause of action in part because the claimant "was not without other modes of redress"); *cf. Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus"). The proper channel for relief, therefore, would be to file individual habeas petitions in district court and/or wait for the First Circuit's resolution in

*Doe*. *See Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018) (holding that injunctions must be '"no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'") (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 759 (1994)).

Petitioners assert that the burden on the Government would be "minimal" because the Government "is already required to provide every class member with a bond hearing[.]" ECF No. 53 at 6. However, Petitioners' requested relief does not only pertain to *prospective* bond hearings, but also includes *retroactive* bond redeterminations. As discussed above, Petitioners request that "each class member be released unless provided with a bond hearing" where the Government bears the burden of proof. ECF No. 1 at 24. But if the Court grants Petitioners' requested relief, the Boston and Hartford immigration courts would have to re-do bond redetermination hearings for *every single* individual detained under Section 1226(a). This would undoubtedly overwhelm a backlogged immigration court system based on the sheer volume alone. *See* ECF No. 18 (alleging that 700 detainees bore the burden of proof in the Boston immigration court). The voluminous retroactive bond hearings would choke the immigration court's docket and potentially interfere with previously scheduled cases. And the time and effort expended resulting from a final judgment may be superseded by the First Circuit's impending decision in *Doe*.

Moreover, Petitioners' requested relief is much broader than a declaratory judgment or injunction changing the standards and burdens of proof currently applicable to bond hearings. To implement the requested final judgment would be a drastic change to the detention procedures that have been employed for over 20 years. Petitioners are also requesting an order mandating automatic bond hearings for any putative class member and automatic release of a class member if the immigration court does not provide the bond hearing within a reasonable time. These additional novel and unprecedented requirements are contrary to the Immigration and Nationality Act ("INA") and its

implementing regulations. Especially where Petitioners provide no basis for these requirements, these consequences alone significantly favor denying Petitioners' motion for entry of final judgment.

Further, Petitioners' proposed judicial reform would place an enormous investigative burden on the Government. Indeed, by shifting the burden to the Government at a bond hearing, the Government would be expected to provide evidence that the detainee is in the best position to provide. Undoubtedly, a detainee is in the best position to proffer individualized evidence relevant to his or her dangerousness or flight risk, as an alien is in sole control of information related to his or her criminal record and activity both in one's home country and in the United States, as well as one's identity and nationality, family ties to the United States, a record of employment, an established place of residence, and future prospects for relief from removal. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40-41 (BIA 2006).

This is particularly true with respect to those putative class members who have not been present in the United States for a substantial amount of time. In such circumstances, the Government may have little to no information about an individual, apart from the fact that he or she is not a United States citizen and is not in the country legally. For example, the Government may encounter an alien who has recently entered the United States without authorization. This alien may not be in possession of an identity document to reveal his or her name, date of birth, or country of citizenship. The Government would have no knowledge of his or her background and whether he or she represents a danger or a flight risk; this information resides with the alien. Even for an individual detained under Section 1226(a) who has been present in the United States for a significant amount of time, such alien, and not the Government, is still is in the best position to detail his or her equities to demonstrate a lack of danger or flight risk.

On balance, Petitioners' interest does not outweigh the above-referenced heavy burden that would be placed on Respondents. First, individuals detained under Section 1226(a) already have ample procedural protections to challenge their detention. Upon initial apprehension, the Department of Homeland Security ("DHS") makes an individualized custody determination. 8 C.F.R. §§ 236.1(c)(8), 236.1(g). DHS may release the alien if the alien demonstrates to the satisfaction of the officer that release would not pose a danger to property or persons and that the alien is likely to appear for removal proceedings. *Id*. If the officer denies bond (or sets a bond the alien believes is too high), the alien may at any time ask an immigration judge ("IJ") for a redetermination of the custody decision. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

The IJ decides whether to release the alien based on numerous factors that include the alien's ties to the United States and that predict whether the alien will pose a flight risk or a danger to the community. *Matter of Guerra*, 24 I. & N. Dec. at 40-41. The IJ may also consider the "amount of bond that is appropriate." *Id*. at 40. And insofar as Section 1226(a) only permits the detention of "*alien[s]*," an IJ reviewing a custody determination may also order that the individual be released based on a finding that he or she is not in fact an alien and is instead a United States citizen.[2] 8 U.S.C. § 1226(a); *see* 8 C.F.R. § 1236.1(d) ("the immigration judge is authorized to . . . detain *the alien* in custody, release *the alien*, and determine the amount of bond if any, under which the [alien] may be released . . . .") (emphasis added). If the IJ concludes after the hearing that the alien should not be released, the alien may appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3), § 1236.1(d)(3). Further, if the IJ denies release on bond but the alien's circumstances

[2] Citizenship determinations in bond proceedings are based on the same standards that apply in removal proceedings. Although DHS bears the burden of proof with respect to alienage, the detainee bears the burden of establishing his or her claim to United States citizenship by a preponderance of the evidence once DHS demonstrates that the detainee was born abroad. *See Matter of Baires-Larios*, 24 I. & N. Dec. 467 (BIA 2008).

change, the alien may request another bond hearing based on those changed circumstances. 8 C.F.R. § 1003.19(e); *Matter of Uluocha*, 20 I. & N. Dec. 133 (BIA 1989). Finally, a detainee may challenge the constitutionality of his or her detention by filing an individual habeas petition in district court. Undoubtedly, detainees have ample procedural protections in place, absent the injunction that Petitioners seek, which do not impose a substantial burden on the Government.

Additionally, as referenced above, the salient issues in the present matter are pending on appeal before the First Circuit in *Doe*. Consequently, Petitioners' arguments are being addressed, even in the absence of a permanent injunction. Thus, considering the ample procedural protections afforded to individuals detained under Section 1226(a) and the underlying issues being addressed on appeal in *Doe*, Petitioners' interest in the present matter does not outweigh the substantial burden that would be imposed on Respondents if the Court grants a permanent injunction.

Accordingly, a permanent injunction would impose significant burdens on the immigration court to re-calendar and hold retroactive bond redetermination hearings, as well as imposing a substantial investigative burden on the Government. The Court should thus deny Petitioners' motion for entry of final judgment.

**ii. The proposed final judgment would also run contrary to public interest.**

The Court should also deny Petitioners' request for a permanent injunction because this relief would have adverse effects on public interest. *Healey*, 765 F.3d at 74 (plaintiff must prove that "the public interest would not be adversely affected by an injunction."). As indicated by Congressional intent, detention incident to removal proceedings is consistent with the public interest to promptly complete proceedings and execute removal orders. The Supreme Court has observed that "[t]here is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and

'permit[s] and prolong[s] a continuing violation of the United States law." *Nken v. Holder*, 556 U.S. 418, 436 (2009).

Nonetheless, Petitioners argue that "judicial intervention" in this matter supports public interest because it would reunite detainees with their families. ECF No. 53 at 6. However, Petitioners' request for relief would be contrary to 20 years of the immigration court's operation and practice of holding bond under Section 1226(a) hearings in Massachusetts and New Hampshire and encroach on Congress's plenary powers over the entire nation.

The Supreme Court has concluded that the relevant precedents have "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003) (collecting cases); *see Zadvydas v. Davis*, 533 U.S. 678, 718 (2001) (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."). As such, "[t]he power to expel aliens" is "essentially a power of the political branches of government." *Carlson v. Landon*, 342 U.S. 524, 532 (1952). So long as "aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders." *Carlson*, 342 U.S. at 534; *see Reno v. Flores*, 507 U.S. 292, 314 (1993) ("Over no conceivable subject is the legislative power of Congress more complete."). However, Petitioners invite this Court to impose relief that is contrary to 20 years of practice by, shifting the burden to the Government and by mandating release unless an automatic bond hearing is provided in a short time frame. The Court should decline Petitioners' invitation to grant such broad relief.

Additionally, a permanent injunction would have adverse effects on the public interest because such relief would run contrary to Congressional intent. Congress enacted the current version of Section

1226(a) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. No. 104-208, 110 Stat. 3009-546 (enacted Sept. 30, 1996). In enacting IIRIRA, Congress "had before it evidence that one of the major causes of [former Immigration and Naturalization Services' ("INS")] failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their removal proceedings." *Demore*, 538 U.S. at 519

In 8 U.S.C. § 1226(a), Congress provided that "an alien may be arrested *and detained* pending a decision on whether the alien is to be removed from the United States." (emphasis added). Section 1226(a) thus reflects Congress's intent to grant the Executive Branch broad discretion in determining the circumstances under which an alien should remain detained for removal proceedings. To provide further context of Congress's intent, the Court should look at the promulgation of 8 C.F.R. § 236.1(c)(8).

In 1997, former INS promulgated a regulation implementing the new Section 1226(a), which provided that:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; *provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding*.

8 C.F.R. § 236.1(c)(2) (1998) (emphasis added). In promulgating these regulations implementing Section 1226, the INS explained that the regulation was intended to achieve Congress's intent, which was to increase detention to ensure the removal of aliens. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 at 10,323 (1997) ("Several commenters stated that § 236 of the proposed rule as written is a reversal of long established procedure that provides that a noncriminal alien is presumptively eligible for release. . . . The mandate of Congress, as evidenced by budget

enhancements and other legislation, is increased detention to ensure removal. Accordingly, because the Service believes that the regulation as written is consistent with the intent of Congress, the interim rule has not modified the proposed rule in this regard.”).

Accordingly, Section 1226(a) reflects Congress’s intent to afford “broad discretion” to the Executive Branch in determining which individuals should remain detained for removal proceedings, *Nielsen v. Preap*, 139 S. Ct. 954, 966 (2019), and to increase the probability that aliens who are ordered removed are in fact removed. H.R. Rep. 104-469(I), at 123; *Zadvydas*, 533 U.S. at 699-700 (assessing the reasonableness of immigration detention “primarily in terms of the statute’s basic purpose”). Indeed, as discussed above, Congress enacted Section 1226(a) based on concern that “[a] chief reason why many deportable aliens are not removed from the United States is the inability of the INS to detain such aliens through the course of their deportation proceedings.” H.R. Rep. 104-469, at 123.

The Supreme Court has noted the important relationship between public interest and congressional intent on this matter. *See Nken*, 556 U.S. at 436. A permanent injunction that reforms the operation of bond hearings would circumvent Respondents’ ability to act consistent with Congress’s intent. Thus, judicial intervention on this matter would have adverse effect on public interest. Accordingly, the Court should deny Petitioners’ request for an entry of final judgment and request for a permanent injunction.

**D. Final judgment at this juncture is improper because Respondents have not had an opportunity to submit any briefing on Petitioners’ claim under the APA**.

The Court should also deny Petitioners’ motion for entry of final judgment because Respondents have not had an opportunity to submit briefings on Petitioners’ claim under the INA or the Administrative Procedure Act (“APA”). Petitioners assert that the BIA’s decision in *Matter of Adeniji* and its progeny is arbitrary and capricious. 22 I. & N. Dec. 1102, 1114 (BIA 1999) (holding

that an alien seeking release must demonstrate that his or her release "would not pose a danger to property or persons, and that [he or she] is likely to appear at any future proceeding."). *See* ECF No. 1 at ¶¶ 24, 93-94.

Petitioners argue that an entry of final judgment is warranted because this Court has "already" decided on the issues at hand. *See generally* ECF No. 30. The Court, however, has never addressed the issues relating to Petitioners APA claim. Moreover, this Court has only decided on the constitutionality of Section 1226(a) within the context of *individual* habeas petitions, and has never addressed these issues in a class action lawsuit. *See e.g.*, *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 692 ("Petitioner must show he was prejudiced by the constitutional error"); *Figueroa v. McDonald*, No. CV 18-10097-PBS, 2018 WL 2209217, at *6 (D. Mass. May 14, 2018); *Doe v. Tompkins*, No. 1:18-cv-12266, 2019 U.S. Dist. LEXIS 22616 at *8 (D. Mass. Feb. 12, 2019); *Diaz Ortiz v. Tompkins*, No. 1:18-cv-12600, 2019 U.S. Dist. LEXIS 14155 at *3 (D. Mass. Jan. 29, 2019). Even in those decisions, this Court has explicitly declined to rule on any APA issue, including Petitioners' claim. *See Pensamiento*, 315 F. Supp. 3 at 693 n.6 (declining to reach petitioner's alternative APA arguments). Thus, the Court should not enter a final judgment on this issue until it provides Respondents with an opportunity to submit arguments on the matter.

If provided with an opportunity to submit briefing, Respondents would at the very least submit that Congress has precluded this Court from reviewing Petitioners' claim under the APA. Congress provided in 8 U.S.C. § 1226(e) that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

Even assuming that Section 1226(e) does not bar Petitioners' challenge to *Matter of Adeniji* altogether, that provision underscores the fact that a BIA decision interpreting Section 1226(a) is a

quintessential example of situation in which *Chevron* deference applies. "Where the BIA's legal conclusions concern statutes and regulations related to immigration matters . . . [the Court] grant[s] the BIA's interpretations *Chevron* deference." *Soto-Hernandez v. Holder*, 729 F.3d 1, 3 (1st Cir. 2013) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)); *see also Negusie v. Holder*, 555 U.S. 511, 516 (2009) ("Consistent with the rule in [*Chevron*], the BIA is entitled to deference in interpreting ambiguous provisions of the INA."). Under *Chevron*, when a statute "is silent or ambiguous with respect to the specific issue" the Court may ask only "whether the agency's answer is based on a permissible construction of the statute." *I.N.S. v. Aguirre–Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778) (internal quotation marks omitted). The Court "must uphold the BIA's interpretation . . . so long as it is reasonable and consistent with the statute." *Rumierz v. Gonzales*, 456 F.3d 31, 37 (1st Cir. 2006).

Notably, the *Chevron* analysis requires that "the agency's construction is accorded substantial deference, and courts are not to substitute their own judgment for that of the agency." *Flock v. United States Department of Transportation*, 840 F.3d 49, 55 (1st Cir. 2016). The holding in *Matter of Adeniji* that an alien must demonstrate that "release would not pose a danger to property or persons, and that (he) is likely to appear for any future proceeding" – "even though section [1226(a)] does not explicitly contain such a requirement" – is reasonable and consistent with Congress's purpose in enacting IIRIRA. 22 I. & N. Dec. at 1113. The BIA reached its conclusion after carefully examining the regulations promulgated in the wake of IIRIRA, which provided that "the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id*. at 1112 (citing 8 C.F.R. § 236.1(c)(8)).

In *Maldonado-Velasquez v. Moniz*, the district court noted that the BIA's statutory interpretation of placing the burden on aliens detained under Section 1226(a) at bond hearings was

reasonable and entitled to deference. 274 F. Supp. 3d 11, 14 n.1 (D. Mass. 2017) (internal citation omitted)). Thus, *Matter of Adeniji* represents a reasonable interpretation of Section 1226(a) and is entitled to deference under *Chevron* principles. *Aguirre-Aguirre*, 526 U.S. at 425 (recognizing that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations"). Petitioner's alternative challenge to the BIA's precedent thus necessarily fails. Accordingly, the Court should deny Petitioners' motion for entry of final judgment.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Petitioners' motion for entry of final judgment.

Dated: August 2, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation - District Court Section

ELIANIS N. PÉREZ
Assistant Director

J. MAX WEINTRAUB
Senior Litigation Counsel

C. FREDERICK SHEFFIELD
Senior Litigation Counsel

*/s/ Huy M. Le*
HUY M. LE
M.A. BBO No. 697256
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-4028
Facsimile: (202) 305-7000
E-mail: Huy.M.Le2@usdoj.gov

*Attorneys for Respondents*

**CERTIFICATE OF SERVICE**
Civil No. 1:19-cv-11314-PBS

I hereby certify that this document will be filed through the electronic filing system of the Court, which system will serve counsel for all parties.

Dated: August 2, 2019

*/s/ Huy M. Le*
By: HUY M. LE
Trial Attorney