<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2

 3


 4                                  )
     GILBERTO PEREIRA BRITO,        )
 5   FLORENTIN AVILA LUCAS, and     )
     JACKY CELICOURT, individually  )
 6   and on behalf of all those     )
     similarly situated,            )
 7                                  )  Civil Action
          Plaintiff-Petitioners,    )  No. 1:19-cv-11314-PBS
 8                                  )
     v.                             )
 9                                  )
     WILLIAM BARR, et al.,          )
10                                  )
          Defendant-Respondents.    )
11                                  )

12

13             BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
14

15                        MOTION HEARING

16

                          August 5, 2019
17                          9:32 a.m.

18

             John J. Moakley United States Courthouse
19                      Courtroom No. 19
                        One Courthouse Way
20               Boston, Massachusetts 02210

21

22

                    Linda Walsh, RPR, CRR
23                   Official Court Reporter
             John J. Moakley United States Courthouse
24            One Courthouse Way, Room 5205
                 Boston, Massachusetts 02210
25                 lwalshsteno@gmail.com
</pre>

```
 1    APPEARANCES:

 2    On Behalf of the Petitioners:

 3         MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, PC
           By: Andrew Nathanson, Esq.
 4             Susan M. Finegan, Esq.
           One Financial Center
 5         Boston, Massachusetts 02111
           617-542-6000
 6         anathanson@mintz.com
           sfinegan@mintz.com
 7
           AMERICAN CIVIL LIBERTIES UNION
 8         By: Daniel L. McFadden, Esq.
               Mathew Segal, Esq.
 9             Adriana Lafaille, Esq.
           211 Congress Street
10         Boston, Massachusetts 02110
           617-482-3170
11         dmcfadden@aclum.org
           msegal@aclum.org
12         alafaille@aclum.org

13         AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
           By: Gilles R. Bissonnette, Esq.
14             SangYeob Kim, Esq.
           18 Low Avenue
15         Concord, New Hampshire 03301
           603-224-5591
16         gilles@aclu-nh.org
           SangYeob@aclu-nh.org
17

18    On Behalf of the Respondents:

19         UNITED STATES DEPARTMENT OF JUSTICE
           By: Huy Le, Esq.
20         P.O. Box 868, Ben Franklin Station
           Washington, DC 20044
21         202-353-4028
           Huy.M.Le2@usdoj.gov
22


23


24                   Proceedings reported and produced
                      by computer-aided stenography
25
```

1               P R O C E E D I N G S

2          THE CLERK:  Court calls Civil Action 19-11314, *Brito,*

3   *et al. versus Barr, et al.*

4          Would counsel please identify themselves.

5          MR. McFADDEN:  Good morning, Your Honor.  Dan McFadden

6   on behalf of the Petitioners.

7          MR. NATHANSON:  Andrew Nathanson for the Petitioners.

8          MR. SEGAL:  Good morning, Your Honor.  Matthew Segal

9   for the Petitioners.

10          MS. FINEGAN:  Good morning.  Sue Finegan for the

11   Petitioners.

12          MS. LAFAILLE:  Adriana Lafaille for the Petitioners.

13          MR. BISSONNETTE:  Gilles Bissonnette with the

14   Petitioners, Your Honor.

15          MR. KIM:  Sany Yeob Kim for the Petitioners, Your

16   Honor.

17          MR. LE:  Good morning, Your Honor.  Huy Le for the

18   Government, Respondents.

19          THE COURT:  By yourself?

20          MR. LE:  Yes, ma'am.

21          THE COURT:  All right.  You may be seated.  Thank you.

22   And good morning to everyone.

23          So we'll start with the issue of what's on the table

24   for this morning.  Obviously there's a motion for class

25   certification, which has been fully briefed, and I will

1   consider this morning, but there's also a second motion for

2   judgment which we're going to have to discuss as well.

3          Effectively, I think, I have till 11:30 for you.  So,

4   you know, we can start delving into the issues.  Thank you.  Go

5   ahead.

6          Who's arguing the motion for class cert?

7          MR. NATHANSON:  Me, Your Honor.

8          THE COURT:  Have you given the court reporter all your

9   names since it was going pretty quickly?

10          MR. NATHANSON:  I think so.  Did you get it?

11          THE COURT:  All right.

12          MR. NATHANSON:  With respect to the motion for --

13          THE COURT:  Why don't you introduce yourself again for

14   the record.

15          MR. NATHANSON:  I'm sorry.  I'm Andrew Nathanson from

16   Mintz Levin, Your Honor.

17          THE COURT:  Thank you.

18          MR. NATHANSON:  With respect to the motion for class

19   certification, I think the appropriate place to start is to

20   talk about what we don't dispute.  Most of the 23(a)

21   requirements are not disputed here, numerosity.  With respect

22   to commonality, there's no dispute that there is a common issue

23   that encompasses everybody in the class, and with respect to

24   typicality, there's no dispute that that common issue is shared

25   by the named Petitioners as well as every class member.

1          And with respect to adequacy, there seems to be no

2     dispute both that the named Petitioners do not have any kind of

3     a conflict that would prevent them from adequately representing

4     all of the class members, and no dispute that class counsel is

5     capable of representing everybody, everybody's interests

6     competently and in align with each other.

7          So what we seem to be talking about here are two

8     issues.  One is that the Government says that -- that adequacy

9     is defeated because the named Petitioners, the three named

10    Petitioners have now been released voluntarily by the

11    Government.  And as far as that goes, I mean, I'm prepared to

12    stand on what we said in the briefs.  The fact of the matter is

13    that that's not an impediment -- resolution of the named

14    Petitioners' claims is not necessarily an impediment to their

15    continuing to adequately represent the class, and the

16    Government hasn't suggested that anything would prevent them

17    from doing so.

18          THE COURT:  But they're still in the country?

19          MR. NATHANSON:  They're still in the country, yes,

20    they are, and they are still involved in the case.  We're still

21    in contact with them.  They're still capable and willing of

22    serving as class representatives.  And as we pointed out in the

23    brief, they have a live and ongoing interest in the resolution

24    of this because they've been released at the Government's

25    discretion.  They're subject to rearrest, and they could be

1    subjected to the unconstitutional procedures that they were

2    subjected to the first time around as well.  So they are still

3    members of the class, and so I don't think there's any question

4    about their adequacy.

5         The last issue is this issue of prejudice, that there

6    is some sort of individual issues that prevent you from finding

7    commonality, typicality or compliance with Rule 23(b)(2).  And

8    I think the way to sum all of that up is that in each case it's

9    the tail wagging the dog.  The overarching issue here is both

10   common and typical and relates to a practice that the

11   Government has -- or actions that the Government has undertaken

12   with respect to the entire class, which is whether they have

13   given them due process in their bond hearings.

14        The question of prejudice, I think it may be helpful

15   to put it in context, what "prejudice" means here.  In our

16   reply brief, we happen to cite yet another decision in *Reid*

17   *versus Donelan,* an early one from Judge Ponsor back in 2014,

18   where he talked about the prejudice requirement and he

19   characterized it this way:  He said it's analogous to harmless

20   error in appellate proceedings in that its purpose is to weed

21   out situations in which error may have occurred, but it would

22   be needless to remand because the outcome wouldn't change.  And

23   that's exactly what the purpose that the prejudice requirement

24   serves here as well.

25        This isn't a situation as in, for example, *Reid versus*

1   *Donelan* or *Wal-Mart versus Dukes* where you need individualized

2   adjudications in order to determine who the members of the

3   class are --

4         THE COURT:  You know, I addressed this once.  I have

5   so many of these opinions.  But I did address the prejudice

6   prong once, and I said that it was a standard of a could have

7   made a difference.  Are you urging me to relive that or revisit

8   that?

9         MR. NATHANSON:  No, not at all.

10         THE COURT:  It's not an onerous burden, but it does

11   require some individual attention.  I'm not saying any of the

12   named Plaintiffs are this, but somebody with a very serious

13   criminal issue, for example, under the C category, you know,

14   you might say, well, it wouldn't have made any difference who

15   bore the burden of proof.  This person wasn't going to get out.

16         MR. NATHANSON:  No, I'm not suggesting to you that you

17   can make a blanket ruling of prejudice for all of the subset of

18   detainees for whom prejudice is an issue.  That's something

19   else I can address, if you'd like, that you're going --

20         THE COURT:  So should I have possibly two classes or

21   subclasses, one dealing with people who have not yet had bond

22   hearings under 1223(a) category, and those who have already had

23   the bond hearings?

24         MR. NATHANSON:  I don't think you need to do that.  I

25   think it's a question of labels, but practically I think you

1    are going to end up doing the same thing no matter what.  The

2    way I would envision it is that you would issue an injunction

3    that says every 1226 detainee who is in the class --

4            THE COURT:  1226(a).

5            MR. NATHANSON:  -- 1226(a) is entitled to a bond

6    hearing.  Unless they've already had a bond hearing, the

7    Government contests the prejudicial nature of that bond hearing

8    and the detainee fails to satisfy the Court with the could have

9    affected -- under the could-have-affected standard.

10           THE COURT:  That would mean that the person would have

11   to come back through a habe here.

12           MR. NATHANSON:  They'd have to come back to some sort

13   of a proceeding.  Again, it's a matter of labels.  Where if you

14   want to call it a habe proceeding, then, yeah, that's what they

15   would do.

16           THE COURT:  Any requested relief would be very

17   straightforward to anyone who hasn't had a bond hearing yet.

18   It's more complicated for people who failed.  I would say that

19   I've had several cases.  I don't remember how many at this

20   point.  The majority have been released on bail but some have

21   not, and so it's a decision for the immigration judge

22   ultimately under the correct standard.

23           MR. NATHANSON:  Yes, whether they're released or not

24   would be the decision for the immigration judge ultimately

25   under the correct standard.  Whether they're entitled --

1    whether people in that subset are entitled to a second hearing

2    would be a decision for the Court under that could-have-

3    affected standard.

4           THE COURT:  So you would essentially just be -- not

5    enjoining, not telling the kind of relief you would seek, not

6    telling the immigration judge to redo it is basically -- the

7    person would have to come back here, demonstrate prejudice, and

8    then whoever the judge is with an order, if there was

9    prejudice, the immigration court to redo it.

10          MR. NATHANSON:  Not unlike what you did recently in

11   *Reid versus Donelan* where you said -- except that in *Reid*

12   *versus Donelan*, the individualized adjudication was an

13   adjudication of whether a constitutional violation had occurred

14   in the first place.  Here what you'd be doing is determining

15   whether a remedy would be prudentially worth doing.

16          THE COURT:  It would be a decision of a habeas judge.

17          MR. NATHANSON:  Yes.

18          THE COURT:  In this court.

19          MR. NATHANSON:  But for purposes of class

20   certification, my point is that that add-on doesn't destroy the

21   commonality or typicality.

22          THE COURT:  Right, but it may make it worthwhile to

23   have two classes or a subclass.  What are you thinking on that?

24   I mean, they seem to have different interests.

25          MR. NATHANSON:  I think -- conceptually it's hard for

1   me -- you can look at it both ways.  From my perspective,

2   conceptually they all have the same interest.  Everybody has an

3   interest in getting a constitutionally proper bond hearing.

4   The prejudice inquiry is simply a way for you to determine on

5   the basis of the prudential concerns that animate the prejudice

6   requirement whether it's actually worth it in an individual

7   case to send it back to the immigration court for a second bond

8   hearing or not.

9          THE COURT:  This is a question of relief rather than a

10  question of how you certify the class.

11         MR. NATHANSON:  Exactly, exactly.  And I think you can

12  do that with one class and one injunction and simply say, as I

13  suggested, everybody is entitled to a bond hearing unless they

14  are identified as one of these people in that subset.  The

15  Government can test prejudice, but they very well may not be

16  given the low bar, and then, of course, the burden would still

17  be on the detainee to demonstrate prejudice.

18         THE COURT:  Now, let me ask you this:  I've ruled on

19  the Due Process Clause already, but I have not ruled on the

20  Administrative Procedure Act.  Are you requesting me to certify

21  a class under the APA?  Administrative Procedure Act for those

22  who are just following it from the audience.

23         MR. NATHANSON:  I don't think it's necessary here.

24         THE COURT:  It's a new argument, one I haven't thought

25  about.  Whether it even applies to BIA decisions, it would take

1    some time.  It's a common issue.  I suppose that would be true,

2    but it would slow me down a bit.

3        MR. NATHANSON:  I don't think you need to do it at

4    this time because you can give the relief under the

5    Constitution, under the Due Process Clause, and so I don't

6    think it's necessary for you to reach something that you don't

7    have to reach.

8        THE COURT:  All right.  And one question I was -- this

9    is just a purely technical statutory issue, so somebody who

10   knows this -- and I'm going to ask the Government this, too --

11   under 1226(a), are you entitled to a bond hearing if you have a

12   final order of removal?

13       MR. NATHANSON:  You're asking the wrong person.  I'll

14   defer to Mr. McFadden to that.  He's much better versed in the

15   technicalities than I am.

16       THE COURT:  Or does that go into another statute?

17   Most of the people I've had in front of me have had final

18   orders of removal but nonetheless have litigated under 1226(a).

19       MR. McFADDEN:  Your Honor, 1226(a) applies to a person

20   who is in proceedings before the immigration judge or the BIA

21   or in some cases the Circuit Court of Appeal, if the Court of

22   Appeal has granted a stay to hear the case.  At the end of that

23   time period, when those three things have been exhausted, they

24   move into a mandatory detention period called the removal

25   period under a different statute.

1      THE COURT:  That's 1231 or something like that?

2      MR. McFADDEN:  I don't have it in front of me, Your

3  Honor, but I believe that's correct.

4      THE COURT:  So let's assume for a minute someone has a

5  final order of removal because he didn't show up at a hearing.

6  Let's say he didn't get notice -- we see that happen a lot,

7  right? -- but there is a final order of removal, and he's

8  picked up on that.

9      MR. McFADDEN:  Yes, Your Honor, if a person has an

10  order that is administratively final and final before the Court

11  of Appeals and that their time period to contest it, for

12  example, has lapsed, at that time they would not be under the

13  1226 framework.  They would be into the removal period or

14  beyond removal period time period where their detention is

15  governed by a different statutory framework.

16      1226(a) and (c) apply to people who have been accused

17  of being noncitizens who are subject to deportation, and that

18  process is playing out.  Some of them will end up being

19  citizens, many of them will not be subject to deportation

20  because they will be eligible for some type of relief.

21      THE COURT:  So the correct way to define the class are

22  persons subject to 1226(a), and the matter -- in other words,

23  even one of the named Plaintiffs, for example, if I remember

24  correctly, there was a final order of deportation, but it turns

25  out he hadn't received a notice.  So I wasn't sure whether he

```
 1   would qualify until that was canceled.

 2           MR. McFADDEN:  So that was Mr. Pereira Brito, Your

 3   Honor.

 4           THE COURT:  Yes.

 5           MR. McFADDEN:  He did have an absentia order of

 6   removal that had entered in 2005.  After he was arrested, that

 7   order was vacated by the immigration judge.

 8           THE COURT:  So then he moves into the 1226(a)

 9   category.

10           MR. McFADDEN:  Correct, at that point he's in 1226(a).

11   So, yes, I think that we had asked for a class that would be

12   people who are now or will be detained pursuant to 1226(a).

13           THE COURT:  Under that statute.  So it could

14   be -- somebody would be originally not entitled to it but then

15   move into that status depending on what happened in the

16   immigration court.

17           MR. McFADDEN:  That is correct, Your Honor.

18   Immigration detention is sometimes a bit of a moving target

19   because people do move through different statutory frameworks

20   over time.

21           THE COURT:  All right.  Thank you very much.

22           So you flew up from Washington?

23           MR. LE:  Yes, ma'am.

24           THE COURT:  For the world's most perfect weather up

25   here.  All right.  Go ahead.
```

1          MR. LE:  Yes, Your Honor.

2          THE COURT:  It's the one thing I'm sure we'll agree

3    on.

4          MR. LE:  Yes, Your Honor.  I'm originally from Boston

5    so it's good to be back regardless.

6          THE COURT:  It's good to have you.  All right.  Go

7    ahead.

8          MR. LE:  Thank you, Your Honor.

9          Well, before we even get to the commonality question,

10   the Government maintains that this -- the relief that the

11   petitioners request should be barred under 12 -- 8 U.S.C.

12   1252(f)(1).  This, as Your Honor knows, no Court has the

13   jurisdiction to enjoin or restrain the operation of a

14   class-wide basis of certain provisions including the detention

15   provision at hand today, which is 8 U.S.C. 1226(a).

16         And the Government would like to point Your Honor to

17   the *Hamama* decision out in the Sixth Circuit.  They -- the

18   Sixth Circuit had held that under similar situations as the one

19   presently, that 1252(f)(1) does indeed apply to the detention

20   statutes; and therefore, the court would be barred from

21   providing any class-wide injunction relief.

22         THE COURT:  Did it deal with the issue of declaratory

23   relief?

24         MR. LE:  I don't recall if they have -- actually, yes,

25   they did, Your Honor.  If I recall --

1          THE COURT:  I can look as well but --

2          MR. LE:  Yes, Your Honor.  I think that they had

3   addressed it as the functional equivalent to injunctive

4   relief -- no.  They were skeptical that it would prevail on

5   declaratory relief alone on remand, Your Honor, under

6   1252(f)(1).

7          THE COURT:  But they didn't definitively rule on that?

8          MR. LE:  They did not definitively rule, Your Honor.

9          THE COURT:  It seems as if the majority of the Supreme

10  Court would allow declaratory to go forward at the least.

11         MR. LE:  Your Honor, if it were to go forward on

12  declaratory alone, solely on those basis, perhaps that would

13  be -- that would be valid.  However, that's not really the

14  relief that's being sought here because the functionality of

15  the request that petitioners are requesting really -- what

16  we're looking at is indeed injunctive relief.

17         THE COURT:  I don't think *Hamama* dealt with bail, did

18  it?  I remember that case because I originally saw that coming

19  through the system.  The issue is that the statute doesn't

20  provide for burdens of proof or standards of proof, so how

21  would I be enjoining the operation of the statute?

22         MR. LE:  Well, Your Honor, to answer that question, to

23  contextualize it at least, the Government would point Your

24  Honor to *Nken v. Holder,* 556 U.S. 418, 2009.

25         THE COURT:  556 U.S.

1          MR. LE:  556 U.S. 418, 2009.  The specific cite would

2     be Page 428 that the Government will allude to.

3          THE COURT:  Which says?

4          MR. LE:  The Supreme Court essentially in

5     contextualizing what injunctive relief is or how it applies in

6     immigration context, citing the Black's Law Dictionary as an

7     injunction as a court prohibiting someone from doing some

8     specified act or commanding someone to undo some sort of wrong.

9     And in that case, the Supreme Court further distinguished

10    between a stay versus an injunction.  The Supreme Court

11    categorized a stay as suspending some sort of action, whereas

12    the -- whereas an injunction would be, quote-unquote, directing

13    an actor's conduct.  Here that's essentially what the

14    petitioner's request for relief is, to direct the executive

15    branch to conduct their practice and operation of holding

16    immigration bond determination hearings in a certain way.  One,

17    that would be shifting the burden to the Government; and two,

18    that they would be entitled to release within a reasonable time

19    if not.

20          So in that case, Your Honor, the relief that they

21    request certainly does fall under how the Supreme Court has

22    contextualized what injunctive relief is within the immigration

23    context.  Yes, so, therefore, the Government still maintains

24    that the petitioners are barred from seeking this relief, and

25    even notably is that the statute under 1252(f)(1) provides a

1   separate basis, and what the Government submits is the proper

2   channel for these types of challenges, challenging the

3   constitutionality of the specific detainee's bond -- detention,

4   rather, and that's under the specific carve-out of an

5   individual habeas petition in front of the District Court.

6           THE COURT:  So your view is the only court that can

7   issue injunctive relief is the Supreme Court?

8           MR. LE:  When we're enjoining the operation of

9   immigration detention, yes, Your Honor.

10          THE COURT:  The actual language of that says enjoining

11  a statute.  It doesn't --

12          MR. LE:  Yes, Your Honor, under the statute, the

13  operation of that statute, and it contains various provisions,

14  including the one that includes the statute at hand, which is

15  1226(a), Your Honor.

16          THE COURT:  The thing I keep falling back on -- I

17  think about that -- but the statute doesn't prescribe any

18  burdens or standards, so I'm not sure it even applies here.

19          MR. LE:  That's correct, Your Honor.  But if we were

20  to look at Congressional intent and the agency's own

21  interpretation, the statute -- the statute does provide for the

22  burden being on the detainee, although not explicitly.  But if

23  we look at the HR report on the statute, it certainly provides

24  context, and then the subsequent regulations that were

25  promulgated in the '90s in response to the enactment of 1226(a)

1    shows -- it certainly shows that it would be consistent with

2    Congressional intent to put the burden on the detainee.  And in

3    that case, Your Honor, it would then certainly fall under

4    enjoining the operation of --

5           THE COURT:  Do you know whether or not the

6    BIA -- basically BIA changed decades of experience by flipping

7    the burden in -- in other words, in the 1990s, they just

8    changed the burden that had been in existence based on a -- was

9    it a transitional rule that applied only to immigration

10   officers, right?

11          MR. LE:  Immigration officers as in -- as interpreted

12   as the immigration authorities, Your Honor?

13          THE COURT:  Yes, the officers who arrest.  So --

14          MR. LE:  Well, Your Honor, it's not -- if we were to

15   address the APA issue, that's separate, but to answer Your

16   Honor's question, they -- the BIA changed it and cited why that

17   they had changed it, and that's because the regulations that

18   are promulgated after the enactment of this -- of 1226(a) shows

19   that, one, the burden should be on the detainee, because, one,

20   that the presumption of eligibility of release --

21          THE COURT:  I guess what I'm asking is does the

22   Administrative Procedure Act apply to the Board of Immigration

23   Appeals?

24          MR. LE:  Yes, Your Honor.

25          THE COURT:  There are cases that the APA applies to

1  the BIA?

2       MR. LE:  Well, that -- it's an administrative court,

3  Your Honor, so the proper channel would be to -- if we were

4  addressing BIA decisions, would be through, I suppose -- it

5  would be a circuit court decision -- petition, rather.

6       THE COURT:  You're representing the institution.  So

7  in your view, if the BIA makes a mistake, in other words, they

8  basically, without notice or comment, they changed the

9  practice, so would that be subject to the Administrative

10 Procedure Act?  Do they have to give notice in common

11 opportunities?

12      MR. LE:  Well, Your Honor, at the very least that

13 question would be premature here, Your Honor, because there was

14 no -- in this record there's no appeal to the BIA or an

15 opportunity for them to address it.

16      THE COURT:  They are challenging it in front of me, so

17 I'm trying to figure out, if I certify a class, whether it

18 should include for a claim under the APA or whether I should

19 just stick with the Due Process Clause, which I have given a

20 lot of thought to.

21      MR. LE:  Yes, Your Honor, the Government would oppose

22 it with the specific arguments -- since that -- that wasn't the

23 basis for the class certification in the papers.  The

24 Government doesn't have specific cites of authority for Your

25 Honor now.

1          THE COURT:  Maybe not.  Well, they've just sort of

2    waived it anyway, but I just wasn't sure, because there's also

3    a motion for judgment, whether or not -- you're saying that

4    effectively the injunction would be an injunction of the

5    operation of the statute, but that would only be so because of

6    the ruling of the BIA, which wasn't even a regulation.

7          MR. LE:  Well, yes, Your Honor.  Well, in part we're

8    still -- we can still look at Congressional intent for the

9    burden issues as well as the regulations that were promulgated

10   subsequent thereto as to the burden issue.  So irrespective of

11   the BIA's decision at this point, as well, Your Honor, there is

12   the -- there's certainly -- we can certainly look at other

13   factors to determine where authorities --

14         THE COURT:  One last question, which I'm struggling --

15         MR. LE:  Yes, Your Honor.

16         THE COURT:  -- with whether to -- I'm likely to

17   certify a class, and I'm struggling with whether to make it one

18   class or two classes or a class with a subclass.  In other

19   words, two big buckets of people, people who haven't ever had a

20   bail hearing and people who got a bail hearing with what might

21   be a due process concern about allocation of burden and that

22   sort of thing.  So to you, does it matter, or they are just

23   both equally wrong in your view?

24         MR. LE:  Again, Your Honor, that, just based on the

25   belief that the petitioners are seeking -- again, if -- assume

1     that it wasn't barred, the Government would still submit that

2     commonality is still an issue, and therefore, neither a class

3     should be certified or a subclass, so that's the Government's

4     position.  As opposed to specifically whether a subclass would

5     be appropriate if Your Honor denies or grants the petitioners'

6     motion to certify, the Government hasn't -- isn't at this time

7     able to submit a position on that because, again, it wasn't

8     briefed, and it wasn't internally discussed.

9              THE COURT:  No, it wasn't, but I've been thinking

10    about it because the kind of relief would be very different,

11    not very different but somewhat different, between them.

12             Let's move on to the motion for judgment.

13             MR. NATHANSON:  Your Honor, just a couple of points in

14    response; is that okay?

15             THE COURT:  Yes, that's fine.

16             MR. NATHANSON:  A couple of things.  First of all, I

17    wanted to point out *Hamama*, if I'm pronouncing it right, yes,

18    *Hamama*, the issue of declaratory relief came up in a footnote

19    responding to a dissent.  The majority said -- the dissent

20    claims that 1252(f)(1) doesn't bar declaratory relief.  The

21    court said, be that as it may, both parties agree that the

22    issue of declaratory relief is not before us.  And then it went

23    on to express some skepticism about the argument, that it had

24    not been briefed, it had not been argued, it wasn't before the

25    court.  The third --

1          THE COURT:  Was the issue there -- just out of

2     curiosity, the issue there wasn't bail, was it?

3          MR. NATHANSON:  No, it wasn't.  It was whether the

4     Government could actually deport some Iraqi nationals that it

5     had been prevented from deporting.  So there's that.  As far as

6     the issue of enjoining the operation of the statute -- I know

7     you have already ruled on this in *Reid* -- we're asking for

8     exactly the injunction that you felt comfortable issuing in

9     *Reid*.  It's purely procedural.  We're not asking you to tell

10    the Government that they cannot carry out the statute, that

11    they can't give people bond hearings, that they can't detain

12    people or release people.  We're simply asking you to establish

13    the procedural rules that are required by due process, which is

14    something that does not in any way enjoin the operation of the

15    statute.

16          And then I just wanted to point out with respect to

17    the Administrative Procedure Act claim, I hope I didn't give

18    you the impression that we're waiving it.  I'm just saying that

19    it's not something that you need to reach at this time.  Back

20    in *Pensamiento*, which was, I think, the first of these

21    individual cases, at Footnote 6, you did the same thing.  You

22    did what we were asking you to do here, which is not reach the

23    APA claim because you can rule on the due process count.

24          THE COURT:  But the reason it makes a difference here

25    is it looks as if -- I know I'm transitioning into the next

1    issue.  You are looking for judgment.  So that means I'm

2    resolving all the claims.  So I'm unable to do that right

3    now --

4            MR. NATHANSON:  I see.

5            THE COURT:  -- under the Administrative Procedure Act.

6    I just don't know what I think about that.

7            MR. NATHANSON:  Well, you can't issue a judgment as to

8    less than all the claims under Rule 54.

9            THE COURT:  Or I could do a preliminary injunction.

10           MR. NATHANSON:  Or you could do a preliminary

11   injunction, which would be appealable.

12           THE COURT:  I haven't swapped that.

13           What?

14           MR. NATHANSON:  Which could be appealable.

15           THE COURT:  I just never -- I must say, it's creative,

16   but I've never heard of -- I've issued summary judgment and

17   then judgment.  I've issued preliminary injunctive relief and

18   then eventually an injunction once I've worked out all the

19   claims.  I'm just not sure what a motion for judgment is.

20           MR. NATHANSON:  Well, I think we would have moved for

21   judgment on the pleadings except that Rule 12(c) requires the

22   pleadings to be closed before you do that, and since the

23   Government never answered the petition, we weren't in a

24   position to do that.

25           THE COURT:  Well, let me ask you this:  Has the time

1   run for you to answer this?  I don't even know that it has.  I

2   forget.  Was it 90 days?  I mean, it's a long time.

3         MR. LE:  Your Honor, it was 60 days for us to answer.

4   However, I believe, based on our June 26 hearing before you,

5   those issues were put on the back burner, for lack of better

6   terms, because we were addressing the individual habeas

7   petitions first and foremost.

8         THE COURT:  Those issues meaning?

9         MR. LE:  The issues based on the class certification

10   and then the merits of the habeas petition as a whole that we

11   essentially bifurcated the individual habeas petitions.

12         THE COURT:  I know we all by agreement -- well, at

13   least I was concerned that the individuals wait the whole

14   distance while we talked through these issues.  But I don't

15   know that I suspended the time to answer, did I?

16         MR. LE:  Well, it was the Government's understanding,

17   and as we noted in our subsequent filings, that the deadlines

18   set during that hearing were the deadlines that were to be

19   addressed first and foremost, including for a class

20   certification and then all the individual habeas petitions.

21         THE COURT:  When do you understand you have to answer

22   it by?

23         MR. LE:  Pardon me, Your Honor?

24         THE COURT:  When do you understand that you are

25   required to answer the complaint by?

1    MR. LE:  It was something that was to be resolved.

2 Obviously the Government moved for a stay and then that was

3 denied, Your Honor.  So -- and then the subsequent deadlines

4 that Your Honor had set.

5    THE COURT:  Has it already run?  What do you have, 60

6 days or 90 days?  I should know this by heart.

7    MR. LE:  60 days.

8    THE COURT:  So it must have run.

9    MR. LE:  The original deadline would have ran, that's

10 correct, Your Honor.

11    THE COURT:  All right.  So I think the way to handle

12 this is not through a motion for judgment but either a motion

13 for preliminary judgment or, as you say, a motion for judgment

14 on the pleadings.  I don't know that I could issue a motion for

15 judgment right now without resolving the APA claim, and I think

16 I could address a motion for preliminary injunction, and then

17 potentially I could order the Government to respond in some

18 reasonable period of time, say 30 days, and you can move for

19 judgment on the pleadings.

20    How do you want to pursue this at this point?

21    MR. McFADDEN:  Your Honor, thank you.  I think if I

22 could perhaps start just by explaining the reasons that we

23 moved for judgment and the concerns that animate that, and then

24 I can talk about the procedural, you know, the approach that we

25 had suggested.

```
 1              THE COURT:  So let me be clear.  I am very likely to
 2    certify a class.  I'm not completely clear about whether it
 3    should be two classes or one class or one class with a
 4    subclass.  I want to think about that for a second.  But part
 5    of it has to do with the relief requested.  It does strike me
 6    that going forward it would be pretty easy to require the
 7    Government to, on all new cases, to follow this, but
 8    retrospectively, I have to deal with the resources available
 9    and how they come into Federal Court and -- it's a more
10    complicated situation because, according to the numbers you
11    gave me, maybe 150 people are there, who have had a bond
12    hearing, are still there and didn't get the appropriate burden.
13    I have no idea how many of those people would want to move or
14    have already been removed pursuant to law, I mean, just because
15    they're unlawfully here.  But in any event, it's not two or
16    three people.  It's over 100 people, right?
17              MR. McFADDEN:  Yes, Your Honor.  So I think you are
18    correct that as to people who have not yet had a bond hearing,
19    for those people there is no prejudice issue.  Whatever order
20    the court enters would just govern their proceeding.  So the
21    prejudice issue pertains to people who, as of the date of a
22    judgment of order, have already had their bond hearing and
23    remained detained.
24              We proposed a procedure on Friday in our reply
25    regarding class certification on Page 7 that talks about one
```

1    option for how the court could address that in an administrable

2    way.  The Government has a lot of information about all of

3    these members of the class because they're detaining them and

4    they had DHS trial attorneys who participated in the bond

5    hearings.

6          I think a first step might be to narrow the disputed

7    issues to order the Government to identify those members of the

8    class as to whom it will contest prejudice and as to whom it

9    expects not to contest prejudice.  If the Government does not

10   contest the existence of prejudice for a particular individual,

11   that person can just get a new bond hearing because there is no

12   issue to litigate.  If the Government does contest prejudice,

13   then what we had suggested in our filing was perhaps the

14   Government would provide the bond record to class counsel and

15   to the individual and then there could be motions to enforce

16   the court's injunction that could be brought to the court,

17   perhaps referred to an appointed master who could work through

18   them.

19         In terms of the numbers, the Government has

20   information about the number of people who it's currently

21   detaining who might be provided a new bond hearing.  It has not

22   provided that information.  You know, the analysis that we did

23   suggested that in the last six months there were around 260

24   people who were denied bond.  You know, we think for most of

25   them prejudice should not be disputed.

```
 1          THE COURT:  Is that both under A and C?  That's bigger
 2   than the numbers you gave me.
 3          MR. McFADDEN:  So we believe the numbers would relate
 4   to A because the C --
 5          THE COURT:  The statistics you gave us said about half
 6   of them got out, 40 percent got out on bond.
 7          MR. McFADDEN:  Yes, Your Honor.  That's the
 8   declaration of Sophie Beiers.  Give me one second.  I can pull
 9   it out.  And what Ms. Beiers determined was that in about a
10   six-month period --
11          THE COURT:  So they denied release of 41 percent of
12   the cases.
13          MR. McFADDEN:  That's correct, Your Honor.  So about
14   268 people were denied release.  Ms. Beiers also looked, I'd
15   point out, at the magnitude of the bonds that were being
16   ordered in connection with the ability to pay, and found, you
17   know, for example, in Hartford the medium bond was over
18   $25,000, and many people were being detained even after they
19   got bond, indicating those numbers were likely too high to pay
20   for them.
21          Also, the declaration we submitted from Attorney
22   Noureddine established that the bond numbers have been
23   increasing in Boston to the ten to $20,000 range, which is
24   significant.
25          The reason that we had filed a motion for judgment --
```

1           THE COURT:  Why is it so much higher in Hartford than

2     in Boston?

3           MR. McFADDEN:  That is a good question, Your Honor.  I

4     don't have an answer for that.  It seems to be a consistent

5     trend, though.

6           So, Your Honor, the reason that we had filed --

7           THE COURT:  Are there more serious people brought in

8     Hartford or is it still a random --

9           MR. McFADDEN:  To my knowledge, it has to do with

10    where the person is residing when they're detained.  Generally

11    speaking, at least in the past, people in Connecticut have been

12    detained in Franklin but brought to Hartford for their hearings

13    in general.

14          Your Honor, the reason we -- this goes to, to some

15    extent, the reason that we filed the motion for judgment, and

16    we're seeking a prompt judgment, this is not a case where the

17    Government disputes any of the factual assertions that we have

18    made.

19          THE COURT:  Why don't you move for preliminary

20    injunction?  I'm just -- that's sort of something I'm familiar

21    with as opposed to issuing a judgment off the bat.  Is there

22    something to be gained from doing it this way?

23          MR. McFADDEN:  Well, Your Honor, I think just in terms

24    of authority, so under Rule 56(f), once the court observes that

25    there is not factual disputes, which I don't think there are

1  considering the nature of these proceedings --

2       THE COURT:  I don't know.  In other words, it's an odd

3  animal right now.  There's no answer.  I think the Government

4  is probably correct, we left that vague -- I'll take your word

5  for that -- after we were trying to work through some of the

6  other issues with respect to the named.  You could conceivably

7  do a motion for judgment on the pleadings and then a full

8  judgment, I suppose.  You could conceivably do a motion for

9  summary judgment, you could conceivably move for preliminary

10  injunction.  I just have never seen someone -- I'm trying to

11  think.  There's no reason, I suppose, why you can't, but it's

12  highly unusual and there's no procedural vehicle for it.

13       MR. McFADDEN:  Yes, Your Honor.  Well, I think that

14  the reason that we were trying to move forward quickly, one was

15  that we know that the -- there don't seem to be any factual

16  issues here.  We have seen two filings from the Government, not

17  suggesting that the bond procedures are other than as we have

18  suggested, and as a result, what really remain here are legal

19  questions.  And these are questions that this Court has -- you

20  know, we're in a rather unique posture -- this Court has

21  already answered these questions either in the 1226 --

22       THE COURT:  I have, and I'm not going to change that.

23  But I do have certain questions on how to handle the class or

24  the portion of the class that has prejudice.  So -- and also, I

25  should add, that some of my rulings in the *Reid* case were under

1    the Excessive Bail Clause, which has not been asserted here, so

2    I don't know whether I have addressed it under the Due Process

3    Clause.  I don't remember.  But in any event, on the key

4    issues, I have addressed them.

5         So let me ask the Government.  I mean, my goal is to

6    have this all before the First Circuit, and have this -- it's

7    going to be a huge decision for them.  Every District Court

8    that has addressed the issue has placed the burden on the

9    Government, but many courts haven't addressed it.  And to my

10   knowledge, other than saying there's no circuit court -- is

11   that right?  Maybe the Third, too.  The Ninth and the Third may

12   have addressed it.

13        MR. McFADDEN:  As far as we're aware, Your Honor.

14        THE COURT:  So it's going to be a big decision for the

15   First Circuit.  I want to get it all up there is my basic

16   desire.  So would you prefer to answer it next week and have

17   them move for judgment on the pleadings?  Would you prefer to

18   just agree to a judgment just to move the case along or would

19   you prefer to have a motion for preliminary injunction?

20   Because if you agree to a judgment now, this could

21   short-circuit everything, no pun intended, shorten the road to

22   the circuit.

23        MR. LE:  No, Your Honor, we -- to preserve for the

24   record, Your Honor, the Government would like to at least

25   address some of the class certification issues that wasn't

1  exactly addressed before.  And Your Honor is exactly right,

2  there's a prejudicial analysis here, and as a baseline for due

3  process challenge, that's exactly what needs to be shown.

4         THE COURT:  All right.  So let's make this go more

5  quickly.  You have 30 days to answer the complaint, and then

6  you can file a motion for preliminary injunction whenever you

7  want.  And you will have to just make a strategic -- I will

8  issue a ruling allowing class cert, but it is not 100 percent

9  clear how I'm going to do it yet.  Let me at least give it some

10  thought.  Then you're going to decide whether or not you want

11  to move for judgment on the pleadings on everything, including

12  the Administrative Procedure Act issues, or whether you want to

13  just move immediately for preliminary injunction based on the

14  Due Process Clause.

15         The one issue I have, which is not any of your issues,

16  is the wonderful law clerk I have who has been working on this

17  leaves, so I start all over again.  You know that old saga,

18  don't get sick while the new interns are in and residents in

19  the medical schools.  So I start again with somebody.  I'm, as

20  you know, very familiar with it, so it may just involve a

21  slight delay, but I leave it up to you.  What do you think you

22  will be doing?  Do you have any idea or do you want to caucus?

23         MR. McFADDEN:  Yes, Your Honor, I think that -- I

24  appreciate the guidance, and I think we would like to confer

25  internally, you know, on what our next steps will be in light

1    of that information.

2         THE COURT:  And you'll file an answer in 30 days?

3         MR. LE:  Yes, Your Honor.

4         THE COURT:  Have you alerted the First Circuit to the

5    fact that this is chugging along?

6         MR. LE:  Yes, Your Honor --

7         THE COURT:  We could do that, too.

8         MR. LE:  Not yet, Your Honor.  The Government was

9    intending to submit it in their opening brief and appendix,

10   but, however, we required an extension.  So our brief is now

11   due August 12th, I believe.

12        THE COURT:  I see.

13        MR. LE:  The team working on this issue, due to summer

14   scheduling and --

15        THE COURT:  And that's just on the lone habe, right?

16        MR. LE:  It was an individual habeas petition, Your

17   Honor, yes, that's correct.

18        THE COURT:  Because I would like them to know about

19   the *Reid* case as well as now the *Brito* case.  I would love it

20   to all go there together.  But I also, I have to say, have some

21   concern that, as far as I can tell, the immigration judges are

22   simply ignoring the case law, not just in this court but in

23   most of the country, because they keep coming to me.  I mean,

24   I'm sure other judges are getting them, too, but I keep getting

25   cases where they're just ignoring them, even on cases which are

1    pretty transparently low-level people in terms of no serious

2    crimes, they've been here a long time, they don't seem like

3    they're a risk of flight.  So I'm sort of worried that I'm just

4    being -- that the Court is just being ignored, not just me but

5    other judges.  That's my concern, which is why I would like to

6    move this quickly.

7           MR. LE:  That's -- Your Honor, the Government also

8    would like a resolution before the First Circuit as well.  And

9    we certainly are trying our best to make that happen, Your

10   Honor.

11          THE COURT:  Right.  But I would like -- I guess what

12   I'm saying is I would like to issue some form of injunctive

13   relief, and -- at least with respect to the part that I've

14   ruled on just so it could possibly expedite this, but more

15   importantly, that I just don't keep getting these cases where

16   it's just being ignored.

17          MR. LE:  The Government understands Your Honor's

18   previous rulings.  However, this case -- this case may not

19   be -- may not be compatible because it's a class -- moving for

20   a class relief as opposed to those individualized cases, mainly

21   because it would be difficult to provide relief for every

22   single one of the class members, given the individual --

23          THE COURT:  Well, at least going forward -- well, let

24   me ask you, at least going forward, is the Government willing

25   to commit to following the -- my due process ruling?

1          MR. LE:  Your Honor, that's -- I'm not positive if

2     that's the -- if this would be the proper channel regardless,

3     Your Honor.  There's a carve-out for individual habeas

4     petitions for these --

5          THE COURT:  Sure.  But I'm just saying on

6     individuals -- it turns out -- and a significant number of the

7     ones where I have granted the habe and sent it back -- I don't

8     rule but I send it back -- a significant number are getting out

9     on bond.  So it actually has an immediate effect.  Some aren't,

10    fair enough.  In the two cases where they didn't get out, I

11    understood it.  I understood why.  They applied the burden, and

12    I understood the why.  But on a bunch they did let them out,

13    the three in this case.  So I'm trying to figure out whether or

14    not the Government can stipulate that going forward all the

15    immigration judges that are part of the class would follow the

16    shifted burden.

17         MR. LE:  Your Honor, there's procedural vehicles for a

18    reason to file these individual habeas, and the Government

19    wouldn't -- is not in any position to stipulate that.

20         THE COURT:  Okay.  I understand.  I understand that

21    you wouldn't be, in any event.

22         MR. LE:  Way above my pay grade, Your Honor.

23         THE COURT:  I thought that might be the answer, so

24    fair enough.  But that means it adds to the urgency is my

25    point.

```
 1              MR. McFADDEN:  Your Honor, may I just make a quick
 2     inquiry?  I think you're right that it's concerning that the
 3     Government, you know, continues to give bond hearings every day
 4     where people are being separated from their families and their
 5     homes based on a process where the Government doesn't have to
 6     show a reason or consider alternatives to detention or consider
 7     ability to pay.  That's why we sought expedited judgment, I
 8     think, because it's a process.  It's prejudicing members of
 9     this class, you know, in terms of being in prison every single
10     day.
11              I think in terms of the options you suggested, I just
12     wanted to flag two things.  First, in terms of a preliminary
13     injunction, would the Court entertain a motion to expedite the
14     briefing schedule on that?
15              THE COURT:  Yes.
16              MR. McFADDEN:  Thank you, Your Honor.
17              I think the other option I just wanted to flag is
18     something to consider if a class is certified, is there an
19     option to enter a partial final judgment addressing declaratory
20     or injunctive relief?
21              THE COURT:  As soon as the answer comes in, yes.
22              MR. McFADDEN:  Okay.
23              THE COURT:  Yes.
24              MR. McFADDEN:  Thank you, Your Honor.
25              I mean, I think we had filed this motion hoping that
```

1    the Government would now be able, in response to our motion, to

2    express its views.  The Government elected not to do that, but

3    I --

4         THE COURT:  Say that again.

5         MR. McFADDEN:  The Government elected not to express

6    its views on these issues in response to our motion.  We

7    honestly were trying to provide a fair vehicle for them to do

8    that, but if the requirement is going to be wait for an

9    answer --

10        THE COURT:  You can move for judgment.  I don't

11   understand the reluctance.  You can get it more quickly.  I

12   don't understand.  The usual vehicle I see when someone thinks

13   that there's emergency to it is a motion for preliminary

14   injunction, but you take whatever route that you think is

15   appropriate.  You'll -- in any event, you'll answer in 30 days

16   and -- I think you will have to agree that I have ruled on this

17   now multiple times.  I am looking for a way of getting this to

18   the circuit.

19        MR. LE:  Yes, Your Honor.  And the Government submits

20   that it's -- the Doe analysis would be adequate for at least

21   guiding the --

22        THE COURT:  Your brief is due when, end of August or

23   so, mid August?  Then they get, what, 60 days to respond, and

24   then you have -- how long do they get to reply?

25        MR. LE:  I don't know off the top of my head, Your

1    Honor.

2         THE COURT:  I forget.  I'm not an appellate lawyer,

3    but X amount of time, and then you have to get on a session for

4    oral argument and then it takes, what, three to six months to

5    rule?  So that's a long time where people -- where the judges

6    here aren't following it.  That's my concern.  That's my

7    concern.  So, I mean, the First Circuit will do it the best it

8    can, but I would like to have it to have the whole panoply of

9    issues in front of it.  Has somebody appealed *Reid* yet?  Not

10   necessarily.

11        MR. LE:  I have no knowledge of that, Your Honor.

12        THE COURT:  No doubt it will happen as night follows

13   day.  So I'm just hoping that the -- we can get all three of

14   them on the way.  So thank you.  I think that's it.  Isn't it?

15        (No verbal response.)

16        THE COURT:  So when were you going to get back to me

17   on what you wanted to do or do I just wait for whatever you do?

18        MR. McFADDEN:  Your Honor, we could respond to the

19   Court tomorrow, if that is okay with --

20        THE COURT:  That's fine, by letter -- let me say this:

21   You'll answer in 30 days, but I do not anticipate discovery.

22   Does anyone here anticipate discovery?

23        MR. LE:  No, Your Honor.

24        THE COURT:  I think so.  No discovery, that's stayed.

25   And then if they file an answer and you decide not to move for

1    preliminary injunction, would you say two weeks after their

2    answer, motion for judgment on the pleadings?

3            MR. McFADDEN:  Yes, Your Honor.

4            THE COURT:  I understand it's August.

5            MR. McFADDEN:  No, I think two weeks would be

6    sufficient, Your Honor.  In terms of discovery, I mean, I think

7    we have not anticipated now --

8            THE COURT:  You could get a little longer because

9    people have vacations.  So, I mean, just propose -- what would

10   make sense?

11           MR. McFADDEN:  Two weeks after the answer would be

12   fine for us, Your Honor, for a motion for judgment on the

13   pleadings.  I just want to clarify in discovery, at the moment

14   we do not anticipate seeking discovery, I think, necessarily

15   depending on -- but I think it will depend a lot on what we see

16   from the Government and how the case progresses.  So I think

17   we'll have to make that judgment once we've seen a little more

18   from the Government.

19           THE COURT:  Right.  It ended up not being that helpful

20   in *Reid*, let me just say.  I hoped for a more robust

21   statistical record on what was happening, and it was very hard

22   to compare apples to oranges in terms of the statistics both

23   sides were giving, and I'm not sure it was worth the six

24   months, so I would have to have a pretty persuasive case as to

25   why discovery was needed.  I think the issues on due process

1    are pretty straightforward and not fact-dependent.

2            Okay.  Well, thank you very much.

3            And you'll send me a letter.  You'll converse on these

4    things, maybe confer if you think there is a discovery

5    schedule, and I'll just have to think about it.

6            MR. McFADDEN:  Thank you, Your Honor.

7            MR. LE:  Thank you, Your Honor.

8            THE CLERK:  All rise.

9            (Adjourned, 10:34 a.m.)

```
1              CERTIFICATE OF OFFICIAL REPORTER

2

3         I, Linda Walsh, Registered Professional Reporter

4  and Certified Realtime Reporter, in and for the United States

5  District Court for the District of Massachusetts, do hereby

6  certify that the foregoing transcript is a true and correct

7  transcript of the stenographically reported proceedings held in

8  the above-entitled matter to the best of my skill and ability.

9                 Dated this 16th day of August, 2019.

10

11

12              /s/ Linda Walsh_____

13              Linda Walsh, RPR, CRR

14              Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```