## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

GILBERTO PEREIRA BRITO, FLORENTIN
AVILA LUCAS, and JACKY CELICOURT,
individually and on behalf of all those similarly
situated,

         *Plaintiff-Petitioners,*

v.

WILLIAM BARR, et al.,

         *Defendant-Respondents.*

Case No. 19-11314-PBS

## MEMORANDUM IN SUPPORT OF
## PETITIONERS' MOTION FOR SUMMARY JUDGMENT
## OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION

## INTRODUCTION

Petitioners are respectfully moving for the entry of class-wide summary judgment. The Court has already ruled on multiple occasions that the government's policies and practices for conducting immigration bond hearings are illegal. The government routinely jails alleged noncitizens without ever having to demonstrate that it is necessary to deprive them of their liberty. Only the entry of judgment will permanently halt the government's continuing violation of the rights of numerous class members, including current detainees who have already been separated from their families for months, and those newly detained.

In the alternative, if the Court concludes that summary judgment is not currently appropriate due to disputes of fact (or any other reason), the Court should enter a preliminary injunction. Among other reasons, petitioners have shown a strong likelihood of success on the

1

merits of their claims, and, absent this Court's intervention, the class members will be irreparably harmed by being illegally jailed and separated from their families.

## PROCEDURAL HISTORY

In June 2019, petitioners filed a habeas corpus petition and class action complaint on behalf of all people who are or will be detained under 8 U.S.C. § 1226(a) (D.E. 1).  The petition alleges that the government's current bond hearing procedures for people detained under § 1226(a) violate the Due Process Clause (Count I) and federal statute (Count II) because the individual, not the government, bears the burden of proof.  The petition alleges that due process requires bond hearings in which the government is required to justify detention by showing the alien's dangerousness or flight risk by clear and convincing evidence, in which the immigration court considers alternatives to detention, and in which the immigration court considers the individual's ability to pay in determining the amount of any bond.  The petition further alleges that the immigration court's current practice of placing the burden of proof on the individual violates the Administrative Procedure Act.  Petitioners seek an injunction ordering adequate bond hearings and a declaration of the class members' rights.

After a hearing on August 5, 2019, the Court allowed petitioners' motion for class certification on August 6, 2019 (D.E. 58).  Specifically, the Court certified the following two classes for the due process claim (Count I):

> Pre-Hearing Class: All individuals who 1) are or will be detained pursuant to 8 U.S.C. § 1226(a), 2) are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court, and 3) have not received a bond hearing before an immigration judge.

> Post-Hearing Class: All individuals who 1) are or will be detained pursuant to 8 U.S.C. § 1226(a), 2) are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court, and 3) have received a bond hearing before an immigration judge.

*See* D.E. 58 at 25.

The respondents answered the Petition on August 16, 2019. *See* D.E. 66.  In light of that answer, there are no material disputes of fact concerning the practices at issue.  Consistent with the prior rulings on these issues by this Court and many other courts throughout the country, petitioners are entitled to class-wide summary judgment as a matter of law.  Accordingly, petitioners respectfully request that the Court enter class-wide summary judgment in petitioners' favor on both Counts I and II.

## STATEMENT OF MATERIAL FACTS

Because members of both classes are by definition people detained by ICE under 8 U.S.C. §1226(a), each class member is entitled to a bond hearing conducted by an immigration judge. *See* Petitioner's Statement of Undisputed Material Facts ("SOF") ¶¶1-2. In such bond hearings, current practice does not require the government to justify continued detention by proving that the class member presents a danger or risk of flight. *See id.* ¶3.  Rather, current practice requires the class member to prove that he or she should be released because he or she is *not* a danger and *not* a flight risk. *See id.*  The immigration judge will not authorize the release of a class member who does not satisfy that burden of proof. *See id.*

Additionally, during such bond hearings, the immigration judges are not currently required to, and typically do not, consider the class member's ability to pay when selecting a bond amount. *See id.* ¶4.  Immigration judges also are not currently required to, and typically do not, consider releasing class members on conditions of release that do not require the posting of bond. *See id.*

**ARGUMENT**

**I.      The Court Should Grant Summary Judgment To Petitioners On Both Counts.**

**A.      Undisputed Material Facts Entitle Petitioners To Judgment As A Matter Of Law On The Due Process Claim.**

Petitioners are entitled to judgment as a matter of law on their constitutional claim. Fundamentally, due process does not permit the government to jail people without showing a good reason.  Yet here, the government has adopted a procedure exactly to the contrary of what the Constitution requires—people are being detained until they prove they should be free.

> *1.   The Constitution requires that the government bear the burden of proof in immigration bond hearings.*

When the government seeks to detain a person during civil immigration proceedings pursuant to 8 U.S.C. § 1226(a), the Due Process Clause requires that the government prove that such detention is necessary because the individual is dangerous or a flight risk.  *See* U.S. CONST. AMEND. V; *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *United States v. Salerno*, 481 U.S. 739, 752 (1987); *Addington v. Texas*, 441 U.S. 418, 431-33 (1979). This Court has already ruled on multiple occasions that the government must satisfy that burden.  *See Pensamiento v. McDonald*, 315 F.Supp.3d 684, 692 (D. Mass. 2018), *appeal dismissed by gov't*, No. 18-1691 (1st Cir. Dec. 26, 2018); *Doe v. Tompkins*, No. 18-12266, 2019 U.S. Dist. LEXIS 22616, at *3 (D. Mass. Feb. 12, 2019), *appeal pending*, No. 19-1368 (1st Cir.); *Diaz-Ortiz v. Tompkins*, No. 18-12600, 2019 U.S. Dist. LEXIS 14155, at *1 (D. Mass. Jan. 29, 2019), *appeal pending*, No. 19-1324 (1st Cir.).

This Court's rulings are consistent with the emerging "consensus view that where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018)

(collecting cases); *see also Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Hernandez Arellano v. Sessions*, No. 6-6625, 2019 WL 3387210, at *11 (W.D.N.Y. Jul. 26, 2019); *Hernandez-Lara v. ICE*, No. 19-394, 2019 WL 3340697, at *4 (D.N.H. Jul. 25, 2019); *Diaz-Ceja v. McAleenan*, No. 19-824, 2019 WL 2774211, at *10-12 (D. Colo. Jul. 2, 2019); *Brevil v. Jones*, 17-1529, 2018 WL 5993731, at *4 (S.D.N.Y. Nov. 14, 2018).   The Court's rulings are also consistent with decisions requiring the government to bear the burden of proof in related immigration contexts, such as bond hearings for arriving aliens held under 8 U.S.C. § 1225(b) and bond hearings for alleged noncitizens subjected to unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c). *See Reid v. Donelan*, No. 13-30125, 2019 WL 2959085, at *11 (D. Mass. July 9, 2019); *Padilla v. ICE*, No. 18-928, 2019 WL 2766720, at *8 (W.D. Wash. July 2, 2019) & 379 F. Supp. 3d 1170, 1182 (W.D. Wash. 2019).

      2.   *The appropriate standard of proof in immigration bond hearings is clear and convincing evidence.*

For every burden of proof there must be a standard of proof, and here due process requires the government to prove flight risk and dangerousness by clear and convincing evidence.  *See Foucha*, 504 U.S. at 81-83; *Addington*, 441 U.S. at 431-33.  Other courts have held that this is the appropriate standard for both factors in bond hearings for §1226(a) detainees. *See, e.g.*, *Singh*, 638 F.3d at 1205-06; *Hernandez Arellano*, 2019 WL 3387210, at *12; *Hernandez-Lara*, 2019 WL 3340697, at *7; *Brevil*, 2018 WL 5993731, at *4.  These courts have repeatedly recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty."  *See Addington* 441 U.S. at 425.  "Because it is improper to ask the individual to share equally with society the risk of error when the possibly injury to the individual—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection."  *Singh*, 638 F.3d at 1203-04.  The

magnitude of the liberty interest at stake is particularly weighty in the context of removal proceedings, where the proceedings are potentially lengthy and where, in fact, courts have found that "the average time aliens spend in detention . . . has increased by at least ten-fold" in recent years. *Hernandez-Lara*, 2019 WL3340697, at *2, 7 (detained greater than 10 months); *see Hernandez Arellano*, 2019 WL 3387210, at *1 (detained greater than 17 months); *Brevil*, 2018 WL 5993731, at *2 (detained greater than three years); *see also* SOF ¶ 7 (median case length for class members is 130 days, with 75th percentile over 700 days).

Petitioners acknowledge this Court's recent holding that, when bond hearings become necessary for people detained pursuant to §1226(c), "due process requires the Government to prove an alien's dangerousness by clear and convincing evidence . . . [and] an alien's risk of flight by a preponderance of the evidence." *See Reid*, 2019 WL 2959085, at *13; *see also Diaz-Ceja*, 2019 WL 2774211, at *11 (same, in §1226(a) context).  Although the bifurcated standard adopted by this Court is consistent with the Bail Reform Act, petitioners respectfully submit that a more protective standard is warranted for detention under §1226(a).  By definition, the class members in this case lack a criminal history that would subject them to mandatory detention under §1226(c).  Further, unlike the defendants to whom the Bail Reform Act applies, flight risk determinations under §1226(a) apply to alleged noncitizens who are appearing for a civil removal proceeding and who forfeit rights in those proceedings by defaulting.  *See* 8 U.S.C. §1229a(b)(5) (providing for entry of removal order where removable noncitizen who was notified of hearing does not appear).  Consequently, although petitioners recognize that the Court is likely to apply the same bifurcated standard of proof it ordered in *Reid*, they respectfully assert—and wish to preserve for the potential benefit of the class—the argument that clear and convincing evidence is required.

> 3. *Immigration bond hearings must include consideration of conditions of release and ability to pay.*

The Constitution also requires that the immigration court consider alternatives to detention (such as release on conditions) and also consider an individual's ability to pay bond during immigration bond hearings.  In *Reid*, the Court held that, in bond hearings for §1226(c) detainees, "due process requires that an immigration court consider both an alien's ability to pay in setting the amount of bond and alternative conditions of release such as GPS monitoring that reasonably assure the safety of the community and the criminal alien's future appearances."  *See* 2019 WL 2959085, at *14.  "This requirement guarantees that the decision to detain . . . is reasonably related to the Government's interest in protecting the public and assuring appearances at future proceedings."  *See id.*  This reasoning is equally applicable to other types of immigration bond hearings (including under §1226(a)), as this Court and others have held.  *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (§ 1226(a) detainee); *Doe*, 2019 U.S. Dist. LEXIS 22616, at *5; *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 338 (W.D.N.Y. 2018) (§1225(b) detainee).  These requirements are also necessary to ensure that alleged noncitizens in civil proceedings do not receive less due process than is provided to defendants in criminal proceedings criminals under the Bail Reform Act.  That Act requires that criminal pre-trial detention be justified by a finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *see* 18 U.S.C. §3142(e)(1), *Salerno*, 481 U.S. at 750; and also prohibits any "financial condition that results in the pretrial detention of the person."  *See* 18 U.S.C. §3142(c)(2); *United States v. Mantecon-Zayas*, 949 F.2d 548, 551 (1st Cir. 1991).

**B.      Undisputed Material Facts Entitle Petitioners To Judgment As A Matter Of Law On The Statutory Claim.**

In this case and others, the government has maintained that the Immigration Court's practice of requiring §1226(a) detainees to prove lack of danger and flight risk is justified by "over 20 years" of agency decisions, through which the Board of Immigration Appeals ("BIA") and "immigration courts nationwide have consistently held that the detainee bears the burden of proof at a bond hearing." Resp.'s Opp. to Mot. for Class Cert. (D.E. 51) at 6 (citing *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999); *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006)). The government's appeal to administrative precedent applying its burden-allocation policy, however, ignores the shaky legal foundations for what it has been doing. When the BIA decisions on which the government relies are assessed in light of the historical record, it becomes apparent that they were arbitrary and capricious, and contrary to constitutional rights, in violation of the Administrative Procedure Act. 5 U.S.C. §706(2)(A) and (B).[1/]

Since the passage of the Immigration and Nationality Act (the "INA") nearly 70 years ago, Congress has consistently authorized the release of aliens during the pendency of their deportation proceedings. Following enactment of the INA in 1952, 8 U.S.C. §1252(a)(1) (the precursor to § 1226(a)) provided in relevant part that such aliens "may, in the discretion of the Attorney General and pending such final determination of deportability … be continued in custody; or … be released under bond …; or … be released on conditional parole." *See Matter*

---

[1/]      The government has argued that *Adeniji* and *Guerra* are entitled to "deference" under *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984). *See* Resp. Opp. to Mot. for Judgment (D.E. 55) at 13-14. *Chevron* has no bearing on this matter. The problem here is the BIA's unexplained reversal in *Adeniji* to abrogate prior policy and to replace it with an unconstitutional practice. This type of inquiry is not governed by *Chevron* principles. *River Street Donuts, LLC v. Napolitano*, 558 F.3d 111, 117 (1st Cir. 2009); *Pensamiento*, 315 F. Supp. 3d at 693 ("A *Chevron* argument about statutory interpretation does not change the constitutional analysis.").

*of Valdez-Valdez*, 21 I&N Dec. 703, 704 n.2 (BIA 1997) (quoting former statute); *see also*

Holper, *The Beast of Burden in Immigration Bond Hearings*, 67 Case Western Reserve L. Rev

75, 81 n.17 (Fall 2016).  In 1976, the BIA ruled that an alien subject to §1252(a)(1) "should not

be detained or required to post bond except on a finding that he is a threat to the national

security…, or that he is a poor bail risk…." *Matter of Patel*, 15 I&N Dec. 666, 666 (BIA 1976).

Thereafter, the immigration courts uniformly "presumed that an alien would not be detained or

required to post bond unless there was [such] a finding…."  *Matter of Valdez-Valdez*, 21 I&N

Dec. at 706*; see also Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987); *Matter of Shaw*, 17 I&N

Dec. 177 (BIA 1979); *Matter of Spiliopoulos*, 16 I&N Dec. 561 (BIA 1978).  Because it required

a positive finding that the alien "*is* a poor bail risk" in order to detain him (as opposed to a

negative finding that he is *not* a bail risk in order to release him), *Patel* put the burden of proof

squarely on the government.

Beginning in the 1980s, Congress passed a series of statutes that carved out categories of

"presumptively unbailable" immigration detainees.  *See* Holper, *Beast of Burden*, 67 Case

Western Reserve L. Rev at 83-85.  Some of these statutes mandated detention for particular

categories of alleged noncitizens.  *See, e.g.*, Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690,

§7343, 102 Stat. 4470 (1988) (stating that "the Attorney General shall not release . . . from

custody . . . any alien convicted of an aggravated felony").  Others explicitly required particular

categories of alleged noncitizens to bear the burden of proving the justification for release.  *See,*

*e.g.*, Misc. and Tech. Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-

232, §306(a)(4), 105 Stat. 1733 (stating that "the Attorney general may not release . . . any

lawfully admitted alien who has been convicted of an aggravated felony . . . unless the alien

demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the

community and that the alien is likely to appear before any scheduled hearings"). However, for all other alleged noncitizens—*i.e.*, those outside the narrow categories explicitly selected by Congress for mandatory or presumptive detention—§1252(a)(1) continued to apply, and the BIA did not alter the *Patel* rule with its presumption in favor of release for such detainees. *See Valdez-Valdez*, 21 I&N Dec. at 706.

In 1996, Congress moved the statutory authority to detain alleged noncitizens during their proceedings from former §1252 to what is now §1226. In §1226(c), Congress again mandated the detention of a defined subset of alleged noncitizens, specifically those who have committed certain crimes or have certain links to terrorism. However, Congress also again declined to order that detainees *outside* of that category (such as the class members in this case) must be detained, or that they should be presumed detained, or that they should bear any burden of proof to secure release from custody. Instead, §1226(a) is functionally indistinguishable from former §1252(a) and is entirely silent on bond procedures. *Compare* 8 U.S.C. §1226(a), *with* 8 U.S.C. §1252(a)(1). Consequently, because the BIA had long and consistently applied a presumption *against* the detention of aliens held under §1252(a), and because such a presumption is constitutionally required, *Patel* should have continued to be effective policy after the enactment of §1226(a).

In 1999, however, the BIA did not apply the *Patel* rule in *Matter of Adeniji,* and instead shifted the burden of proof from the government to the individual. *Adeniji* was an unusual, if not a unique, case. Mr. Adeniji had been convicted of an aggravated felony. *See* 22 I&N Dec. at 1104. He could not be subjected to mandatory detention, though, because he had been released from criminal custody too *early* to be covered by the recently enacted §1226(c), and the Board's decision came too *late* to be covered by the Transition Period Custody Rules, which had expired,

10

and for which Congress had not enacted a "savings clause." *Id.* at 1107-1111.   The BIA thus

decided that, under the peculiar circumstances confronting it, §1226(a) was the only available

statutory authority for detention.  *Id.* at 1111.   And it approved an agreement, reached by Mr.

Adeniji and the government, that for purposes of those odd circumstances, "the respondent must

show that he is not likely to abscond, is not a threat to the national security, and is not a threat to

the community" in keeping with the standards articulated in *Matter of Drysdale*, 20 I&N Dec.

815 (BIA 1994).  *See Adeniji*, 22 I&N Dec. at 1112.  The Board also stated that its arrangement

of the burden of proof in Mr. Adeniji's case was justified by a regulation, 8 C.F.R. §236.1(c)(8).

Importantly, the decision in *Drysdale* said nothing about *Patel*, and certainly did not

purport to overrule or otherwise abrogate it.  That was because *Drysdale* had nothing to do with

the treatment of detainees authorized for release under §1252(a)(1) or the later §1226(a).

*Drysdale*, rather, interpreted one of the pre-1996 presumptive detention provisions of

§1252(a)(2) to "create a presumption against the release from Service custody of any alien

*convicted of an aggravated felony* unless the alien demonstrates that he was lawfully admitted to

the United States, is not a threat to the community, and is likely to appear for any scheduled

hearings."  20 I&N Dec. at 816-17 (emphasis added).

Similarly, *by its own terms*, the cited regulation, §236.1(c)(8), could not possibly be

deemed applicable to the general run of bond hearings in the Immigration Court.  On its face, the

regulation speaks only to initial bond determinations conducted by an "officer authorized to issue

a warrant of arrest…."   As the BIA acknowledged in *Adeniji*, immigration judges are not

authorized to issue such warrants.  *See* 22 I&N Dec. at 1112.

In 2006, in *Matter of Guerra*, the BIA confirmed that *Adeniji* had placed the burden of

proof on *all* detainees in *all* bond proceedings under §1226(a).  *See* 24 I&N Dec. at 38.

Although this outcome wholly abrogates *Patel*, the BIA did not explain—not in *Adeniji* and not in *Guerra*—why that should be so, or why the authorities cited in the unique circumstances of *Adeniji* can or should overcome decades of BIA precedent or the constitutional limits on civil detention.  Nor has the BIA offered such explanation in any of its subsequent decisions, which simply cite *Adeniji*, *Guerra*, and their progeny as authority for a blanket rule that a §1226(a) detainee bears the burden of proof in his or her bond proceeding.  *See, e.g.*, *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) (citing *Adeniji* and *Guerra*); *Matter of Fatahi*, 26 I&N Dec. 791 (BIA 2016) (citing *Adeniji*, *Guerra*, and *Urena*); *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018) (citing *Fatahi*, *Adeniji*, and *Urena*).  As far as its published decisions indicate, the Board has never once considered, much less explained, why the burden of proof should have suddenly been flipped onto the individual in 1999, nor has it ever grappled with the constitutional ramifications of that reversal.

The BIA's current allocation of the burden of proof for §1226(a) proceedings is, therefore, unlawful under the Administrative Procedure Act in two ways.  First, it is "contrary to constitutional right," 5 U.S.C. §706(2)(B), for reasons already stated.  Second, it is arbitrary and capricious, 5 U.S.C. §706(2)(A), because it embodies an "unexplained inconsistency in an agency's interpretation of a statute."  *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 115 (1st Cir. 2009) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).  The government cannot prevail by relying upon the BIA's statements in *Adeniji*—those statements not only fail to address or acknowledge *Patel*, but also cite authorities that, by their own terms, are not applicable to §1226(a) bond hearings.  *See* 22 I&N Dec. at 1112.  Even if those statements could constitute an "explanation" (which they cannot), they are irrational in the

context of a broad policy reversal that shifts the burden of proof for all §1226(a) detainees.[2]  *See River Street Donuts, LLC*, 558 F.3d at 115.

## II.     The Court Should Grant Both Declaratory And Injunctive Relief.

The Court has already ruled that, notwithstanding the provisions of 8 U.S.C. §1252(f)(1), the Court may issue class-wide declaratory and injunctive relief in this case.  *See* Aug. 6, 2019 Order (D.E. 58) at 13-16. As described below, both declaratory and permanent injunctive relief are called for here.  These remedies are necessary to prevent the class members from being unlawfully jailed, deprived of their liberty without due process, and unjustly separated from their families, homes, and jobs.

### A.     Declaratory Relief Should Establish The Due Process Requirements For Bond Hearings For All Class Members.

In light of the legal principles described above, the Court should enter the following declaratory judgment as to the class:

> Individuals detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing at which the government bears the burden to justify continued detention by proving by clear and convincing evidence that the detainee is a danger to others or a flight risk, and even if he or she is, that no condition or combination of conditions will reasonably assure the detainee's future appearance and the safety of the community, and which includes consideration of the detainee's ability to pay in selecting the amount of any bond and suitability for release on alternative conditions of supervision.

---

[2]     Count II seeks narrower relief than Count I.  In prior cases addressing these issues, the Court has resolved the broader constitutional issues and did not reach the statutory arguments. *See, e.g., Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 n.6 (D. Mass. 2018).  To the extent the Court may reach the statutory arguments in this case, petitioners are simultaneously filing a motion to modify the class definition to include Count II.  Alternatively, if the Court finds it necessary or appropriate to address only Count I at this time (perhaps, for example, to await the production of an administrative record), it could enter final judgment on Count I alone upon a finding that there is no just reason to delay, *see* Fed. R. Civ. P. 54(b), or could enter a preliminary injunction on constitutional grounds.

As discussed above, each of these elements is necessary to protect the rights of the class members as a matter of constitutional law, and shifting the burden of proof to the government is further required as a matter of statute.  These requirements are also fully consistent with the terms of the Bail Reform Act and ensure that alleged noncitizens who Congress has authorized to be released during the pendency of their civil removal proceedings are not afforded less process than accused criminals.  Further, because habeas relief is "above all" an "adaptable" and "equitable" remedy, the full range of procedural protections is appropriate to ensure that any order requiring the government to bear the burden of proof is not an illusory remedy—as it would be if, for example, if the immigration courts authorize more bonds but in amounts so high as to constitute *de facto* detention orders.  *See Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008); *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  The Court should therefore include all of these requirements in its declaratory judgment.

**B.** **The Court Should Enter A Permanent Injunction Ordering the Government to Provide Due Process in All Future Bond Hearings and to Provide Members of the Post-Hearing Class New Bond Hearings If They Suffered Prejudice.**

All of the conditions for issuance of a class-wide permanent injunction have been satisfied.  *See Healey v. Spencer*, 765 F.3d 65, 74 (1st Cir. 2015).  Once the Court grants summary judgment to petitioners, the class members will have prevailed on the merits.  And because the government's failure to provide due process in bond hearings for class members has unlawfully deprived them of their liberty and will do so in the future, the proposed injunction would prevent irreparable harm.  *See Ferrara v. United States*, 370 F.Supp.2d 351, 360 (D.Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury").

The balance of interests also favors the class members because any burden on the government will be minimal.  The government is already required to provide a bond hearing for

each pre-hearing class member who requests one. *See* 8 C.F.R. §§236.1(d). Additionally, (as described below) the requested injunction will not require the government to provide members of the post-hearing class with a new hearing unless they were prejudiced by the prior error. Given that the Boston and Hartford immigration courts are, collectively, already providing bond hearings at a rate of nearly 2,000 hearings a year, *see* SOF ¶5 (almost 1,000 hearings in a given six-month period), there is no reason to believe that incrementally increasing that number to accommodate the requirements of constitutional due process will be unwarranted effort. To the extent some effort may be required, moreover, "the burden of complying with the law"—which is all that the injunction requires—"does not weigh heavily in the balance of harms analysis." *Andujo-Andujo v. Longshore*, 2014 U.S.Dist.LEXIS 83641, at *17 (D.Col. June 19, 2014).

Lastly, "the public interest supports requiring the Government to obey the Constitution in its administration of immigration detention." *Reid v. Donelan*, 2019 U.S.Dist.LEXIS 114132, at *46 (D.Mass. July 9, 2019), citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("all citizens have a stake in upholding the Constitution").

Accordingly, petitioners propose an injunction[3] containing the following terms (set forth more fully in the accompanying proposed order):

First, after the date of judgment, any bond hearing held for any class member for any reason shall meet or exceed the procedural requirements set forth in the proposed declaration. This will afford complete protection to the pre-hearing class. It will also ensure that, to the extent that any member of the Post-Hearing class receives a new hearing at some future time

---

[3] Because the Court can grant complete relief to both classes in a single order, the Court could elect to modify the classes and place all class members in a single class, with the post-hearing group potentially addressed as a sub-class.

(either because of this case, or due to an ordinary "changed circumstances" motion, or for any other reason), that hearing will comply with the requirements of due process.

Second, each member of the Post-Hearing class shall be provided with a new bond hearing *if* he or she was prejudiced by the errors in the prior hearing(s), where prejudice is defined in accordance with this Court's prior orders. *See, e.g.*, *Doe*, 2019 U.S.Dist. LEXIS 22616, at *3-4.  Importantly, this provision will *not* require the Court to adjudicate prejudice for the individuals at this time.  Rather, a class member who believes he or she was prejudiced would have multiple options to pursue a new hearing—by agreement with the government (where, for example, prejudice is not a contested issue), upon application to an immigration judge, by individual habeas petition, or (if appropriate) through a class-based motion to enforce the injunction in this action.

Third, the Court should include in the injunction provisions that will facilitate the exchange of information necessary for its proper execution and enforcement.  The injunction should require the government, within 30 days of entry of judgment, to serve on class counsel, and file under seal with the Court, a document containing the following information for each member of the Post-Hearing class: (i) the name and A-number; (ii) the current location; (iii) the date the current period of detention began, (iv) the name of the person's counsel in immigration court, if any, (v) a statement of whether the government intends to dispute prejudice as to that person, and if so, an brief explanation of the good faith basis for such dispute, and (vi) a statement of whether a new bond hearing has taken place after the date of the Court's judgment and, if so, the outcome.  A copy of this statement with names and A-numbers redacted should also be filed for the public record.  For any member of the Post-Hearing class as to whom the government contests prejudice, the government should provide class counsel and the class

member a copy of the record from the bond hearing.  To ensure the privacy interests of class members are protected, the parties can be ordered to prepare and submit a stipulated protective order governing the exchange of that information.

### III.    If The Matter Is Not Ripe For Permanent Injunctive Relief, The Court Should Issue A Preliminary Injunction Pending Final Resolution.

The matter is ripe for final judgment: the material facts are not disputed, the law is clear, and permanent relief can and should be given. However, if the Court for any reason believes that additional proceedings are needed before it can finally determine that petitioners should prevail on the merits of either claim, then it should issue—and petitioners formally request—a preliminary injunction that (i) requires the government to provide due process in all bond hearings conducted while the injunction is pending, and (ii) requires the government to provide all of the information described in Section II.B. of this memorandum. The standards for issuing a preliminary injunction are identical to the criteria for permanent injunctive relief, except that a preliminary injunction may issue before the plaintiff has actually prevailed on the merits, as long as he or she is likely to do so. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For reasons already stated, it is clear that they have been satisfied.

### <u>CONCLUSION</u>

For the reasons stated in the petition and this memorandum of law, the named Petitioners respectfully ask the Court (i) to enter summary judgment on their behalf, and on behalf of the members of the Pre-Hearing Class and the Post-Hearing Class, and (ii) to issue the declaratory and permanent injunctive relief discussed in this memorandum, and in the form of the draft order submitted herewith.

Respectfully submitted,

GILBERTO PEREIRA BRITO, FLORENTIN
AVILA LUCAS, and JACKY CELICOURT,
individually and on behalf of all those similarly
situated,

By their attorneys,


  /s/    Susan Finegan
Susan M. Finegan (BBO # 559156)
Susan J. Cohen (BBO # 546482)
Andrew Nathanson (BBO # 548684)
Mathilda S. McGee-Tubb (BBO # 687434)
Ryan Dougherty (BBO # 703380)
Jennifer Mather McCarthy (BBO # 673185)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND
POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
smfinegan@mintz.com
sjcohen@mintz.com
annathanson@mintz.com
msmcgee-tubb@mintz.com
rtdougherty@mintz.com
jmmccarthy@mintz.com


  /s/    Matthew Segal
Matthew R. Segal (BBO # 654489)
Daniel McFadden (BBO # 676612)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
dmcfadden@aclum.org
alafaille@aclum.org

Gilles R. Bissonnette (BBO # 669225)
Henry R. Klementowicz (BBO # 685512)
SangYeob Kim (N.H. Bar No. 266657)*

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NEW HAMPSHIRE
New Hampshire Immigrants' Rights Project
Concord, NH 03301
Tel.: 603.333.2081
gilles@aclu-nh.org
henry@aclu-nh.org
sangyeob@aclu-nh.org

Michael K. T. Tan*
ACLU FOUNDATION IMMIGRANTS' RIGHTS
PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Tel: 212-549-2660
mtan@aclu.org

*Admitted *pro hac vice*

*Attorneys for Petitioners*

Dated: August 29, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2019, the above-captioned document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.


/s/    Susan Finegan
Susan M. Finegan


90859268v.1