**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, JACKY CELICOURT, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | C.A. No. 1:19-cv-11314-PBS |
| WILLIAM P. BARR, U.S. Attorney General, *et al.*, | ) ) | |
| Respondents. | ) ) | |

<u>**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR SUMMARY
JUDGMENT AND MOTION TO MODIFY THE CLASS DEFINITION**</u>

**(LEAVE TO FILE EXCESS PAGES GRANTED: SEPTEMBER 11, 2019)**

# I.   INTRODUCTION

Under Section 1226(a) of Title 8, Congress provided that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1226(a) further provides that the Secretary of Homeland Security "may" continue to detain the alien or "may" release him on bond, except in circumstances involving criminal or terrorist aliens who are subject to mandatory detention. The procedures by which the Government decides whether to detain an individual alien in removal proceedings have been in existence for more than two decades. These procedures explain that every person detained for removal proceedings under Section 1226(a) may be released on bond if he or she demonstrates to the satisfaction of an immigration officer that he or she is not a danger to the community or a flight risk. When an officer determines that an alien should remain detained, each such individual has a right to an individualized review of the initial custody determination at a hearing before an immigration judge and, if necessary, the Board of Immigration Appeals ("BIA" or "Board"), where the alien can submit evidence and testify in support of release. Further, each such person has the right to submit evidence supporting release, and to request a subsequent custody redetermination hearing if circumstances materially change.

In this class action, Petitioners allege that these bond procedures violate their right to due process. *See* ECF No. 1. Specifically, Petitioners aver that: 1) the Due Process Clause of the Fifth Amendment of the Constitution requires that the Government bear the burden of proof to justify continued detention of an alien detained under 8 U.S.C. § 1226(a) by proving by clear and convincing evidence that the alien is a danger to others or a flight risk; and 2) detention without placing the burden on the Government violates the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA"). *See* ECF No. 1.

Further, Petitioners' request both declaratory and injunctive relief for both the pre-hearing and post-hearing subclasses.[1] Petitioners now move for summary judgment. *See* ECF Nos. 67, 68. Additionally, Petitioners request that this Court modify the class definition to include their allegations under Count II—an alternative statutory claim under the INA or the APA challenging the Board's decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999). ECF No. 68 at 8-13.

The Court should deny Petitioners' motions for several reasons. First, Supreme Court precedent forecloses the claim that the Due Process Clause requires the Government to bear the burden of proof to justify continued detention of an alien in removal proceedings. Indeed, the Supreme Court has consistently upheld detention pending removal proceedings on the basis of a *categorical*, rather than individualized, assessment that a valid immigration purpose warranted interim custody. *See e.g.*, *Demore v. Kim*, 538 U.S. 510, 530 (2003); *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. 524, 538 (1952); *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Even assuming Supreme Court precedent does not directly foreclose Petitioners' claims, the ample procedural protections available to aliens detained under Section 1226(a) more than adequately satisfy the due process requirement.

Second, Petitioners' alternative statutory challenge to the Board's decision in *Matter of Adeniji* is equally without merit. The Board's holding in *Matter of Adeniji* represents a reasonable interpretation of Section 1226(a) and is entitled to deference under *Chevron* principles. Notably, in *Maldonado-Velasquez v. Moniz*, a district court in this district has already opined that that the Board's statutory interpretation of placing the burden on aliens detained under Section 1226(a) at bond hearings was reasonable and entitled to deference. 274 F. Supp. 3d 11, 13 n.1 (D. Mass. 2017) (appeal

---

[1] On August 6, 2019, this Court granted Petitioners' motion for class certification (ECF No. 17). *See* ECF No. 58. However, the Court created two separate classes for Petitioners' due process claim: 1) Pre-Hearing Class and 2) Post-Hearing Class. *Id.* at 25.

dismissed as moot in *Maldonado-Velasquez, No. 17-1918*, Doc No. 00117268737, n. 2 (Mar. 22, 2019)).). That decision was correct and merits following.

Third, Petitioners have not demonstrated that they are entitled to a declaratory judgment nor a permanent injunction as a matter of law. At the outset, 8 U.S.C. §1252(f)(1) plainly eliminates the classwide relief that Petitioners seek. Beyond that, Petitioners' requested permanent injunction is not appropriate because it would impose an undue burden on the Government. Additionally, Petitioners' requested relief would be adverse to public interest because such relief would run contrary to congressional intent and encroach on Congress's plenary powers.

Finally, the Court should deny Petitioners' alternative request for a preliminary permanent injunction because they have not met the requisite standards for such relief. First, Petitioners cannot establish a likelihood of success on the merits. Second, Petitioners cannot demonstrate that they would suffer irreparable harm absent a preliminary injunction. Third, Petitioners have not established that, on balance, their hardship would outweigh the Government's severe burden. Finally, Petitioners cannot show that the effects of a preliminary permanent injunction would support public interest. Accordingly, they have not met their burden for a preliminary injunction in this case.

For these reasons and as further detailed below, this Court should deny Petitioners' motion for summary judgment and motion to modify the class definition.

## II.   FACTUAL AND PROCEDURAL HISTORY

Pursuant to Local Rule 56.1, Respondents' response to Petitioners' Statement of Undisputed Material Facts (ECF No. 69) is attached hereto as Exhibit 1. Additionally, Respondents have documented this case's procedural history in their previous filings. *See* ECF Nos. 51 at 3-4, 55 at 2. Accordingly, Respondents incorporate by reference the procedural history of this case, as detailed in Respondents' prior filings.

On August 16, 2019, Respondents filed their answer to Petitioners' habeas petition (ECF No. 1).[2] Then, Petitioners moved for summary judgment on August 29, 2019. ECF Nos. 67, 68. On the same day, Petitioners also filed a motion to modify class definition, requesting the Court to expand the class and include their statutory claims under the INA or the APA challenging the Board's decision in *Matter of Adeniji* (Count II). ECF Nos. 72, 73.[3]

## III.   ARGUMENT

### A.   The Constitution does not require the Government to bear the burden of proof at a bond hearing for an alien detained under Section 1226(a), and the available procedural protections fully satisfy due process.

Petitioners assert that they are entitled to judgment as a matter of law on Count I—claiming that placing the burden on an alien detained under Section 1226(a) at a bond hearing violates the Due Process Clause of the Constitution. ECF No. 68 at 4-7. This claim, however, runs contrary to Supreme Court precedent. Even if the Supreme Court did not foreclose this argument, the ample procedural protections afforded to aliens detained under Section 1226(a) more than adequately satisfy due process.

#### a.   Supreme Court precedent forecloses the claim that the Due Process Clause requires the Government to bear the burden of proof to justify continued detention of an alien in removal proceedings.

Throughout the entire history of federal immigration law, the Supreme Court has affirmed the constitutionality of detention pending removal proceedings and has never required the Government to bear the burden of proof. *See, e.g.*, *Demore*, 538 U.S. at 531; *Flores*, 507 U.S. at 306; *Carlson*, 342

---

[2] The Court initially set the deadline for Respondents' answer as September 5, 2019. ECF No. 57. However, Respondents agreed to an expedited timeline upon Petitioners' request and subsequently filed their answer (ECF No. 66) about three weeks earlier than the initial deadline. *See* ECF No. 63.

[3] Counsel for Petitioners assented to Respondents submitting a consolidated response to their pending motions by September 23, 2019, and, if needed, exceeding 20 pages but not to exceed 40 pages. *See* ECF Nos. 74, 77. The Court granted both requests on September 10 and 11, 2019, respectively. ECF Nos. 76, 78.

U.S. at 538; *see also Zadvydas*, 533 U.S. at 701. In fact, the Supreme Court has repeatedly upheld detention pending removal proceedings on the basis of a *categorical*, rather than individualized, assessment that a valid immigration purpose warranted interim custody. *See Demore*, 538 U.S. at 530; *Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. It is against this backdrop that the Court must assess Petitioners' due process challenge to the procedures that govern bond proceedings under Section 1226(a).

Most prominently, in *Demore*, the Supreme Court upheld the constitutionality of 8 U.S.C. § 1226(c), which mandates detention during the pendency of removal proceedings without *any* individualized bond hearing in cases where an alien was convicted of certain criminal offenses. 538 U.S. at 513-14. The habeas petitioner in *Demore* argued that "his detention under section 1226(c) violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Id*. at 514. In rejecting this view, the Supreme Court emphasized that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Id*. at 523 ("deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'") (citation omitted). The Supreme Court also cited the fact that Congress "had before it evidence that permitting discretionary release of aliens pending their removal proceedings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States." *Id*. at 528.

Like Section 1226(c), Section 1226(a) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. No. 104-208, 110 Stat. 3009-546 (enacted Sept. 30, 1996). Section 1226(a) amendments to the INA reflect Congress's concern that "[a] chief reason why many deportable aliens are not removed from the United States is the inability of the INS to detain such aliens through the course of their deportation proceedings." H.R. Rep. No. 104-469, pt. 1, at 123 (1996). Unlike Section 1226(c), however, the Section 1226(a) procedures not only allow for

individualized bond hearings, but also permit administrative review of bond decisions, as well as an opportunity to request subsequent bond hearings if there is a material change in circumstances. 8 C.F.R. §§ 236.1(d)(3), 1003.19(e), 1236.1(d)(3). Insofar as the Supreme Court in *Demore* upheld detention pending removal proceedings without any of the foregoing procedural protections, it follows *a fortiori* that the individualized and more extensive procedures governing detention under Section 1226(a) are well within constitutional limits.

Furthermore, in *Carlson*, the Supreme Court rejected a due process challenge brought by resident aliens who were detained pending removal proceedings under the predecessor to Section 1226(a) and pursuant to a government policy of categorically denying bail to aliens who were members of the Communist Party. 342 U.S. at 535, 538. The Court reasoned that this statute was a constitutional exercise of the Attorney General's broad discretion under the statute because it was designed to rationally advance a legitimate government purpose. *Id*. at 540. In the same manner, Section 1226(a) must be assessed in terms of a legislative scheme that plainly aimed to increase the rate of removal through increased use of detention. H.R. Rep. No. 104-469, pt. 1, at 123. Placing the burden on the alien to show he or she is not a flight risk or danger is rationally related to advancing this legitimate immigration purpose.

In *Flores*, the Supreme Court rejected a due process challenge to a regulation that denied bail under Section 1226(a) to alien minors in removal proceedings who could not be released into the custody of a parent, close relative, or guardian. 507 U.S. at 305. The Supreme Court resolved the procedural due process question by holding that "due process is satisfied by giving the detained alien juveniles a *right* to a hearing before an immigration judge." *Id*. at 309 (original emphasis). Insofar as it is uncontested that every alien detained under Section 1226(a) has a *right* to an individualized custody redetermination hearing before an immigration judge (in addition to numerous other procedural

safeguards), the existing procedures governing Section 1226(a) bond proceedings more than adequately satisfy due process under the Court's analysis in *Flores*. *Id*.

Yet Petitioners discount the Supreme Court's clear holdings and instead rely on the Ninth Circuit's decision in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), as well as several non-immigration Supreme Court decisions discussing involuntary civil commitment of U.S. citizens, to support their due process claim. ECF No. 68 at 4 (citing *Addington v. Texas*, 441 U.S. 418, 431-33 (1979); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); and *U.S. v. Salerno*, 481 U.S. 739, 752 (1987)). Petitioners' reliance on these cases are mistaken. First, *Singh* is inconsistent with the Supreme Court's subsequent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *Jennings* held that it was contrary to Section 1226(a)'s text to require the Government to bear the burden of proof at bond hearings, much less by clear-and-convincing evidence, and declined to find any constitutional concerns capable of justifying any added procedural protections. *Jennings*, 138 S. Ct. at 847-48.[4]

Second, like *Singh*, Petitioners also erroneously rely on *Foucha, Addington*, and *Salerno*. ECF No. 68 at 4. This reliance is problematic for at least two reasons. First, by directly applying these non-immigration civil and criminal confinement cases in the immigration context without further analysis, Petitioners fail to acknowledge that the Supreme Court in *Demore* previously rejected the applicability of these precedents in the context of aliens detained during the pendency of removal proceedings. 538

---

[4] Insofar as the holding in *Jennings* turned on a question of statutory interpretation, that decision does not squarely resolve the constitutional issue presented here. 138 S. Ct. 830. That said, the majority of the Supreme Court in *Jennings did* agree that, as a matter of statutory interpretation, Section 1226(a) does not "remotely support" the Ninth Circuit's reading of the statute as placing the burden of proof on the Government. *Id*. at 847.Moreover, and as discussed below, *see infra*, n. 20, while *Jennings* does not squarely resolve this case, even the *dissenting* Justices in *Jennings* agreed that "bail proceedings should take place in accordance with the customary rules of procedure and burdens of proof *rather than the special rules that the Ninth Circuit imposed*." *Id*. at 882 (Breyer, J., dissenting) (emphasis added). Notably, Justice Sotomayor demonstrated that the majority's holding denying relief to the section 1226(a) subclass is fully consistent with the dissent by joining both decisions. *Jennings*, 138 S. Ct. at 836, 847-48.

U.S. at 521-22. Indeed, the dissent in *Demore* took the view that "the only reasonable starting point [for analyzing detention under Section 1226] is the traditional doctrine concerning the Government's physical confinement of individuals," and accordingly, relied on *Addington* and *Foucha*. 538 U.S. at 547, 550 (J. Souter, dissenting). But the majority soundly rejected this approach, noting instead that "this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 521-22; *see id.* (refuting the dissent's attempt to "avoid this fundamental premise of immigration law by repeatedly referring to it as 'dictum'"). *Demore* further noted that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Id.* at 523. Petitioners' application of *Foucha*, *Addington*, *and Salerno* to the immigration bond context in this case is thus at odds with the majority holding in *Demore*. *Id.* at 521-22; *see Maldonado-Velasquez*, 274 F. Supp. 3d at 15 (rejecting petitioner's reliance on *Foucha*, and holding that "*Zadvydas* and *Demore* illustrate that the cases [petitioner] cites requiring the government to bear the burden for dangerousness detention by clear and convincing evidence are not readily applicable in a civil immigration context").

Second, *Addington* and *Foucha* are fundamentally different because the present case involves detention for the limited duration of removal proceedings, which has a definite end point: the end of removal proceedings. *Demore*, 538 U.S. at 529 (detention pending removal proceedings has "definite termination point"). *Addington* and *Foucha*, by contrast, involved *indefinite* and potentially permanent confinement. *See Foucha*, 504 U.S. at 82 (noting that under the state's rationale, which the Court rejected, it could "hold *indefinitely* any other insanity acquittee not mentally ill who could be shown to have a personality disorder that may lead to criminal conduct") (emphasis added); *Addington*, 441 U.S. at 419-20 ("The question in this case is what standard of proof is required . . . in a civil proceeding brought under state law to commit an individual involuntarily for an *indefinite* period to a state mental hospital.") (emphasis added). Furthermore, unlike involuntary civil commitment, any alien detained

under Section 1226(a) can unilaterally decide to end his or her detention during removal proceedings simply by conceding removability and consenting to being released into the alien's home country. The aliens detained under Section 1226(a) are thus unlike the individuals subject to civil confinement in *Addington* and *Foucha* for whom meeting a disputed burden of proof represented the *only* way to end confinement.

In sum, the Supreme Court's precedent forecloses Petitioner's challenge to the procedures that govern Section 1226(a) bond proceedings. The Supreme Court has repeatedly upheld the detention of aliens pending their removal proceedings and has done so even in circumstances when the alien is not afforded any individualized determination of dangerousness or risk of flight. Under the Supreme Court's precedent, the Due Process Clause does not require that an immigration judge place the burden of proof on the government during bond hearing, or that immigration judge explicitly consider certain factors. Accordingly, the Court should deny Petitioners' motion for summary judgment.

**b.   Even assuming Supreme Court precedent does not directly foreclose Petitioners' claims, the ample procedural protections available to aliens detained under Section 1226(a) more than adequately satisfy due process.**

Under the Supreme Court's decision in *Mathews v. Eldridge*, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. 319, 333 (1976) (quotation marks omitted). Due process "is flexible and calls for such procedural protection as the particular situation demands." *Id.* at 334 (citation omitted); *see id.* at 334-35 ("Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances"). In assessing whether a given procedural framework affords due process, courts typically assess three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and (3) the government's

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id*. at 335.

In applying *Mathews* in the immigration context, courts must "weigh heavily" the fact "that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *see Flores*, 507 U.S. at 315 (noting that courts "'are [not] a legislature charged with formulating public policy.'") (quoting *Schall v. Martin*, 467 U.S. 253, 281 (1984)). Courts must also consider that Congress "emphatic[ally]" intended the Government's discretionary decisions regarding detention to be "presumptively correct and unassailable except for abuse." *Carlson*, 342 U.S. at 540.

With respect to the first factor – the private interest at stake – it is of course true *as a general matter* that freedom from physical restrain "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha*, 504 U.S. at 80). The Supreme Court has clarified, however, that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522. Accordingly, in the immigration context, while the "Fifth Amendment entitles aliens to due process of law in deportation proceedings, detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523 (citations omitted). Any assessment of the private interests at stake in this case must therefore account for the fact that the Supreme Court has never held that aliens have a constitutional right to be released from custody during the pendency of removal proceedings, and has in fact held precisely the opposite. *Id.* at 530; *Carlson*, 342 U.S. at 538.

Consideration of the "private interest at stake" must also account for the fact that Petitioners are not simply asserting a right to be at liberty, but rather, a right to be at liberty *in the United States*, where many class members have never held lawful status. An alien who illegally entered without inspection or who overstayed or violated his or her term of admission is without any lawful status in

10

the United States and thus lacks any right or entitlement under the immigration laws to be at large inside the United States, much less to be at large during the interim period while the Government is trying to effectuate the alien's removal. And, as noted above, individuals detained under Section 1226(a) can unilaterally decide to end their detention at any time by simply consenting to removal or requesting voluntary departure and being released into their home country. Accordingly, the fact that Petitioners are not simply seeking liberty, but liberty in a country where they lack lawful status, cuts substantially against the private interest at stake.

As for the second *Mathews* factor, the existing framework governing the detention of aliens under Section 1226(a) provides procedural protections that far exceed the constitutional minimum. Viewed together with its implementing regulations and Board precedent, Section 1226(a) provides extensive safeguards to protect against arbitrary deprivation of liberty while also protecting the Government's interests in ensuring that aliens do not abscond or commit crimes while removal proceedings are ongoing. Upon initial apprehension, the Department of Homeland Security ("DHS") makes an individualized custody determination. 8 C.F.R. §§ 236.1(c)(8), 236.1(g). DHS may release the alien if the alien demonstrates to the satisfaction of the immigration officer that release would not pose a danger to property or persons and that the alien is likely to appear for removal proceedings. *Id*. If the officer denies bond (or sets a bond the alien believes is too high), the alien may at any time ask an immigration judge for a redetermination of the custody decision in the form of an individualized bond hearing where he or she may call witnesses and present evidence. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

Based on the evidence presented, the immigration judge decides whether to release the alien, considering numerous factors that account for the alien's ties to the United States and that predict whether the alien will pose a danger to the community or a flight risk. *Matter of Guerra*, 24 I. & N. Dec. 37, 40-41 (BIA 2006). The immigration judge may also consider the "amount of bond that is

appropriate." *Id*. at 40. Insofar as Section 1226(a) only permits the detention of "*alien[s]*," of course, an immigration judge reviewing a custody determination may also order that the individual be released based on a finding that he or she is not in fact an alien and is instead a United States citizen. 8 U.S.C. § 1226(a); *see* 8 C.F.R. § 1236.1(d) ("the immigration judge is authorized to . . . detain *the alien* in custody, release *the alien*, and determine the amount of bond if any, under which the [alien] may be released . . . .") (emphasis added). If the immigration judge concludes after the hearing that the alien should not be released, the alien may appeal the immigration judge's decision to the Board. 8 C.F.R. § 236.1(d)(3), § 1236.1(d)(3). Further, if the immigration judge denies release on bond, and the alien later believes his or her circumstances have materially changed, the alien may request another bond hearing based on those materially changed circumstances. 8 C.F.R. § 1003.19(e); *Matter of Uluocha*, 20 I. & N. Dec. 133, 133 (BIA 1989). In sum, the existing procedures governing bond hearings under Section 1226(a) are flexible insofar as they permit an immigration judge to consider a wide range of factors and the alien to present any evidence that may bear on these factors. *Matter of Guerra*, 24 I. & N. Dec. at 40-41. Moreover, by the time an alien receives a final decision that he or she should remain detained for the duration of removal proceedings, the alien will have received as many as three levels of independent review: a DHS officer, an immigration judge, and the Board (if the alien appeals). The safeguards governing detention under Section 1226(a) are thus substantial and more than adequately protect against the risk of "erroneous deprivation" of liberty.[5]

With respect to the third *Mathews* factor – the Government's interest – the Supreme Court has observed that "[t]here is always a public interest in prompt execution of removal orders: The continued

---

[5] Insofar as Section 1226(a) allows for the detention of *any* alien pending removal proceedings, the only true sense in which an individual may be "erroneously deprived" of liberty under Section 1226(a) is if her or she should not be in removal proceedings at all. In their brief, Petitioners did not allege, much less show, that "erroneous deprivation" of liberty is a common occurrence in detention under Section 1226(a).

presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law." *Nken v. Holder*, 556 U.S. 418, 436 (2009). Section 1226(a) reflects Congress's intent to afford "broad discretion" to the Attorney General (and to DHS) in determining which individuals should remain detained for removal proceedings, *Nielsen v. Preap*, 139 S. Ct. 954, 966 (2019), and to increase the probability that aliens who are ordered removed are in fact removed. H.R. Rep. No. 104-469, pt. 1, at 123; *Zadvydas*, 533 U.S. at 699-700 (assessing the reasonableness of immigration detention "primarily in terms of the statute's basic purpose"). Indeed, as discussed above, Congress enacted Section 1226(a) based on concern that "[a] chief reason why many deportable aliens are not removed from the United States is the inability of the INS to detain such aliens through the course of their deportation proceedings." H.R. Rep. No. 104-469, pt. 1, at 123. The Government's interest in maintaining the existing procedures for bond hearings under Section 1226(a) are thus legitimate and significant.

Further, the additional procedures proposed by Petitioners infringe on the Government's interest in ensuring that lawfully issued removal orders are promptly executed. *Demore*, 538 U.S. at 519 (noting evidence before Congress that "[d]etention is the key to effective deportation"). Petitioners may disagree with Congress's judgment regarding the importance of detention as a means of ensuring removal, and with the Attorney General's judgment in implementing Section 1226(a), but "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528.

The Government also has an interest in maintaining the existing procedures because the alien, and not the Government, is in the best position to provide evidence relevant to his or her lack of dangerousness, or other factors, including family ties to the United States, a record of employment, and an established place of residence, which may demonstrate that the he or she is not a flight risk. *See e.g.*, *Matter of Guerra*, 24 I. & N. Dec. at 40-41. This is particularly true in a case like this one

13

involving aliens who illegally entered the United States without inspection or admission. In such circumstances, the Government may have little to no information about an individual apart from the fact that he or she is not a United States citizen and is not in the country legally. Indeed, in the removal proceeding itself, Congress has placed the "[b]urden on [the] alien" to establish "by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2). Likewise, aliens such as Petitioners, who undisputedly were not lawfully present in the United States, also have the burden of establishing any eligibility for relief from removal. *See* 8 U.S.C. § 1229a(c)(4)(B). It would be fundamentally backwards to put the burden on the Government to justify the alien's detention during the interim period when the Government is pursuing removal when the burden is on the alien in the underlying removal proceedings themselves.

Based on the foregoing, it is unsurprising that numerous courts, including the Supreme Court,[6] have looked favorably on the procedures governing Section 1226(a) bond proceedings. For example, the Third Circuit recently rejected a due process challenge to detention under Section 1226(a) that is nearly identical to the one at issue here. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 274 (3d Cir. 2018). In *Borbot*, a habeas petitioner argued that, based on the *length* of his detention under Section 1226(a) – over one year – he was constitutionally entitled to a second bond hearing at which the Government would bear the burden of proof. *Id*. at 276-77. The Third Circuit rejected the

---

[6] Although the Supreme Court's decision in *Jennings* did not resolve the specific constitutional question presented here, *Jennings* does indeed reflect that even among the Justices who identified constitutional concerns with several other detention provisions, the procedures governing section 1226(a) bond hearings did *not* raise a serious constitutional question. In writing for the dissent, Justice Breyer expressed the view that the canon of constitutional avoidance *should* be employed while interpreting the various provisions of the INA which do not allow for any bond hearings whatsoever. 138 S. Ct. at 869-75 (Breyer, J., dissenting) (discussing 8 U.S.C. §§ 1225(b)(1)(B)(ii), (b)(2)(A), 1226(c)). The dissent does *not*, however, express any similar concerns with respect to the procedures governing bond hearings under section 1226(a). *Id*. To the contrary, the dissenting Justices in *Jennings* agreed that "bail proceedings should take place in accordance with the customary rules of procedure and burdens of proof *rather than the special rules that the Ninth Circuit imposed*." *Id*. at 876. (emphasis added).

14

petitioner's argument, which relied on cases involving prolonged detention under the mandatory

detention statute, *see* 8 U.S.C. § 1226(c), and noted that, "unlike § 1226(c) detainees . . . who were

detained for prolonged periods without being given any opportunity to apply for release on bond,

[petitioner] *was granted meaningful process* prior to filing his habeas petition." *Id*. at 279 (emphasis

added).

This Court previously attempted to distinguish *Borbot* by noting that the alien there did "not

challenge the adequacy of his initial bond hearing" and also asserting that "the court did not directly

address whether due process requires that the Government bear the burden of proof at an initial §

1226(a) custody redetermination hearing." *Doe v. Smith, et al*, No. 1:18-cv-12266-PBS at 2-3 (D.

Mass., Feb. 12, 2019). However, that analysis does not appreciate that the fundamental question at

issue in *Borbot* was precisely the same one that is presented here: Are the existing procedures for

Section 1226(a) constitutionally adequate? The alien in *Borbot* predicated his own particular challenge

to Section 1226(a) on the length of his detention and did not take issue with his initial bond hearing.

But the Third Circuit's central holding in that case, which this Court should follow, was that no

additional procedures were required, because the existing procedures for bond hearings under Section

1226(a) are in fact constitutionally adequate. 906 F.3d at 278-29. The Court specifically noted that

"*Borbot* was afforded a prompt bond hearing, *as required by § 1226(a) and its implementing*

*regulations*," and it was on this basis that the court concluded that he was "granted meaningful

process." *Id*. (emphasis added). *Borbot* thus stands for the simple proposition that Section 1226(a) and

its implementing regulations fully satisfy the requirements of due process. Any attempt to reason

contrary with *Borbot* would result in the incongruous conclusion that Section 1226(a)'s procedures are

adequate for purposes of aliens who spend longer than a year detained, but inadequate in the case of an

alien seeking an initial bond hearing after being detained for less than two months.

Similarly in *Ali v. Brott*, the Eighth Circuit recently confronted a case in which an alien detained under Section 1226(a) argued that his detention had become unconstitutionally prolonged. 770 F. App'x 298 (8th Cir. 2019). As in *Jennings*, the Eight Circuit did not directly confront the constitutional question presented here and instead remanded the case after rejecting the district court's use of the "constitutional avoidance doctrine." *Id.* at 302. In doing so, however, the Eighth Circuit noted that it was "skeptical of [petitioner's] argument that his detention pending a decision on whether he is to be removed under § 1226(a) is unconstitutional considering he was given a bond hearing and still has available procedural avenues to seek relief." *Id.* at 301 (citing 8 C.F.R. §§ 236.1(c)(8), and (d), 1003.19, 1236.1(d)). The court also "[found] it noteworthy that aliens challenging the constitutionality of their detentions in *Jennings* and *Demore* sought, as a *remedy*, a bond hearing similar to what [petitioner] was given." *Id.* (citations omitted) (original emphasis).

In the same manner, decisions within the First Circuit prior to *Jennings* reflect approval of the procedures governing Section 1226(a) bond proceedings *as a remedy* for those detained under other immigration detention statutes. In *Reid v. Donelan*, for example, a district court rejected the petitioners' argument that the Due Process Clause requires placing the burden of proof on the government for aliens facing prolonged detention under Section 1226(c), and instead held that "Section 1226(a) provides a reasonably effective way for class members to obtain the individualized assessment they are entitled to, without giving them heightened or special treatment that due process does not require." 22 F. Supp. 3d 84, 93 (D. Mass. 2014), *vacated and remanded on other grounds*, 819 F.3d 486 (1st Cir. 2016), *opinion withdrawn*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018).[7]

---

[7] In its April 13, 2016 opinion in *Reid*, the First Circuit reversed the district court's holding that individuals detained under Section 1226(c) were entitled to what amounted to Section 1226(a) bond proceedings. *See* 819 F.3d at 486. Accordingly, it did not have occasion to signal any approval or disapproval of Section 1226(a) bond proceedings. *Id.* In any event, the First Circuit withdrew its April

Similarly, in *Gordon v. Johnson*, a district court held that criminal aliens who were not detained by immigration authorities immediately upon being released from criminal custody were not subject to mandatory detention under Section 1226(c), but *also* held that "the procedures of § 1226(a) provide the reasonably effective remedy" to which the class members were entitled. 300 F.R.D. 31, 42 (D. Mass. 2014), *vacated sub nom. Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016). On review of this same issue in a companion case with which *Gordon* was later consolidated, an equally divided *en banc* panel of the First Circuit affirmed the district court and held that "petitioners have the right to individualized bond hearings at which *they can make the case* that they do not pose sufficient bond risks, just as the Attorney General specified in the regulations that she issued pursuant to § 1226(a)." *Castaneda v. Souza*, 810 F.3d 15, 43 (1st Cir. 2015) (emphasis added).[8] In sum, district courts in this Circuit, and this Court itself, have a history of treating the ample procedural protections that apply in Section 1226(a) bond proceedings as constitutionally adequate.[9]

---

13, 2016 opinion and vacated its judgment in *Reid*, following the Supreme Court's opinion in *Jennings*, 138 S. Ct. at 830. *See* 2018 WL 4000993; *but see Reid v. Donelan*, --- F. Supp. 3d , 2019 WL 2959085, at *13-14, 16 (D. Mass. July 9, 2019) (revisiting the burden of proof issue in the context of aliens detained for prolonged periods under Section 1226(c), and holding that due process requires the Government to prove dangerousness by clear and convincing evidence, and risk of flight by a preponderance of the evidence).

[8] It appears the central holding of this Court in *Castaneda* is no longer viable following the Supreme Court's recent decision in *Nielsen, et al. v. Preap, et al.*, 139 S. Ct. 954 (2019), which rejected the view that detention under Section 1226(c) only applies to those taken into custody by immigration officials as soon as they are released from criminal custody. Nevertheless, the decision reflects the First Circuit's broad acceptance of Section 1226(a) and its implementing regulations.

[9] The First Circuit has also dismissed as moot an appeal from a district court decision which explicitly disagreed with the view that due process requires placing the burden on the Government in such bond hearings. *See Maldonado-Velasquez v. Moniz*, No. 17-1918 (1st Cir. March 22, 2018). In the underlying district court case, the judge held that the petitioner could not succeed on a due process claim because he could not show prejudice, *but also* concluded that his burden of proof argument was inconsistent with Supreme Court precedent. *Maldonado-Velasquez*, 274 F. Supp. 3d at 14-15. In dismissing the case as moot (because petitioner was no longer detained under Section 1226(a)), the First Circuit stated that petitioner's "due process claim is not compelling," though it appeared to be referencing the fact that petitioner could not show the requisite prejudice. *See Maldonado-Velasquez*, No. 17-1918, Doc No. 00117268737, n. 2 (Mar. 22, 2019).

**B.      Petitioners' alternative challenge to the Board's decision in *Matter of Adeniji* is equally without merit.**

Petitioners assert that they are entitled to judgment as a matter of law on Count II—an alternative statutory claim under the INA or the APA challenging the Board's decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999). ECF No. 68 at 8-13. Petitioners argue that the Board's decision in *Matter of Adeniji* and its progeny is arbitrary and capricious. 22 I. & N. Dec. at 1114 (holding that an alien seeking release must demonstrate that his or her release "would not pose a danger to property or persons, and that [he or she] is likely to appear at any future proceeding."). *See* ECF Nos. 1 at ¶¶ 24, 93-94, 68 at 8-13. However, their assertion lacks merit.[10]

First, the Supreme Court has foreclosed Petitioners' statutory claims under the APA. Insofar as the holding in *Jennings* turned on a question of statutory interpretation, that decision does not squarely resolve the constitutional issue presented here. 138 S. Ct. at 830. That said, the majority of the Supreme Court in *Jennings did* agree that, as a matter of statutory interpretation, Section 1226(a) does not "remotely support" the Ninth Circuit's reading of the statute as placing the burden of proof on the Government. *Id.* at 847. *Jennings* thus forecloses Petitioners' alternative challenge to the Board's decision in *Matter of Adeniji*, as well as their related argument that the Court should read Section 1226(a) to place the burden on the Government. *See* ECF No. 68 at 8-13.

Second, the Board's holding in *Matter of Adeniji* represents a reasonable interpretation of Section 1226(a) and is entitled to deference under *Chevron* principles. Indeed, the Board's decision interpreting Section 1226(a) is a quintessential example of situation in which *Chevron* deference applies. "Where the BIA's legal conclusions concern statutes and regulations related to immigration matters . . . [the Court] grant[s] the BIA's interpretations *Chevron* deference." *Soto-Hernandez v.*

---

[10] Respondents incorporate by reference their previous filing that addresses this issue. *See* ECF No. 55 at 11-14.

*Holder*, 729 F.3d 1, 3 (1st Cir. 2013) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467

U.S. 837 (1984)); *see also Negusie v. Holder*, 555 U.S. 511, 516 (2009) ("Consistent with the rule in

[*Chevron*], the BIA is entitled to deference in interpreting ambiguous provisions of the INA."). Under

*Chevron*, when a statute "is silent or ambiguous with respect to the specific issue" the Court may ask

only "whether the agency's answer is based on a permissible construction of the statute." *I.N.S. v.

Aguirre–Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron*, 467 U.S. at 843) (internal quotation

marks omitted). The Court "must uphold the BIA's interpretation. . . so long as it is reasonable and

consistent with the statute." *Rumierz v. Gonzales*, 456 F.3d 31, 37 (1st Cir. 2006).

Notably, the *Chevron* analysis requires that "the agency's construction is accorded substantial

deference, and courts are not to substitute their own judgment for that of the agency." *Flock v. U.S.

Dep't of Transp.*, 840 F.3d 49, 55 (1st Cir. 2016). The holding in *Matter of Adeniji* that an alien must

demonstrate that "release would not pose a danger to property or persons, and that (he) is likely to

appear for any future proceeding" – "even though section [1226(a)] does not explicitly contain such a

requirement" – is reasonable and consistent with Congress's purpose in enacting IIRIRA. 22 I. & N.

Dec. at 1113. The Board reached its conclusion after carefully examining the regulations promulgated

in the wake of IIRIRA, which provide that "the alien must demonstrate to the satisfaction of the officer

that such release would not pose a danger to property or persons, and that the alien is likely to appear

for any future proceeding." *Id*. at 1112 (citing 8 C.F.R. § 236.1(c)(8)).

In *Maldonado-Velasquez*, the district court noted that the Board's statutory interpretation of

placing the burden on aliens detained under Section 1226(a) at bond hearings was reasonable and

entitled to deference. 274 F. Supp. 3d at 13 n.1 (internal citation omitted)). Thus, *Matter of Adeniji*

represents a reasonable interpretation of Section 1226(a) and is entitled to deference under *Chevron*

principles. *Aguirre-Aguirre*, 526 U.S. at 425 (recognizing that "judicial deference to the Executive

Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations")(internal citations omitted).

Petitioners maintain that the Board has never considered or explained its holding in *Matter of Adeniji*. ECF No. 68 at 12. However, the Board fully acknowledged in *Matter of Adeniji* that, under its "case law addressing general bond provisions of *prior* law, an alien ordinarily would not be detained unless he or she presented a threat to national security or a risk of flight." 22 I. & N. Dec. at 1103 (emphasis added). The Board then proceeded to explain the regulatory basis for its departure from that prior rule.

Still, Petitioners attempt to undermine the Board's analysis by narrowly reading 8 C.F.R. § 236.1(c)(8) to pertain only to an "officer authorized to issue a warrant of arrest" and not to apply to immigration judges who lack the authority to issue such warrants. ECF No. 68 at 11. The Board, however, acknowledged that 8 C.F.R. § 236.1(c)(8) does not explicitly apply to immigration judges. *Matter of Adeniji*, 22 I. & N. Dec. at 1112. But the Board also noted that a separate regulation, 8 C.F.R. § 3.19(a) "incorporates the substantive aspects of the bond regulations governing the Service, and provides that '[c]ustody and bond determinations made by the service [sic] pursuant to 8 C.F.R. part 236 may be reviewed by an Immigration Judge *pursuant to 8 C.F.R. part 236*.'" *Id*. (emphasis added). In other words, the Board held that because the regulations task an immigration judge with reviewing a "custody and bond determination made by the service" under the same regulatory framework employed by the service, the same burden of proof should apply. *Id*. Thus, Petitioners' narrow reading of the relevant regulations should remain unpersuasive. Rather, *Matter of Adeniji* represents a reasonable interpretation of Section 1226(a) and is entitled to deference under *Chevron* principles. *Aguirre-Aguirre*, 526 U.S. at 425.

Finally, Petitioners' assertion that *Matter of Adeniji* is arbitrary and capricious because it is a departure from previous authority also fails. In fact, even under the precursor to Section 1226(a)

(former 8 U.S.C. § 1252(a)), the Supreme Court acknowledged that Congress had "eliminated any presumption of release pending deportation, committing that determination to the discretion of the Attorney General." *Flores*, 507 U.S. at 306 (citing *Carlson*, 342 U.S. at 538-540)). Although the Court acknowledged the Board's statement that "[a]n alien generally . . . should not be detained or required to post bond except on a finding that he is a threat to the national security . . . or that he is a poor bail risk," *Matter of Patel*, 15 I. & N. Dec. 666 (1976), the Court did not read that as affecting the fact that Congress had "given the Attorney General broad discretion to determine whether, and on what terms, an alien arrested on suspicion of being deportable should be released pending the deportation hearing." *Flores*, 507 U.S. at 294-95. Thus, Petitioners are incorrect to suggest that when Congress enacted Section 1226(a) in 1996, it intended to adopt any presumption against detention that was found in 8 U.S.C. § 1252(a), because, in fact, the Supreme Court had already concluded that such a presumption was eliminated. 507 U.S. at 306.

Moreover, as the Board noted in *Matter of Adeniji*, "[t]he substance of paragraph (c)(8) was promulgated as 8 C.F.R. § 236.1(c)(2) at the time that regulations implementing the IIRIRA were first adopted in 1997." 22 I. & N. Dec. at 1113. In promulgating these regulations implementing Section 1226, the agency specifically explained that the regulation was intended to be consistent with the intent of Congress in enacting Section 1226, which was to increase detention to ensure the removal of aliens. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 at 10,323 (1997) ("Several commenters stated that § 236 of the proposed rule as written is a reversal of long established procedure that provides that a noncriminal alien is presumptively eligible for release. The Service has been strongly criticized for its failure to remove aliens who are not detained. A recent report by the Department of Justice Inspector General shows that when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States. The mandate of Congress, as evidenced

by budget enhancements and other legislation, is increased detention to ensure removal. Accordingly, because the Service believes that the regulation as written is consistent with the intent of Congress, the interim rule has not modified the proposed rule in this regard."). Thus, the Board's decision to back away from *Matter of Patel* and to place the burden on the alien to justify release is reasonable and consistent with the intent of Congress.

Petitioners' alternative challenge to the Board's precedent thus necessarily fails. Accordingly, the Court should deny Petitioners' motion for summary judgment on Count II.

**C.      Petitioners have not demonstrated that they are entitled to declaratory judgment nor a permanent injunction as a matter of law.**

Petitioners assert that they are entitled to various forms of relief from the Court. First, Petitioners request that this Court declare that each class member is entitled to a bond hearing at which the Government bears the burden to demonstrate by clear and convincing evidence that the detainee is either a flight risk or a danger to others. ECF No. 68 at 13-14. Second, Petitioners request that this Court enter a permanent injunction ordering the Government to carry the burden at all future bond hearings and to provide post-hearing class members with new bond hearings if they have suffered prejudice. *Id.* at 14-17. Petitioners have failed to meet their burden as to both requests, and the Court should deny them.

**i.      The Court lacks subject-matter jurisdiction to grant both classwide injunctions and corresponding declaratory relief.**

In enacting 8 U.S.C. §1252(f)(1), Congress plainly eliminated the classwide relief that Petitioners seek.[11] Under that section, no court (other than the Supreme Court) has jurisdiction to enjoin or restrain the operation of the provisions of 8 U.S.C. §§ 1221-1254a on a classwide basis. *See, e.g.*, *Jennings*, 138 S. Ct. at 851 ("if the Court of Appeals concludes that it may issue only declaratory

---

[11] Respondents incorporate by reference their arguments in previous filings on this matter. See ECF No. 51 at 4-11.

relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own")

(citing Rule 23(b)(2) (requiring "that final injunctive relief or *corresponding* declaratory relief [be]

appropriate respecting the class as a whole"); *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir.

2018) (expressing skepticism whether petitioners' request for declaratory relief would prevail over

Section 1252(f)(1) by noting that "[i]t is true that 'declaratory relief will not always be the functional

equivalent of injunctive relief,' … in this case, it is the functional equivalent."). Thus, this Court lacks

subject-matter jurisdiction to grant Petitioners' requested relief.

### ii.     A permanent injunction is not appropriate because it would violate congressional intent and impose a severe burden on the Government.

Even if the Court had subject-matter jurisdiction to grant the requested relief, Petitioners have

not shown that they are entitled to a permanent injunction under the requisite standard.[12] In order to

succeed in a request for a permanent injunction, Petitioners must prove that: "(1) plaintiffs prevail on

the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm

to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction;

and (4) the public interest would not be adversely affected by an injunction." *Healey v. Spencer*, 765

F.3d 65, 74 (1st Cir. 2014) (internal citations omitted).

Applying these factors demonstrates Petitioners have not met their burden for their requested

permanent injunction and do not warrant an order to severely overhaul 20 years of detention

operations. Rather, this far-reaching relief would: 1) improperly overwhelm the Government and

hamper the immigration court's docket; and 2) would not serve the public interest because such

judicial reform runs contrary to congressional intent as well as Congress's plenary authority to create

---

[12] Respondents incorporate by reference their arguments in previous filings on this matter. *See* ECF
No. 55 at 3-11.

procedures for removing aliens in the United States. Thus, the Court should deny Petitioners' request summary judgment.

### iii.     A permanent injunction would impose a substantial burden on the Government that outweighs Petitioners' interest on balance.

A permanent injunction would impose a substantial burden on Respondents that outweighs Petitioners' interest. *Healey*, 765 F.3d at 74 (stating that plaintiff must prove that "the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction."). Here, Petitioners cannot show that their harm would be greater than the burden an injunction would impose on Respondents. Rather, as Respondents explained in their Opposition to Class Certification (ECF No. 51), Petitioners' harm would be the requirement that they seek the relief Congress afforded them. *See, e.g.*, *Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330 (1938) (rejecting constitutional challenge to statutory restrictions on injunctive relief); *Cary v. Curtis*, 44 U.S. 236, 250 (1845) (upholding Congress's abolition of a cause of action in part because the claimant "was not without other modes of redress"); *cf. Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus"). The proper channel for relief, therefore, would be to file individual habeas petitions in district court and/or wait for the First Circuit's resolution in *Doe v. Smith, et al*, No. 19-1368 (1st Cir. Apr. 18, 2019) (appealing this Court's decision in *Doe v. Smith, et al*, No. 1:18-cv-12266-PBS (D. Mass., Feb. 12, 2019)).[13] *See Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018) (holding that injunctions must be "'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'") (quoting *Madsen v.*

---

[13] The salient due process issues in the present matter are being considered in *Doe v. Smith, et al*, No. 19-1368 (1st Cir. Apr. 18, 2019) (appealing this Court's decision in *Doe v. Smith, et al*, No. 1:18-cv-12266-PBS (D. Mass., Feb. 12, 2019)). Indeed, both this case and *Doe* present the identical question of whether the existing procedures for bond hearings held pursuant to 8 U.S.C. § 1226(a) satisfy the Due Process Clause of the Fifth Amendment to the Constitution.

*Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)). Petitioners appear to acknowledge as much because they request that this Court provide new bond hearings for post-hearing class members only *if* those class members were *prejudiced* by the alleged error. ECF No. 68 at 15. On its face, Petitioners argument concedes the requirement for an individualized fact-specific inquiry.[14]

Petitioners categorized the burden on the Government would be "minimal" if the Court grants their requested relief. *Id.* at 14. But Petitioners further request the Court to order the Government to provide a list of post-hearing class members with extremely detailed and broad information. *Id.* at 16. This list would include extensive information including the detainee's name and A-number, the name of the detainee's counsel in immigration court, a statement of whether the Government intends to dispute prejudice as to that person, and if so, a briefing on the reason for the dispute, and status update on detainee's bond hearing. *Id.* This would undoubtedly overwhelm a backlogged immigration court system based on the sheer volume alone. *See* ECF No. 18 (alleging that 700 detainees bore the burden of proof in the Boston immigration court); ECF No. 69 ¶ 5 (noting that 777 class members received bond hearings between November 1, 2018 and May 7, 2019).

Rather, individual habeas petitions remain the proper channel for post-hearing class members to challenge whether they were prejudiced by bearing the burden at their respective bond hearings. Indeed, this option has always been an appropriate remedy for each class member. But requiring the Government to screen on behalf of Petitioners and, in turn, advise them on the suitability for each and every class members' case for litigation is a radical and unparalleled request. Beyond that, Petitioners' request for the Government to determine issues of prejudice *before* the class members file any individual habeas petition is unprecedented, inefficient, and runs contrary to basic notions of litigation.

---

[14] Respondents previously argued that class certification is inappropriate in this case because this individualized fact-specific inquiry undermines the requisite commonality and typicality requirements. *See* ECF No. 51 at 12-17. Respondents maintain and incorporate by reference those arguments, especially in light of Petitioners apparent concession on the issue.

Petitioners also suggest that the Immigration Judges can assess whether an alien who is a member of the post-hearing class was prejudiced by the allocation of the burden of proof. But as this Court has recognized the agencies lack the authority to make determinations relating to constitutionality in administrative proceedings. *See Reid v. Donelan*, 390 F. Supp. 3d 201 (D. Mass. 2019). Indeed, "it is settled that the immigration judge and [the] Board lack jurisdiction to rule upon the constitutionality of the [INA] and the regulations." *Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992). In contrast, "federal courts have the institutional competence to make fact-specific determinations," *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018), as demonstrated by this Court's ability to apply case-specific facts to determine whether prejudicial injury exists in individual habeas petitions. *See e.g.*, *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018) ("Petitioner must show he was prejudiced by the constitutional error"); *Figueroa v. McDonald*, No. CV 18-10097-PBS, 2018 WL 2209217, at *6; *Doe v. Tompkins*, No. 1:18-cv-12266, 2019 U.S. Dist. LEXIS 22616 at *8; *Diaz Ortiz v. Tompkins*, No. 1:18-cv-12600, 2019 U.S. Dist. LEXIS 14155 at *3. Thus, any preemptive determination on constitutional issues by the agencies would be inappropriate.

On balance, Petitioners' interest does not outweigh the above-referenced heavy burden that would be placed on Respondents. First, as discussed above, Section 1226(a) already provides the class members with ample procedural protections to challenge their detention. *See* ECF No. 55 at 6-8. Second, Petitioners, including post-hearing class members, may challenge the constitutionality of their detention by filing an individual habeas petition in district court. Undoubtedly, detainees have ample procedural protections in place, absent the injunction that Petitioners seek, which do not impose a substantial burden on the Government. Accordingly, a permanent injunction would improperly impose significant burdens on the Government. The Court should thus deny Petitioners' requested relief.

### iv.     The proposed final judgment would also run contrary to public interest.

The Court should also deny Petitioners' request for a permanent injunction because this relief would have adverse effects on public interest. *Healey*, 765 F.3d at 74 (stating that plaintiff must prove that "the public interest would not be adversely affected by an injunction."). As noted above, Congress enacted the current version of Section 1226(a) as part of the IIRIRA. In enacting IIRIRA, Congress "had before it evidence that one of the major causes of [former Immigration and Naturalization Services' ("INS")] failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their removal proceedings." *Demore*, 538 U.S. at 519.

In 8 U.S.C. § 1226(a), Congress provided that "an alien may be arrested *and detained* pending a decision on whether the alien is to be removed from the United States." (emphasis added). Section 1226(a) thus reflects Congress's intent to grant the Executive Branch broad discretion in determining the circumstances under which an alien should remain detained for removal proceedings. And, as discussed above, in promulgating regulations under 8 C.F.R. § 236.1(c)(8) which the Board reasonably relied on in *Matter of Adeniji* and progeny, the Executive Branch determined that allocating the burden to the alien in custody matters was consistent with congressional intent. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312 at 10,323 (1997).

Accordingly, Section 1226(a) reflects Congress's intent to afford "broad discretion" to the Executive Branch in determining which individuals should remain detained for removal proceedings, *Preap*, 139 S. Ct. at 966, and to increase the probability that aliens who are ordered removed are in fact removed. H.R. Rep. No. 104-469, pt. 1, at 123, *Zadvydas*, 533 U.S. at 699-700 (assessing the reasonableness of immigration detention "primarily in terms of the statute's basic purpose"). The Supreme Court has noted the important relationship between public interest and congressional intent on this matter. *See Nken*, 556 U.S. at 436. A permanent injunction that reforms the operation of bond

27

hearings would circumvent Respondents' ability to act consistent with Congress's intent. Thus, judicial intervention on this matter would have adverse effect on public interest. In *Nken*, the Supreme Court observed that "[t]here is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of the United States law." 556 U.S. at 436.

Nonetheless, Petitioners argue that judicial intervention in this matter supports public interest because this Court has already ruled that public interest is invoked when the Government acts inconsistent with Petitioners' interpretation of the salient constitutional issues. *See* ECF 68 at 15 (quoting *Reid v. Donelan*, No. CV 13-30125-PBS, 2019 WL 2959085, at *15 (D. Mass. July 9, 2019)). But the fact remains that every single class member may still file an individual habeas petition if he or she believes that prejudicial injury exists.  This fact tips the scales in favor of the Government when examining whether the public interest would be "adversely affected" by an injunction. *See Healey*, 765 F.3d at 74. Additionally, Petitioners' request for relief would be contrary to 20 years of the immigration court's operation and practice of holding bond under Section 1226(a) hearings in Massachusetts and New Hampshire and would, moreover, encroach on Congress's plenary powers over the entire nation. The Supreme Court has concluded that the relevant precedents have "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. at 522 (collecting cases); *see also*, *Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."). As such, "[t]he power to expel aliens" is "essentially a power of the political branches of government." *Carlson*, 342 U.S. at 532. So long as "aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall

be permitted to remain within our borders." *Id.* at 534; *see Flores*, 507 U.S. at 305 ("[O]ver no conceivable subject is the legislative power of Congress more complete") (internal quotation marks and citation omitted)).

Accordingly, the Court should deny Petitioners' motion for summary judgment and request for a permanent injunction.

**D.      Petitioners cannot meet the standards for a preliminary injunction**.

As an alternative, Petitioners also request for a preliminary injunction should the Court deny their request for permanent injunction. *See* ECF No. 68 at 17. The First Circuit has held that a party seeking a preliminary injunction must establish that: "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public interest." *Waldron v. George Weston Bakeries, Inc.*, 570 F.3d 5, 9 (1st Cir. 2009) (quoting *Coquico, Inc. v. Rodriguez–Miranda*, 562 F.3d 62, 66 (1st Cir. 2009)). Petitioners carry "the burden of establishing that these four factors weigh in [their] favor." *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). But Petitioners decline to provide a reasoned analysis as to why they deserve a preliminary injunction as an alternative form of relief. Regardless, Petitioners cannot meet the above-referenced standard.

First, Petitioners cannot establish a likelihood of success on the merits. *Waldron*, 570 F.3d at 9. When the interim relief sought by the movant is principally the same as final relief, as in this case, "the likelihood of success should be *strong*." *See Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 164 (1st Cir. 1995) (quoting *Pye ex rel. NLRB v. Sullivan Bros. Printers*, 38 F.3d 58, 63 (1994)). But Petitioners cannot overcome this heightened burden. As evidence of their weak position, Petitioners cite numerous non-precedential and non-binding decisions from other district courts. *See* ECF No. 68 at 4. Indeed, the only circuit court opinion that supports Petitioners' position is the Ninth Circuit's pre-

*Jennings* holding in *Singh*. 638 F.3d at 1205. As noted *supra*, however, Petitioners' reliance on *Singh* remains misplaced. Rather, in the post-*Jennings* era, the definitive study of the issue comes from the Sixth Circuit, which expressly held that Section 1252(f)(1) "unambiguously strips federal courts of the authority to enter class-wide injunctive relief[.]" *Hamama v. Adducci*, 912 F.3d 869, 880 (6th Cir. 2018). The Sixth Circuit consequently vacated the district court's preliminary injunction. *Id.* Given the lack of authority to support their argument in the face of the Sixth Circuit's holding in *Hamama*, Petitioners have not met their burden to establish likelihood of success.

Notably, their likelihood of success now hinges on the First Circuit's opinion in the pending *Doe* appeal.[15] But the First Circuit's previous discussion on the salient issues undermines Petitioners' and the *Doe* petitioner's probability of success. In fact, the First Circuit's discussion on these matters plainly refutes Petitioners' arguments. *See, e.g.*, *Castaneda*, 810 F.3d at 43 (affirming the district court and holding that "petitioners have a right to individualized bond hearings at which *they can make the case* that they do not pose sufficient bond risks, just as the Attorney General specified in the regulations that she issued pursuant to § 1226(a)."); *Maldonado-Velasquez v. Moniz*, No. 17-1918 at 1 n.1 (1st Cir. March 22, 2018) (dismissing as moot an appeal from a district court decision that explicitly disagreed with the view that due process requires placing the burden on the Government in such bond hearings); *Reid*, 22 F. Supp. 3d, at 93 ("Section 1226(a) provides a reasonably effective way for class members to obtain the individualized assessment they are entitled to, without giving them heightened or special treatment that due process does not require."). The same is true for Petitioners' statutory claim under the APA and INA (Count II). *See Maldonado-Velasquez*, 274 F. Supp. 3d at 13 n.1 (opining that that the Board's statutory interpretation in *Matter of Adeniji* of placing

---

[15] The Government-Appellant filed its opening brief on August, 12, 2019. *Doe*, No. 19-1368, Doc 00117475710. However, the First Circuit granted Appellee's motion to extend time to file a brief to December 16, 2019.

the burden on aliens detained under Section 1226(a) at bond hearings was reasonable and entitled to deference). For these reasons, Petitioners have not met their heightened burden of proving a likelihood of success.

Second, Petitioners cannot demonstrate that they will suffer irreparable harm absent a preliminary injunction. *Waldron*, 570 F.3d at 9. As discussed above, Petitioners are afforded ample procedural protections to challenge their detention. *See, also,* ECF No. 55 at 6-8. Further, each class member may also challenge his or her detention by filing an individual habeas petition in district court. Notably, immigration courts place aliens who are in detention on a faster track than aliens who are not detained. Thus, in totality, Petitioners' harm is mitigated.

Third, Petitioners have not established that their hardship would outweigh the Government's severe burden on balance. *Waldron*, 570 F.3d at 9. As noted *supra*, Petitioners' requested relief includes the Government providing a list of post-hearing class members with extremely detailed and broad information as well as preemptive determinations on constitutional issues. The sheer volume alone would undoubtedly overwhelm a backlogged immigration court system.

Finally, Petitioners cannot show that the effects of a preliminary injunction would support public interest. *Waldron*, 570 F.3d at 9. As described above, injunctive relief in the present case would have adverse effects on public interest. First, a preliminary injunction would run contrary to Congress' intent to promptly complete proceedings and execute removal orders. Second, Petitioners' request for relief would be contrary to 20 years of the immigration court's operation and practice of holding bond under Section 1226(a) hearings in Massachusetts and New Hampshire and encroach on Congress's plenary powers over the entire nation. *See Nken*, 556 U.S. at 436. For these reasons, Petitioners' requested relief would undoubtedly have adverse effects to public interest.

Accordingly, Petitioners have not met the First Circuit's standard for a preliminary injunction. Thus, the Court should deny their request for a preliminary injunction.

**E.      Petitioners' request to modify the class definition to include their allegations in Count II should be denied because their statutory claim lacks merit.**

Finally, Petitioners now request the Court to expand the definition of the class to include their allegations in Count II—"Detention in Violation of the Immigration and Nationality Act and the Administrative Procedure Act." ECF Nos. 1 at ¶¶ 93-94, 72 at 1. However, the Court need not consider this motion because, as discussed above, Petitioners' statutory claims relating to the INA and APA lack merit. *Maldonado-Velasquez*, 274 F. Supp. 3d at 13 n.1. Regardless, if the Court were to rule in their favor on the due process issues in Count I, their allegations in Count II would be rendered moot. In fact, this Court has already ruled as much in *Pensamiento*. 315 F. Supp. 3 at 693 n.6 (declining to reach petitioner's alternative APA arguments). Regardless, this Court should deny Petitioners motion to modify the class definition.

## IV.      CONCLUSION

Because Petitioners have failed to meet their burden to show that they are entitled to judgment as a matter of law, this Court should deny Petitioners' motion for summary judgment. Indeed, Supreme Court precedent forecloses the claim that the Due Process Clause requires the Government to bear the burden of proof to justify continued detention of an alien in removal proceedings. Regardless, the ample procedural protections available to aliens detained under Section 1226(a) more than adequately satisfy the due process requirement.

Further, Congress has plainly eliminated Petitioners' request for a permanent or preliminary injunction.  Nonetheless, the injunctive relief that Petitioners seek runs adverse to public interest, contrary to congressional intent, and encroaches on Congress's plenary powers. Accordingly, and for the additional reasons stated above, the Court should deny those motions. Finally, Petitioners are not entitled to modify their class definitions, and the Court should, therefore, deny that motion, as well.

Dated: September 23, 2019                    Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General
                                             Civil Division

                                             WILLIAM C. PEACHEY
                                             Director
                                             Office of Immigration Litigation - District Court Section

                                             ELIANIS N. PÉREZ
                                             Assistant Director

                                             J. MAX WEINTRAUB
                                             Senior Litigation Counsel

                                             C. FREDERICK SHEFFIELD
                                             Senior Litigation Counsel

                                             */s/ Huy M. Le*
                                             HUY M. LE
                                             M.A. BBO No. 697256
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division
                                             Office of Immigration Litigation
                                             District Court Section
                                             P.O. Box 868, Ben Franklin Station
                                             Washington, D.C. 20044
                                             Telephone: (202) 353-4028
                                             Facsimile: (202) 305-7000
                                             E-mail: Huy.M.Le2@usdoj.gov

                                             *Attorneys for Respondents*

## <u>CERTIFICATE OF SERVICE</u>
Civil No. 1:19-cv-11314-PBS

I hereby certify that this document will be filed through the electronic filing system of the

Court, which system will serve counsel for all parties.

Dated: September 23, 2019                    */s/ Huy M. Le*
                                              By: HUY M. LE
                                              Trial Attorney