UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, and JACKY CELICOURT, individually and on behalf of all those similarly situated,

        *Plaintiff-Petitioners*,

v.

WILLIAM BARR, et al.,

        *Defendant-Respondents*.

Case No. 19-11314-PBS

**CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR SUMMARY JUDGMENT OR PRELIMINARY INJUNCTION, AND PETITIONERS' MOTION TO MODIFY THE CLASS DEFINITION**

    In opposing Petitioners' motion for summary judgment or a preliminary injunction, Respondents devote more than 30 pages to arguing for the power to jail alleged noncitizens *even when the government cannot show any reason for that deprivation of liberty*. Respondents ground this argument in an assertion that undocumented people simply have no right to be free and, consequently, can be arbitrarily detained. *See* Opp. (D.E. 80) at 10-11. That is not, has never been, and should not become the law.

    The Supreme Court has held that all noncitizens within the United States have liberty interests protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690-96 (2001). Consequently, as this Court and others have repeatedly held, the government cannot hold a noncitizen in preventative civil detention without showing a good reason. Although the

government argues that Congress has the power to mandate the detention of certain noncitizens in certain circumstances (as in *Demore v. Kim*, 538 U.S. 510, 518 (2003)), the narrow holding of *Demore*—which authorized only the brief detention of noncitizens who have conceded removability and have qualifying criminal convictions under § 1226(c)—does not support the government's position here that it can arbitrarily detain *all other* alleged noncitizens under § 1226(a).

There is no genuine dispute concerning any of the material facts in this case. Respondents have elected not to submit any evidence to dispute any of the facts or arguments presented by Petitioners concerning the government's bond practices, the composition of the class, the operations of the immigration court, or the projected impact of any relief that the Court might grant. Because Petitioners and the class are entitled to judgment as a matter of law on Petitioners' undisputed facts, they respectfully request the expeditious entry of class-wide summary judgment.

## I.   There are no genuine disputes of material fact.

This case is now well-suited for resolution at summary judgment. Respondents admit the majority of Petitioners' Statement of Undisputed Material Facts (D.E. 69). Respondents purport to dispute certain of the statements, but they have not offered any record evidence in support of their alternative assertions.[1] Consequently, for purposes of summary judgment, all of the facts set forth in Petitioners' statement are deemed undisputed and admitted. *See* Fed. R. Civ. P.

---

[1] *See* D.E. 80 at ¶ 4 (disputing that immigration judges "typically do not[] consider releasing class members on conditions of release that do not require the posting of bond," and averring that "immigration judges have broad discretion to consider any number of factors relating to setting a bond, including the appropriate amount of bond, if any," but not citing or attaching any evidence disputing this); *id.* ¶ 18(b) (averring that Petitioner Celicourt's applications were denied by an immigration judge on April 10, 2019); *see also id.* ¶¶ 7, 10(b), 14(b), 18(a) (disputing certain facts because Respondents could not "verify their veracity").

56(c)(1); L.R. 56.1; *Zimmerman v. Puccio*, 613 F.3d 60, 62-63 (1st Cir. 2010); *Meagher v. Andover Sch. Comm.*, 94 F. Supp. 3d 21, 26 n.2 (D. Mass. 2015).

**II.     Petitioners are entitled to judgment on Count I.**

This Court has repeatedly ruled that due process requires the relief requested here. *See, e.g.*, *Pensamiento v. McDonald,* 315 F. Supp. 3d 684, 692 (D. Mass. 2018), *appeal dismissed by gov't*, No. 18-1691 (1st Cir. Dec. 26, 2018); *Doe v. Tompkins,* No. 18-12266, 2019 U.S. Dist. LEXIS 22616, at *3 (D. Mass. Feb. 12, 2019), *appeal pending,* No. 19-1368 (1st Cir.); *Reid v. Donelan*, 390 F. Supp. 3d 201, 225 (D. Mass. 2019).  Numerous other courts have subsequently reached this same conclusion, triggering a growing national consensus that continues to expand. *See, e.g.*, *Singh v. Barr*, No. 18-2741, 2019 WL 4168901, at *10 (S.D. Cal. Sept. 3, 2019) ("The Court agrees with the reasoning of its sister courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that continued detention is justified at a § 1226(a) bond redetermination hearing.").

Respondents offer no specific response to Petitioners' request that immigration courts be required to consider alternatives to detention and the detainee's ability to pay, *see* SJ Memo. (D.E. 68) at 7, and their arguments regarding the burden of proof are not persuasive.  These arguments rely principally upon *Demore v. Kim*, a case which the Court has already held to be inapplicable to § 1226(a) detainees "because it involved criminal aliens subject to mandatory detention." *See, e.g.*, *Pensamiento*, 315 F. Supp. 3d at 692.  Respondents also cite *Carlson v. Landon*, 342 U.S. 524 (1952), and *Reno v. Flores*, 507 U.S. 292 (1993), but neither of those cases endorsed presumptive or categorical detention. *See* Opp. (D.E. 80) at 4-7.  To the contrary, in *Carlson*, the government had presented individualized evidence of active participation in the Communist Party (then designated a proxy for dangerousness) for each detainee, and "[t]here

[was] no evidence or contention" that Party members were categorically denied bail. *See* 342 U.S. at 541-42. *Flores* addressed the rights of unaccompanied children who could not be released except to an adequate caretaker. *See* 507 U.S. at 314-15. Contrary to Respondents' summary, *Flores* did not suggest that default detention for *all* alleged noncitizens would comply with due process so long as the noncitizens are afforded a mere "*right* to a hearing"—rather, that language signifies the Court's ruling that, in the context of children who could not be released, the practice of giving them bond hearings upon request, rather than automatically, was not itself a due process violation. *See id.* at 308-09.

Respondents also argue that, under the test described in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the status quo affords class members sufficient process. *See* Opp. (D.E. 80) at 9-13. This is wrong for several reasons. First, the most relevant analysis is supplied by cases like *Foucha v. Louisiana*, 504 U.S. 71 (1992), *United States v. Salerno*, 481 U.S. 739 (1987), and *Addington v. Texas*, 441 U.S. 418 (1970), which adapt *Mathews* to the pretrial and civil detention contexts. *See Diaz-Ceja v. McAleenan*, No. 19-824, 2019 WL 2774211, at *9 (D. Colo. July 2, 2019). Those cases point uniformly towards requiring the government to bear the burden of proof. *See Pensamiento*, 315 F. Supp. 3d at 693.

Second, the *Mathews* test favors placing the burden of proof on the government in bond hearings. *See Brevil v. Jones*, No. 17-1529, 2018 WL 5993731, at *4 (S.D.N.Y. Nov. 14, 2018) ("Civil detention implicates fundamental and significant liberty interests that are afforded the highest protection under the Due Process Clause."); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). If the government does not have information demonstrating that an alleged noncitizen is a danger or

flight risk, then it has no legitimate interest in incarcerating that person while the immigration court considers whether or not the person should be removed.  *See Hernandez Arellano v. Sessions*, No. 18-6625, 2019 WL 3387210, at *11 (W.D.N.Y. Jul. 26, 2019) ("[T]he Court cannot discern any legitimate Government interest, beyond administrative convenience, in detaining noncitizens generally while their immigration proceedings are pending and no final removal order has been issued.").  There is also a high risk of erroneous deprivation, given that detained noncitizens "have little ability to collect evidence."  *See Moncrieffe v. Holder,* 569 U.S. 184, 201 (2013).  Accordingly, even if applied, the *Mathews* analysis requires that the government bear the burden.

### III.     Petitioners are entitled to judgment on Count II.

Although relief can be provided to the classes on constitutional grounds, Petitioners are also entitled to relief on statutory grounds under Count II.  Respondents principally assert that this claim is foreclosed by the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), *see* Opp. (D.E. 80) at 18, but *Jennings* did not endorse or even address BIA precedent requiring alleged noncitizens to bear the burden of proof in bond hearings.  Respondents also claim that this BIA precedent, *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999), is entitled to *Chevron* deference.  *See* Opp. (D.E. 80) at 18-20.  But, as Petitioners have explained in prior briefing, *Chevron* is inapplicable where the problem is the agency's unexplained departure from prior practice in favor of an unconstitutional alternative.  *See* SJ Memo. (D.E. 68) at 8 n.1 (citing *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 117 (1st Cir. 2009); *Pensamiento*, 315 F. Supp. 3d at 693).  The BIA's interpretation of an ambiguous immigration statute is entitled to deference only when that interpretation comports with the requirements of the APA; such an unexplained departure does not.  *See* Administrative Procedure Act, 5 U.S.C. § 706(2); *F.C.C. v.*

*Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009) ("[a]n agency may not … depart from a prior policy *sub silentio")*; *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Unexplained inconsistency is … a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the [APA]"); *Cabral v. I.N.S.,* 15 F.3d 193, 194 (1st Cir. 1994) ("Where Congress has not spoken directly to the issue, the interpretation given by the BIA is entitled to deference *unless* arbitrary, capricious, or manifestly contrary to the statute.") (emphasis added).[2]

### IV. The proposed remedies are appropriate and necessary to afford meaningful class-wide relief.

For relief, Petitioners have requested a declaration that all class members are entitled to bond hearings in which the government bears the burden and ability to pay and alternatives to detention are considered. *See* Proposed Order (D.E. 68-1). They have also requested a permanent injunction requiring (a) that all future bond hearings for any class member will comply with the declared requirements,[3] (b) that Post-Hearing class members shall receive a new bond hearing if they were prejudiced by their bond hearing's failure to meet those requirements, and (c) that the government be required to identify the Post-Hearing class members, state whether it contests the existence of prejudice as to each, and provide certain other information. *Id.* The proposed order does not ask this Court to make the individual prejudice determinations

---

[2] *Soto-Hernandez v. Holder*, 729 F.3d 1, 3 (1st Cir. 2013) and *Negusie v. Holder*, 555 U.S. 511, 516 (2009), cited by Respondents, *see* Opp. (D.E. 80 at 18-19), do not hold otherwise. Neither case involved an APA challenge.

[3] Because all class members are entitled to this relief regardless whether the future bond hearing at issue is their first bond hearing, a changed-circumstances bond hearing that they are otherwise entitled to, or a bond hearing that results from this litigation, Petitioners have noted that it would be appropriate for the Court to recognize a single class, with a post-hearing sub-class. *See* D.E. 73 at 2 n.1.

at this time.  Respondents nevertheless oppose the proposed injunctive relief on essentially three grounds, each incorrect.

*First*, Respondents contend that the Court lacks jurisdiction to enter class-wide relief in light of 8 U.S.C. § 1252(f)(1).  Opp. (D.E. 80) at 22-23.  This Court has already rejected that argument and should do so again for the same reasons.  *See* Aug. 6, 2019 Mem. & Order (D.E. 58) at 13, 15; *see also Reid v. Donelan*, 2019 U.S. Dist. LEXIS 114132, at *42-45 (D. Mass. July 9, 2019); *Reid v. Donelan*, 2018 U.S. Dist. LEXIS 181700, at *19-23 (D. Mass. Oct. 23, 2018).

*Second*, Respondents argue that the requested relief does not meet the criteria for a permanent injunction because it is not in the public interest.  Respondents contend that the requested relief would harm the public interest because it would "violate congressional intent" and "encroach on Congress's plenary powers over the entire nation."  Opp. (D.E. 80) at 23, 28.  As noted above, regardless of Congressional intent, the Constitution forbids the arbitrary detention of these class members.  But in all events, Congress knows how to expressly establish detention procedures when it wants to.  *See, e.g.*, *Zadvydas*, 533 U.S. at 697 ("[I]f Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms.").  Yet § 1226(a) does not purport to require these class members to bear any burden of proof in their bond hearings.  *See* Aug. 6, 2019 Mem. & Order (D.E. 58) at 8, 14.  Respondents point to the statute's use of the term "may," but that word does not authorize or direct the adoption of particular bond procedures, and certainly not procedures that violate the Constitution or other laws.  *See Zadvydas*, 533 U.S. at 697 (holding the word "may" did not confer "unlimited discretion" to detain); *Pensamiento*, 315 F. Supp. 3d at 689 (violation of Constitution "not a matter of the IJ's discretionary judgment"); *see also Jennings*, 138 S. Ct. at 847-48 (holding, at government's urging, that language of 1226(a) does not address bond

procedures). Consequently, where Congress has been silent, the dominant public interest in the selection of bond procedures is the protection of people's rights. *See* SJ Memo. (D.E. 68) at 15 (citing *Andujo-Andujo v. Longshore*, 2014 U.S. Dist. LEXIS 83641, at *17 (D. Col. June 19, 2014); and *Reid*, 2019 U.S. Dist. LEXIS 114132, at *46).

*Third*, Respondents argue that the requested injunctive relief for the Post-Hearing Class is "unprecedented, inefficient, and . . . contrary to basic notions of litigation," and "would undoubtedly overwhelm a backlogged immigration court system based on sheer volume alone." Opp. (D.E. 80) at 25. But this is summary judgment, and Respondents have not offered any actual evidence to support this assertion. *See* Fed. R. Civ. P. 56(c). They have not, for example, submitted any declaration that identifies the nature of any current backlog in the Boston immigration court's detained docket, the number of class members currently in detention, the number of additional bond hearings this Court's order might produce, or the impact of those hearings on the immigration court's schedule. Consequently, Respondents have not shown that the requested relief will have any particular impact on the Boston immigration court, which routinely processes significant numbers of bond hearings. *See* SOF (D.E. 69) ¶ 5 (undisputed).

Moreover, contrary to Respondents' assertion, "basic notions of litigation" support requiring the government to take affirmative steps to redress the widespread violation of people's rights. Opp. (D.E. 80) at 25. Respondents possess all the information about the unnamed class-members. Petitioners are merely asking that Respondents provide basic identifying information and then take a position on the question of prejudice in a good faith effort to narrow or resolve the issues that are potentially in dispute for the class.[4] This District's local rules require that

---

[4] Were the Court to deny summary judgment with respect to the Post-Hearing Class, Petitioners would seek class discovery from Respondents consistent with what the proposed injunction would order them to produce, and Respondents would be required to provide it then. Ordering Respondents to provide this

litigants do this every day. *See* L.R. 7.1(a)(2) & 37.1(a). The analysis is unlikely to be particularly demanding, given that the vast majority of class members will clearly have suffered prejudice under the standards articulated by this Court. *See Doe,* 2019 U.S. Dist. LEXIS 22616, at *3-4. And having the parties address and narrow these questions through orderly consultation—rather than through potentially unnecessary individual habeas petitions—is a far more efficient use of the Court's and the parties' time. This is particularly true where the class members already face immense barriers in navigating the U.S. legal system.

The requested relief is also equitable. This Court told the government more than a year ago that existing § 1226(a) bond procedures are unconstitutional. *See Pensamiento*, 315 F. Supp. 3d at 694. The government affirmatively dismissed its appeal in that matter prior to resolution, aggressively continued its detention operations under the existing bond procedures, and knowingly assumed the risk that it was providing hundreds of people with bond hearings that would not withstand constitutional scrutiny. Having assumed that risk, the government cannot now object that correcting its own errors will be too much work. The named Petitioners—Mr. Pereira Brito, Mr. Avila Lucas, and Mr. Celicourt—were wrongly jailed *for months* because of these errors. It is not too much to ask that the government identify others whose rights have similarly been violated and provide them with a proper hearing.

Such equitable relief is well within this Court's authority to enter. This Court has "broad discretionary powers when acting on habeas petitions." *Ouimette v. Moran*, 942 F.2d 1, 3 (1st Cir. 1991). In this habeas action, it may "grant *any* form of relief necessary to satisfy the requirement of justice." *Levy v. Dillon*, 415 F.2d 1263, 1265 (10th Cir. 1969). Further, First

---

information now saves all parties the time and expense of conducting discovery, and facilitates faster relief for the class members who are entitled to it, and whose liberty interests continue to be compromised through ongoing detention.

Circuit and Supreme Court precedent authorize this Court to put appropriate, administratively feasible procedural mechanisms in place to provide for an individualized adjudication of harm within the framework of a class-wide judgment. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 658 U.S. 455, 469 (2013); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 18-21 (1st Cir. 2015). Administrative feasibility involves both efficiency and fairness. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018).[5]  It is within the Court's discretion to select the mechanism Petitioners have proposed—which is both efficient and fair—and to employ appropriate case management tools to facilitate the disposition of the class members' claims. *In re Nexium*, 777 F.3d at 19-21.

Here, what Petitioners have proposed is the most efficient mechanism for providing class-wide relief and resolving any individual questions of prejudice, taking into account the seriousness of Respondents' ongoing violations and the likelihood that most if not all of the Post-Hearing Class members were prejudiced by these errors. The government will identify the class members. It will designate those class members as to whom prejudice is not disputed,[6] and those

---

[5] In *In re Asacol*, the First Circuit rejected the proposed mechanism for distinguishing injured class members from uninjured ones because the proposal did not provide the defendants with a "meaningful opportunity to contest" whether an individual class member was injured or not, and because the class included "thousands who in fact suffered no injury." 907 F.3d at 52, 53. Here, in contrast, the Petitioners' proposal would permit Respondents to contest prejudice as to any class member, and the Post-Hearing Class consists of at most a few hundred members, not thousands, most of whom likely did suffer prejudice. *See* Class Cert. Reply (D.E. 56) at 7. As a result, Petitioners' proposal offers a "manageable, individualized process." *In re Asacol*, 907 F.3d at 53. Moreover, unlike in *In re Asacol*, it is not necessary to "remove uninjured persons from the class," because the Post-Hearing Class overall is still entitled to the declaratory relief requested. The proposed process for identifying prejudiced class members applies only to the portion of injunctive relief that would grant certain class members a new bond hearing.

[6] Petitioners are not asking Respondents to adjudicate prejudice. Rather, Petitioners' proposed order asks Respondents to answer a simple question: do they contest prejudice in the prior bond hearing for each member of the Post-Hearing Class? If the answer is no, then a finding of prejudice by a court will not be required. This will save all parties and the Court the time and expense of individual habeas litigation.

class members can promptly receive a new hearing.  Where prejudice is disputed, then the individual will be in a position to evaluate whether to pursue a new bond hearing, and can determine the most appropriate mechanism for doing so (individual habeas, class-based enforcement, immigration court, etc.).  It minimizes the "line … of class members waiting their turn to offer testimony and evidence" as to prejudice without compromising Respondents' ability to challenge prejudice.  *See In re Asacol*, 907 F.3d at 51-52.  It also prevents the individuals from having to bear the burden of filing a federal lawsuit merely to learn whether or not the government agrees that they were prejudiced by the government's own error that was both foreseeable and foreseen—an approach that, if adopted, would effectively deny justice to countless individuals who were denied an adequate bond hearing but lack the means or wherewithal to file a habeas petition.

Accordingly, for all the foregoing reasons, Petitioners respectfully request that their Motions be allowed; that the current class definition be modified to include Count II; that summary judgment be entered for Petitioners on Counts I and II; and that the requested relief be entered for the classes.

Respectfully submitted,

GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, and JACKY CELICOURT, individually and on behalf of all those similarly situated,

By their attorneys,

 */s/    Susan M. Finegan*
Susan M. Finegan (BBO # 559156)
Susan J. Cohen (BBO # 546482)
Andrew Nathanson (BBO # 548684)
Mathilda S. McGee-Tubb (BBO # 687434)
Ryan Dougherty (BBO # 703380)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
smfinegan@mintz.com
sjcohen@mintz.com
annathanson@mintz.com
msmcgee-tubb@mintz.com
rtdougherty@mintz.com

Matthew R. Segal (BBO # 654489)
Daniel McFadden (BBO # 676612)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
dmcfadden@aclum.org
alafaille@aclum.org

>Gilles R. Bissonnette (BBO # 669225)
>Henry R. Klementowicz (BBO # 685512)
>SangYeob Kim (N.H. Bar No. 266657)*
>AMERICAN CIVIL LIBERTIES UNION
>FOUNDATION OF NEW HAMPSHIRE
>New Hampshire Immigrants' Rights Project
>Concord, NH 03301
>Tel.: 603.333.2081
>gilles@aclu-nh.org
>henry@aclu-nh.org
>sangyeob@aclu-nh.org
>
>Michael K. T. Tan*
>ACLU FOUNDATION IMMIGRANTS' RIGHTS
>PROJECT
>125 Broad Street, 18th Floor
>New York, New York 10004
>Tel: 212-549-2660
>mtan@aclu.org
>*Admitted *pro hac vice*
>
>*Attorneys for Petitioners*

Dated: October 4, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2019, the above-captioned document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

>  /s/     Susan M. Finegan
>         Susan M. Finegan