UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, and JACKY CELICOURT, individually and on behalf of all those similarly situated,<br><br>*Plaintiff-Petitioners*,<br><br>v.<br><br>WILLIAM BARR, et al.,<br><br>*Defendant-Respondents*. | Case No. 19-11314-PBS |

**PETITIONERS' POST-HEARING MEMORANDUM**

Pursuant to the Court's instructions at the hearing on November 5, 2019, Petitioners respectfully submit this Post-Hearing Memorandum addressing the following issues:

(1) Post-*Pensamiento* cases deciding the burden of proof for bond hearings under 8 U.S.C. § 1226(a);

(2) This Court's authority to review bond-related BIA decisions under APA standards;

(3) Post-*Hamama* cases addressing a district court's authority to issue class-wide injunctive relief in immigration matters;

(4) Statistics on attendance at immigration proceedings; and

(5) This Court's options for providing prompt relief to the class members.

1

**I.     Since *Pensamiento*, district courts have uniformly held that the government must bear the burden of proof in § 1226(a) bond hearings, and most courts have required clear and convincing evidence as the standard of proof.**

Attached as Appendix A is a table of post-*Pensamiento* cases addressing the burden and standard of proof in initial § 1226(a) bond hearings.[1]

As far as Petitioners can determine, following *Jennings v. Rodriguez*, 138 S. Ct. 830 (2016), no court of appeals has addressed the constitutional requirements for the allocation of the burden of proof in § 1226(a) bond hearings.[2] But, consistent with this Court's decision in *Pensamiento v. Macdonald*, 315 F. Supp. 3d 684 (D. Mass. 2018), it appears that district courts have unanimously agreed that the government must bear the burden of proof. Judge Telesca of the U.S. District Court for the Western District of New York relied on this consensus just last month. *See Rajesh v. Barr*, 2019 WL 5566236, at *5 (W.D.N.Y. Oct. 29, 2019) (quoting *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-36 (S.D.N.Y. 2018)).

Most of these post-*Pensamiento* cases have also held that the government must satisfy this burden by clear and convincing evidence of either flight risk or dangerousness. *See, e.g.*, *Hernandez-Lara v. ICE*, 2019 WL 3340697, at *4-7 (D.N.H. July 25, 2019); *Darko*, 342 F. Supp. 3d at 436. Petitioners have identified only one court that has required clear and

---

[1] Counsel for Petitioners have attempted to locate all such cases via searches on Lexis and Westlaw. We have excluded cases in which the petitioner claimed rights arising solely from prolonged detention (*i.e.*, not challenging the adequacy of the initial bond hearing), as well as cases involving detention under 8 U.S.C. § 1226(c) or other statutes, or where the basis for detention was unspecified. We have included cases in which the petitioner asserted prolonged detention but also challenged the constitutionality of a prior bond hearing, and the court did not find that the detention was prolonged.

[2] The Third Circuit's decision in *Borbot v. Hudson County* is not on point because the detainee expressly did "not challenge the adequacy of his initial bond hearing," and thus did not allege a constitutional defect in the bond hearing he received, but rather claimed to have acquired additional rights based solely on the prolonged length of his detention. *See* 906 F.3d 274, 276-77 (3d Cir. 2018).

2

convincing evidence to prove dangerousness, but a preponderance of the evidence for risk of flight. *See Diaz-Ceja v. McAlleenan*, 2019 WL 2774211, at *11-12 (D. Colo. July 2, 2019).

As far as Petitioners can determine, this Court has been the only one to impose a "satisfaction of the Immigration Judge" standard for both factors. An Immigration Judge subsequently interpreted that standard as being equivalent to requiring a preponderance of the evidence. *See Diaz Ortiz v. Smith*, 384 F. Supp. 3d. 140, 143 (D. Mass. 2019). Repeating that ruling would consequently place § 1226(a) detainees in a worse position than § 1226(c) detainees, for whom the Court has recently ordered a "clear and convincing evidence" standard for dangerousness, and a "preponderance of evidence" standard for flight risk. *See Reid v. Donelan*, 390 F. Supp. 3d 201, 224-25 (D. Mass. 2019).

## II.    The Administrative Procedure Act applies to BIA decisions.

The government conceded last August that the APA applies to BIA decisions. *See* Aug. 5, 2019 Hearing Tr. at 18 (Court: "I guess what I'm asking is does the Administrative Procedure Act apply to the Board of Immigration Appeals?" Gov't: "Yes, Your Honor."). That concession was correct. In *Judulang v. Holder*, the Supreme Court held that BIA decisions can be reviewed and reversed under the APA. *See* 565 U.S. 42, 52-53, 64 (2011). Since *Judulang*, the lower federal courts have confirmed that the APA allows for judicial review of BIA decisions. *See, e.g.*, *Khalid v. Sessions*, 904 F.3d 129, 140 (2d Cir. 2018).

Further, it is highly unlikely that an APA challenge to the BIA's pre-final-order detention procedures can be heard anywhere but in this Court. A petition for review permits the Court of Appeals to review final removal orders. 8 U.S.C. § 1252(a)(1) & (b); *see O'Riordan v. Barr*, 925 F.3d 6, 10-11 (1st Cir. 2019) (explaining that pre-final order petitions for review are "prematurely filed," and that the timing defect might not be cured even by the later entry of a final order). In contrast, the claim channeling provisions of 8 U.S.C. § 1252(b)(9) preserve the

3

authority of district courts to adjudicate challenges to detention procedures, like the claims in this case. *See Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007); *see also Jennings*, 138 S. Ct. at 841.

### III.   The Court has jurisdiction to issue class-wide injunctive relief.

At the summary judgment hearing, the Court asked whether, since *Hamama v. Homan*, 912 F.3d 869 (6th Cir. 2018), other federal circuit courts have addressed when a district court may enter class-wide injunctive relief in light of 8 U.S.C. § 1252(f)(1).  As far as Petitioners can determine, there have been no such decisions.  However, this Court rejected *Hamama*'s flawed reasoning in *Reid*, 390 F. Supp. at 227, and most other district courts have reached similar conclusions.  *See Padilla v. ICE*, 387 F. Supp. 3d 1219, 1227 (W.D. Wash. 2019); *O.A. v. Trump*, 2019 U.S. Dist. LEXIS 129426, at *117-19 (D.D.C. Aug. 2, 2019); *Torres v. Dep't of Homeland Sec.*, Case No. EDCV 18-2604 JGB, ECF No. 10, at 8-9 (C.D. Cal. Oct. 24, 2019);[3] *but see Vazquez Perez v. Decker*, 2019 U.S. Dist. LEXIS 170185, at *14-16 (S.D.N.Y. Sept. 30, 2019).  *See also* Class Cert. Order (ECF No. 58) at 14-15.

### IV.   There are no detention statistics to support the government's position.

At the summary judgment hearing, the Court inquired about data on whether people attend removal proceedings when they are released while those proceedings are pending.  The government has not submitted any evidence on that point (or any other).  *See* Respondents' Response to Petitioners' SUMF (ECF No. 80-1).  But case law suggests that attendance, not flight, is the norm.  In *Demore v. Kim*, the Supreme Court cited data indicating that "92% of criminal aliens . . . who were released under supervisory conditions *attended all their hearings*," as did "82% of criminal aliens released on recognizance" and "77% of those released on bond." *See* 538 U.S. 510, 519-20, 565 (2003) (emphasis added).

---

[3] The *Torres* decision is attached as Appendix B.

At the hearing, when the Court recalled information suggesting that 90% of certain non-citizens fail to appear, the Court was perhaps remembering an Interim Rule entitled "Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10,312 (Mar. 6, 1997).  Addressing noncitizens *with final orders of removal*, that document stated in part: "A recent report by the Department of Justice Inspector General shows that when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States."[4]  But that report has no relevance here.  Because it described data on post-order noncitizens, the report can shed no meaningful light on whether people in removal proceedings (like the class members here) are likely to abscond when doing so would doom them to *in absentia* removal orders.  And even if such data could be relevant here, the 1990s data are outdated; more recent data suggest that the vast majority of individuals attend all scheduled hearings and do not abscond.[5]

---

[4] *See* 62 Fed. Reg. at 10,323; U.S. Department of Justice, Office of the Inspector General, Immigration and Naturalization Service, *Deportation of Aliens After Final Orders Have Been Issued*, Rep. No. I-96-03 (Mar. 1996), *available at*: http://www.justice.gov/oig/reports/INS/e9603/#REMOVAL%20OF%20NON.

[5] *See, e.g.*, Ingrid Eagly, et al., American Immigration Council, *Detaining Families: A Study of Asylum Adjudication in Family Detention*, at 2, 22 (Aug. 2018), available at https://www.americanimmigrationcouncil.org/sites/default/files/research/detaining_families_a_study_of_asylum_adjudication_in_family_detention_final.pdf (finding that "86 percent of released family members (with completed and pending cases) had attended all of their court hearings that occurred during our study period," and "96 percent of asylum applicants had attended all their immigration court hearings," meaning that "only 14 percent of family members [or less for asylum applicants] in our study who were released from detention were ordered removed *in absentia*"); TRAC Immigration, *Most Released Families Attend Immigration Court Hearings* (June 18, 2019), https://trac.syr.edu/immigration/reports/562/ ("court records directly contradict the widely quoted claim that "90 Percent of Recent Asylum Seekers Skipped Their Hearings"); TRAC Immigration, *What Happens When Individuals Are Released On Bond in Immigration Court Proceedings?* (Sept. 14, 2016), https://trac.syr.edu/immigration/reports/438/ (over a 20-year period, 86 percent of individuals released on bond appeared for their court hearings).

**V.     The Court can give prompt relief to the class members.**

Because many class members are now detained without adequate due process (or soon will be), Petitioners respectfully request that the Court issue its decision as soon as possible. This would also aid the parties by allowing them to present any appeal to the First Circuit relating to the classes' interests at the same time as pending individual appeals on the same issues. *See Doe v. Tompkins*, No. 19-1368 (1st Cir.) (Appellee's brief due Dec. 16, 2019); *Hernandez-Lara v. Lyons*, No. 19-2019 (1st Cir.).

To that end, although classes could now be certified as to Count II, the Court need not reach the merits of Count II if it requires the government to bear the burden of proof on constitutional grounds under Count I. *See, e.g.*, *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 n.6 (D. Mass. 2018). Likewise, if the Court concludes that it needs more time to work out issues relating to the *post-hearing* class, the Court could consider entering and severing a final judgment that establishes the rights of the *pre-hearing* class now. *See* Fed. R. Civ. P. 54(b); *cf. Speigel v. Trustees of Tufts College*, 843 F.2d 38, 42-46 (1st Cir. 1988) (discussing Rule 54(b) standard).

Most important, the immediate entry of judgment would stop the ongoing expansion of the post-hearing class by halting constitutionally inadequate bond hearings, which are now ongoing. The Court could then address the post-hearing class through continuing proceedings in district court, including administrative procedures to adjudicate the "prejudice" inquiry (*e.g.*, appointing a master to efficiently and uniformly adjudicate prejudice pursuant to Fed. R. Civ. P. 53). *See, e.g.*, *In re Nexium*, 777 F.3d 9, 21 (1st Cir. 2015). Such procedures would surely be

preferable to litigating 450 habeas petitions, each of which would require the government to undertake substantially the same analysis of whether it can and should contest prejudice.

Respectfully submitted,

GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, and JACKY CELICOURT, individually and on behalf of all those similarly situated,

By their attorneys,

 */s/    Susan M. Finegan*
Susan M. Finegan (BBO # 559156)
Susan J. Cohen (BBO # 546482)
Andrew Nathanson (BBO # 548684)
Mathilda S. McGee-Tubb (BBO # 687434)
Ryan Dougherty (BBO # 703380)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
smfinegan@mintz.com
sjcohen@mintz.com
annathanson@mintz.com
msmcgee-tubb@mintz.com
rtdougherty@mintz.com

 */s/    Daniel McFadden*
Matthew R. Segal (BBO # 654489)
Daniel McFadden (BBO # 676612)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
dmcfadden@aclum.org
alafaille@aclum.org

>Gilles R. Bissonnette (BBO # 669225)
>Henry R. Klementowicz (BBO # 685512)
>SangYeob Kim (N.H. Bar No. 266657)*
>AMERICAN CIVIL LIBERTIES UNION
>FOUNDATION OF NEW HAMPSHIRE
>New Hampshire Immigrants' Rights Project
>Concord, NH 03301
>Tel.: 603.333.2081
>gilles@aclu-nh.org
>henry@aclu-nh.org
>sangyeob@aclu-nh.org
>
>Michael K. T. Tan*
>ACLU FOUNDATION IMMIGRANTS' RIGHTS PROJECT
>125 Broad Street, 18th Floor
>New York, New York 10004
>Tel: 212-549-2660
>mtan@aclu.org
>*Admitted *pro hac vice*
>
>*Attorneys for Petitioners*

Dated: November 12, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, the above-captioned document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

>  /s/     Susan M. Finegan
>         Susan M. Finegan