## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>GILBERTO PEREIRA BRITO, FLORENTIN, )<br>AVILA LUCAS, and JACKY CELICOURT, )<br>individually and on behalf of all )<br>those similarly situated, )<br> )<br>       Plaintiffs-Petitioners, )<br> )<br>v. )<br> )<br>WILLIAM BARR, Attorney General, )<br>U.S. Department of Justice, et )<br>al., )<br> )<br>       Defendants-Respondents. )<br>_____ ) | Civil Action<br>No. 19-11314-PBS |

## MEMORANDUM AND ORDER

November 27, 2019

Saris, C.J.

## INTRODUCTION

In this class action, Plaintiffs challenge the procedures at immigration court bond hearings on the grounds they violate the Fifth Amendment Due Process Clause, the Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA"). Specifically, Plaintiffs claim that the allocation of the burden of proof to the alien and failure to consider alternative conditions of release and the alien's ability to pay are unlawful with respect to aliens detained under 8 U.S.C.

1

§ 1226(a), the provision applicable to aliens with no serious criminal convictions who are not subject to an order of removal.

In August 2019, the Court certified two classes asserting the due process claim.

> Pre-Hearing Class: All individuals who (1) are or will be detained pursuant to 8 U.S.C. § 1226(a), (2) are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court, and (3) have not received a bond hearing before an immigration judge.

> Post-Hearing Class: All individuals who (1) are or will be detained pursuant to 8 U.S.C. § 1226(a), (2) are held in immigration detention in Massachusetts or are otherwise subject to the jurisdiction of the Boston Immigration Court, and (3) have received a bond hearing before an immigration judge.

Plaintiffs now move to modify the certified classes to include the administrative law claim. They also move for summary judgment on both claims.

After hearing, the Court **ALLOWS** Plaintiffs' motion to modify the class definitions (Dkt. No. 72) and **ALLOWS** their motion for summary judgment. (Dkt. No. 67). The Court **ALLOWS IN PART** and **DENIES IN PART** the requested declaratory and injunctive relief.

In summary, the Court holds and declares as follows: First, the Board of Immigration Appeals ("BIA") policy of placing the burden of proof on the alien at 8 U.S.C. § 1226(a) bond hearings violates due process and the APA. Second, due process requires the Government prove at § 1226(a) bond hearings an alien's

2

dangerousness by clear and convincing evidence or risk of flight
by a preponderance of the evidence. Third, due process requires
the immigration court to evaluate an alien's ability to pay in
setting bond, and consider alternative conditions of release,
such as GPS monitoring, that reasonably assure the safety of the
community and the alien's future appearances. Fourth, the
Government shall produce to class counsel certain information
regarding each member of the Post-Hearing Class in order to
facilitate individual habeas petitions challenging their
continued detention.

**FACTUAL BACKGROUND**

I.   **Bond Hearings**

    **A. The Class Representatives**

Gilberto Pereira Brito is a citizen of Brazil. Immigration
and Customs Enforcement ("ICE") arrested him at his home in
Brockton, Massachusetts on March 3, 2019. On April 4, 2019,
Pereira Brito received a bond hearing in Boston Immigration
Court where he was required to prove that he is not a danger or
a flight risk in order to be released from custody. At the
hearing, Pereira Brito presented evidence that he lives in
Brockton with his wife and three young children, all of whom are
U.S. citizens. Further, his wife is disabled and cannot work,
which means Pereira Brito is the sole provider for his family.
Prior to his arrest, Pereira Brito voluntarily disclosed his

location to the Government as part of the process for applying for lawful permanent resident status through his wife. In immigration court, meanwhile, he applied for cancellation of removal on the basis that he has been in the United States for more than 10 years and has U.S. citizen family members who would suffer an exceptional and extremely unusual hardship were he removed. Other than his March 2019 arrest by ICE, Pereira Brito had not been arrested for, charged with, or convicted of any crimes since May 2009. The immigration judge denied him bond because he "did not meet his burden to demonstrate that he neither poses a danger to the community nor is a risk of flight."

Florentin Avila Lucas is a citizen of Guatemala. Customs and Border Patrol agents arrested him outside a thrift store in Lebanon, New Hampshire on March 20, 2019. On May 2, 2019, Avila Lucas received a bond hearing in Boston Immigration Court where he was required to prove that he is not a danger or a flight risk in order to be released from custody. At the hearing, he presented evidence that he had no criminal history and he had worked at the same dairy farm located in Claremont, New Hampshire since 2006. Avila Lucas worked approximately 70 hours per week at the dairy farm. The immigration judge denied him bond because he "failed to meet his burden of proof to show that he is not a danger or flight risk."

Jacky Celicourt is a citizen of Haiti. ICE arrested him on January 16, 2019. On February 7, 2019, Celicourt received a bond hearing in Boston Immigration Court where he was required to prove that he is not a danger or a flight risk in order to be released from custody. At the hearing, he presented evidence that he arrived in the United States in 2018 on a tourist visa and that he moved to Nashua, New Hampshire where he worked in construction and roofing. Previously, Celicourt had been politically active in Haiti but was forced to flee after being attacked by armed men. Based on this experience, he was applying for asylum, withholding of removal, and protection under the Convention Against Torture. Celicourt did not have a criminal record other than a single charge for theft of a pair of headphones that cost $5.99. On January 16, 2019, he pleaded guilty to the theft charge and was fined $310, which was suspended for one year. The immigration judge denied Celicourt bond because he "failed to prove he's not a danger to property or a flight risk."

Following the commencement of this lawsuit, ICE released all three Class Representatives from custody on bond.

**B. Bond Hearings**

Between November 1, 2018 and May 7, 2019, Boston Immigration Courts held bond hearings for 700 aliens, and Hartford Immigration Courts held bond hearings for 77 aliens. Immigration

5

judges issued decisions after 651 of those hearings, denying release on bond in approximately 41% of cases. The average bond amount set during this period was $6,302 and $28,700 in the Boston and Hartford Immigration Courts, respectively. About half of the aliens were still in custody ten days after bond was set. During that same period, the median case length was 129 days, the 25th percentile was 49.5 days, and the 75th percentile was 732 days.[1]

## DISCUSSION

## I.   Statutory and Regulatory Framework

Pursuant to 8 U.S.C. § 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Unless the alien is removable on certain criminal or terrorist grounds, see id. § 1226(c), the Attorney General may continue to detain him or may release him on "conditional parole" or "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," id. § 1226(a)(1)-(2). After ICE makes the initial decision to detain an alien, the alien may request a bond hearing in immigration court at any time before a removal

---

[1]   Plaintiffs' statement of material facts presents slightly different case-length figures than the Supplemental Declaration of Sophie Beiers, which is the source for the statement of material facts. The figures cited above are drawn directly from Beiers' Supplemental Declaration, but the differences between the figures are immaterial to the Court's decision.

order becomes final. 8 C.F.R. § 236.1(d)(1). The immigration court's bond decision is appealable to the BIA. Id. § 1003.19(f). Notably, § 1226(a) is silent as to whether the Government or the alien bears the burden of proof at a bond hearing and what standard of proof that party must meet. See 8 U.S.C. § 1226(a).

The BIA has held that at a bond hearing under § 1226(a) "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006); In re Adeniji, 22 I. & N. Dec. 1102, 1112-13 (BIA 1999). This language is drawn from a regulation governing the authority of immigration officers who may issue arrest warrants. See 8 C.F.R. § 236.1(c)(8) (requiring the alien to "demonstrate to the satisfaction of the officer" that he is neither dangerous nor a flight risk to be released). The BIA has applied the burden allocation and standard of proof in 8 C.F.R. § 236.1(c)(8) to bond determinations by immigration judges. See Adeniji, 22 I. & N. Dec. at  1112-13. The BIA has held that the alien must show to the satisfaction of the immigration judge that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Guerra, 24 I. & N. Dec. at 40. The BIA has repeatedly reaffirmed that the burden of proof falls

on the alien. See, e.g., Matter of Fatahi, 26 I. & N. Dec. 791,
793 (BIA 2016).

The Supreme Court recently addressed the procedures
required at a bond hearing under § 1226(a) in Jennings v.
Rodriguez, 138 S. Ct. 830 (2018). The Ninth Circuit had employed
the canon of constitutional avoidance to read a requirement into
§ 1226(a) for "periodic bond hearings every six months in which
the Attorney General must prove by clear and convincing evidence
that the alien's continued detention is necessary." Id. at 847.
The Supreme Court held that "[n]othing in § 1226(a)'s text . . .
even remotely supports the imposition of either of those
requirements." Id. The Supreme Court expressly declined to
address whether the Constitution required these procedural
protections. See id. at 851.

## II.  **Constitutional Claim**

Plaintiffs have moved for summary judgment on their
constitutional claim that that the procedures currently followed
in § 1226(a) bond hearings violate the Due Process Clause of the
Fifth Amendment. They contend that a constitutionally adequate
bond hearing requires that (1) the burden of proof be placed on
the Government, (2) the Government prove by clear and convincing
evidence that the alien is dangerous and a flight risk, (3) the
immigration judge consider the alien's ability to pay in setting
bond amounts, and (4) the immigration judge consider alternative

conditions of release that will assure the safety of the community and the alien's future appearances. There are no disputed issues of material fact.

a. Burden of Proof

Plaintiffs argue that the immigration court's allocation of the burden of proof to the alien violates due process. In Pensamiento v. McDonald, 315 F. Supp. 3d 684, 692 (D. Mass. 2018), the Court held that due process "requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings. Requiring a non-criminal alien to prove that he is not dangerous and not a flight risk at a bond hearing violates the Due Process Clause." In cases where a non-criminal alien will be deprived of liberty, due process requires the Government prove detention is necessary. See Foucha v. Louisiana, 504 U.S. 71, 81–82 (1992); Addington v. Texas, 441 U.S. 418, 427 (1979). This is especially true when many aliens are detained for extended periods of time. See Jennings, 138 S. Ct. at 860 (Breyer, J., dissenting) (stating that class members had been detained for periods ranging from six months to 831 days while pursuing asylum petitions).

Most other district courts have reached the same conclusion. See Darko v. Sessions, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (collecting cases). No circuit court has addressed the allocation of the burden of proof in § 1226(a)

9

bond hearings post-Jennings, but the pre-Jennings caselaw (which was not disturbed by Jennings) is consistent with placing the burden of proof on the Government. See Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that due process requires the Government to bear the burden of proof at a § 1226(a) bond hearing); cf. Guerrero-Sanchez v. Warden York Cty. Prison, 905 F.3d 208, 224 (3d Cir. 2018) (placing burden of proof on the Government at a bond hearing for alien detained after final order of removal under 8 U.S.C. § 1231(a)(6)). The Government directs the Court to the Eighth Circuit's recent unpublished decision in Ali v. Brott, 770 F. App'x 298 (8th Cir. 2019). But Ali is no more helpful to the Government than Jennings. The Eighth Circuit held only that § 1226(a) does not contain a reasonableness requirement as to the amount of time an alien can be detained. Id. at 301-02. It then remanded the case for the district court to address petitioner's constitutional challenges under the Fourth and Fifth Amendments to his detention under § 1226(a). Id. at 302.

Therefore, the Court holds that the Due Process Clause requires the Government bear the burden of proof in § 1226(a) bond hearings.

b. Standard of Proof

Plaintiffs argue that due process requires that the Government prove flight risk and dangerousness by clear and

convincing evidence in § 1226(a) bond hearings. The only standard applicable to detention hearings now is "to the satisfaction" of the immigration judge, which is effectively no standard at all and may vary from judge to judge. Although the Court has held the Government must bear the burden of proof, it has left open the question of the applicable standard of proof in § 1226(a) bond hearings.

In Reid v. Donelan, 390 F. Supp. 3d 201, 227-28 (D. Mass. 2019), however, the Court held that a criminal alien subject to unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c) is entitled to a bond hearing at which the Government bears the burden of proving either his dangerousness by clear and convincing evidence or his risk of flight by a preponderance of the evidence. This differentiated standard of proof is the same that applies in the context of criminal pretrial detention under the Bail Reform Act. See United States v. Salerno, 481 U.S. 739, 751 (1987) (holding that pretrial detention is "consistent with the Due Process Clause" "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"); United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991) (holding that standard for pretrial detention based on risk of flight is preponderance of the evidence).

Plaintiffs argue that a higher standard of proof for risk of flight is appropriate because aliens with no criminal convictions do not pose the same risk of flight as defendants in criminal proceedings. They point out that an alien who fails to appear for an immigration court proceeding may forfeit the right to contest removal. See 8 U.S.C. § 1229a(b)(5). However, many aliens do not have viable defenses to removal and may well prefer to flee, rather than be removed from the country. While due process requires procedural protections for aliens unlawfully in this country, the Court is not persuaded that aliens who are civilly detained are entitled to protection that go beyond those given to criminally detained U.S. citizens. Cf. Demore v. Kim, 538 U.S. 510, 522 (2003) ("Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

The Court concludes that the vague standard of proof currently employed at § 1226(a) bond hearing does not provide an alien with "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" given the extent of the liberty interest at stake. Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Accordingly, the Court holds the Government must prove either an alien's dangerousness by clear and convincing evidence or risk of flight by a preponderance of the evidence.

c. <u>Conditions of Release and Ability to Pay</u>

Plaintiffs argue that due process requires an immigration court consider both an alien's ability to pay in setting the bond amount and alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances. This is what the Court held in <u>Reid</u> with respect to bond hearings for aliens detained under § 1226(c). 309 F. Supp. 3d at 225. The Court now holds that this requirement applies equally in 1226(a) bond hearings. This requirement ensures that the decision to continue detention of an alien is reasonably related to the Government's interest in protecting the public and assuring appearances at future proceedings.[2] <u>See</u> <u>Hernandez v. Sessions</u>, 872 F.3d 976, 1000 (9th Cir. 2017) (requiring ICE and immigration judges consider alternative conditions of release and ability to pay in setting bond amounts for aliens detained under § 1226(a)); <u>Abdi v. Nielsen</u>, 287 F. Supp. 3d 327, 338 (W.D.N.Y. 2018) (requiring same for arriving aliens detained under 8 U.S.C. § 1225(b)).

**III.   <u>The APA Claim</u>**

Plaintiffs contend that the allocation of the burden of proof to the alien in § 1226(a) bond hearings also violates the

---

[2]   Section 1226(a) authorizes an immigration court to release an alien on "bond of at least $1,500" or "conditional parole." Plaintiffs do not challenge the statutory minimum bond amount.

INA and APA. They advance two separate theories of why the allocation of the burden of proof to the alien in § 1226(a) bond hearings violates the APA and INA. First, they claim that because the allocation of the burden of proof is unconstitutional it also violates the INA and APA. See 5 U.S.C. § 706(2)(B) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right . . . ."). Second, they claim it is arbitrary and capricious because Adeniji reversed long-standing agency precedent placing the burden on the Government, without providing sufficient reasons for the change. See 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .").

As an initial matter, the APA provides Plaintiffs with a cause of action to challenge the BIA's policy decisions regarding detention. See Judulang v. Holder, 565 U.S. 42, 52-53 (2011). APA challenges to immigration detention policies in District Court are not precluded by the zipper clause in § 1252(b)(9).[3] See Aguilar v. ICE, 510 F.3d 1, 11 (1st Cir.

---

[3]    This provision consolidates and channels judicial review of orders of removal in the courts of appeal.

2007); see also R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 186 (D.D.C. 2015) ("[A]lthough Congress has expressly limited APA review over individual deportation and exclusion orders, see 8 U.S.C. 1252(a)(5), it has never manifested an intent to require those challenging an unlawful, nationwide detention policy to seek relief through habeas rather than the APA." (citation omitted)).

Because the Court has already concluded that the BIA's policy of placing the burden of proof on the alien in § 1226(a) bond hearings is unconstitutional, the Court also holds that the BIA policy is a violation of the APA. See Atterbury v. U.S. Marshals Serv., 941 F.3d 56, 62 (2d Cir. 2019) (recognizing APA claim under § 706(2)(B) for violation of due process right as distinct from "free-standing constitutional claim"); Sierra Club v. Trump, 929 F.3d 670, 698 (9th Cir. 2019) (recognizing APA claim under § 706(2)(B) for violation of Appropriations Clause); Cancino Castellar v. McAleenan, 388 F. Supp. 3d 1218, 1248 (S.D. Cal. 2019) (declining to dismiss APA claim based on alleged constitutional violations in immigration detention context). Accordingly, the Court finds that the BIA policy of placing the burden of proof on the alien in § 1226(a) bond hearings violates the APA because the policy is unconstitutional.[4]

---

[4]    Given this ruling the Court need not address the Plaintiffs' alternative theory under the APA.

IV.   **Class Modification**

Plaintiffs have moved to modify the class definitions to cover both their APA claims. "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "In determining whether to do so, courts consider 'the criteria of Rule 23(a) and (b) in light of factual and legal developments' and if 'the parties or the class would be unfairly prejudiced by a change in proceedings.'" Reid v. Donelan, No. CV 13-30125-PBS, 2018 WL 5269992, at *3 (D. Mass. Oct. 23, 2018) (quoting In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 115 (S.D.N.Y. 1993)). Because Plaintiffs' due process and administrative law claims are essentially co-extensive, the reasoning of the Court's original class certification ruling applies equally to both claims. Likewise, there is no prejudice to the Government in amending the class definitions at this stage of the litigation. Accordingly, the Court modifies the definitions of the Pre-Hearing and Post-Hearing Classes to cover both of Plaintiffs' claims.

V.   **Remedy**

Plaintiffs seek a declaratory judgment setting forth the minimum procedural requirements for § 1226(a) bond hearings to satisfy the Due Process Clause. They also seek an injunction ordering the Government to comply with these procedures in all

16

future bond hearings. For the Post-Hearing Class only, Plaintiffs request an injunction ordering the Government provide new bond hearings to class members who were prejudiced by the constitutional deficiencies of their original bond hearings. They also request the Court to order the Government to take additional steps to facilitate the process of providing class members with new bond hearings.

    a. <u>Jurisdiction</u>

The Government renews its argument from class certification that 8 U.S.C. § 1252(f)(1) deprives the Court of jurisdiction to issue the classwide declaratory and injunctive relief sought by Plaintiffs. Section 1252(f)(1) strips the lower courts of jurisdiction "to enjoin or restrain the operation of" certain provisions of the INA on a classwide basis. <u>See</u> <u>Hamama v.</u> <u>Adducci</u>, 912 F.3d 869, 879-80 (6th Cir, 2018) (noting that the "practical effect of a grant of declaratory relief as to Petitioners' detention would be a class-wide injunction against the detention provisions"). Yet a majority of the Supreme Court recently indicated that Section 1252(f)(1) does not extend to declaratory relief. Three justices in <u>Nielsen v. Preap</u>, 139 S. Ct. 954, 962 (2019) (opinion of Alito, J.), stated that a district court has jurisdiction to entertain a request for declaratory relief consistent with § 1252(f)(1), adding their

voices to the three other justices who said the same in
Jennings, 138 S. Ct. at 875 (Breyer, J., dissenting).

Whether the Court has jurisdiction to issue injunctive
relief is a closer question. Section 1226 does not provide the
procedural requirements for bond hearings. See 8 U.S.C. § 1226.
Instead, the procedural rules followed by immigration courts
come from BIA precedential decisions, which are not construing
language in the statute. See Reid, 390 F. Supp. 3d at 223 & n.7.
To be sure, the requested injunction requires the Government to
follow certain constitutionally mandated due process procedures
at bond hearings, but it does not mandate the release of any
class members nor does it allow an opportunity for release not
already provided by the statute. Cf. Hamama, 912 F.3d at 879-80
(finding district court lacked jurisdiction to enter injunction
ordering release of detainees unless they were provided bond
hearings not required by statute). Therefore, the Court
concludes Section 1252(f)(1) is inapplicable because the
proposed injunction does not "enjoin or restrict" the operation
of the INA.

b. Injunctive Relief

A court may issue a permanent injunction if "(1) plaintiffs
prevail on the merits; (2) plaintiffs would suffer irreparable
injury in the absence of injunctive relief; (3) the harm to
plaintiffs would outweigh the harm the defendant would suffer

from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction." Healey v. Spencer, 765 F.3d 65, 74 (1st Cir. 2014).

As discussed above, the Court finds that Plaintiffs prevail on both their constitutional and administrative law claims. Since these claims challenge the Government's immigration detention procedures, in the absence of an injunction, there is a risk irreparable of harm because the class members who have no or little criminal history face a loss of their liberty by incarceration in jail for months and sometimes years. See Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a . . . severe form of irreparable injury."). The first two permanent injunction factors therefore are satisfied.

The Government contends that the third and fourth factors cannot be satisfied. First, the Government argues that the proposed injunction would adversely affect the public interest because it is contrary to congressional intent. This is wholly unpersuasive. Although the statute does state that "an alien may be . . . detained," 8 U.S.C. § 1226(a), § 1226 is silent on the procedures applicable in immigration bond hearings.  Cf. Zadvydas v. Davis, 533 U.S. 678, 697 (2001) ("[W]hile 'may' suggests discretion, it does not necessarily suggest unlimited discretion."). In any case, requiring the Government to obey the

Constitution in its administration of immigration detention supports the public interest. See Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Second, the Government argues that the proposed injunction would impose a severe administrative burden, which tips the balance of interests in its favor. It asserts that the immigration court system is already backlogged and overburdened. Yet the Government does not explain how the proposed procedures for the Pre-Hearing Class will worsen this supposed backlog. There is no evidence in the record that shifting the burden to the Government and clarifying the standard of proof will make hearings more time consuming or cases more difficult to adjudicate. As discussed below, while members of the Post-Hearing Class will be entitled to new bond hearings if they can show they were prejudiced by the constitutional defects in their original hearing, whether or not new hearings are in fact appropriate will be decided through separate habeas actions.

c. Post-Hearing Relief

The parties' primary dispute concerning the scope of the injunctive relief concerns the Post-Hearing Class. Plaintiffs request that the Court order the Government to provide for each

class member: (i) the name and A-number; (ii) the current location; (iii) the date the current period of detention began, (iv) the name of the person's counsel in immigration court, if any, (v) a statement of whether the Government intends to dispute prejudice as to that person, and if so, a brief explanation of the good faith basis for such dispute, and (vi) a statement of whether a new bond hearing has taken place after the date of the Court's judgment and, if so, the outcome.

Some of the Plaintiffs' requests are reasonable and appropriate. The Government must provide class counsel with basic information regarding the Post-Hearing Class members whom it is currently detaining (i.e., name, location, detention date, counsel information, bond hearing dates). This information should be readily accessible to the Government and, in some cases, the information will be within its exclusive control. The sticking point is Plaintiffs' request that the Government also provide for each Post-Hearing Class member a statement of whether it intends to contest prejudice in a subsequent habeas action and its good faith basis for contesting prejudice. This proposed relief would be unduly burdensome for the Government because Plaintiffs allege, and the Government does not dispute, that since November 2018 hundreds of aliens have been denied bond. As the Court already explained in its class certification opinion, members of the Post-Hearing Class will have to litigate

prejudice through individual habeas petitions. The Government does not have to take a position on prejudice with respect to individual class members before any habeas petitions are filed.

### ORDER

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 67) and motion to modify the class definitions (Dkt. No. 72) are **ALLOWED**. Plaintiffs' request for declaratory and injunctive relief is **ALLOWED IN PART** and **DENIED IN PART**.

### DECLARATORY JUDGMENT (BOTH CLASSES)

The Court declares that aliens detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing at which the Government must prove the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community. At the bond hearing, the immigration judge must evaluate the alien's ability to pay in setting bond above $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances.

## **PERMANENT INJUNCTION (BOTH CLASSES)**

The Court orders that immigration courts shall follow the requirements set forth in the above declaration, effective December 13, 2019.

The Court orders that the Government shall provide this declaratory judgment and permanent injunction to all members of both classes by December 13, 2019 and to all new members of the Pre-Hearing Class once ICE makes the initial determination to detain them pursuant to 8 U.S.C. § 1226(a). The Government shall file a certification that this has occurred by December 16, 2019.

## **PERMANENT INJUNCTION (POST-HEARING CLASS ONLY)**

The Court orders that the Government shall provide class counsel with the following information for each member of the Post-Hearing Class by January 3, 2020: (1) the name; (2) the current location; (3) the date the current period of detention began, (4) the name of the class member's counsel in immigration court, if any, and; (5) a statement of whether a new bond hearing has taken place after the date of this order and, if so, the outcome. The Government also shall file with the Court a copy of this information.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge

23