## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

GILBERTO PEREIRA BRITO, FLORENTIN
AVILA LUCAS, and JACKY CELICOURT,
individually and on behalf of all those similarly
situated,

               *Plaintiff-Petitioners*,

v.

WILLIAM BARR, et al.,

               *Defendant-Respondents*.

Case No. 19-11314-PBS

## OPPOSITION TO RESPONDENTS' MOTION
## TO EXTEND THEIR DEADLINE TO COMPLY WITH THE COURT'S ORDER
## AND FILE A CERTIFICATION OF COMPLIANCE

The government's Friday evening submission is styled as a motion to "extend" certain

deadlines.  In substance, however, the government is requesting to turn back time and reverse its

compliance with injunctive and declaratory judgments that it had *already implemented on*

*Friday*, with a notice obligation that *was completed on Friday*, and with a certification

requirement that was *completed yesterday*.  This makes no sense.  The government has no need

to be excused from complying with the existing timeline.  According to the sworn statements of

its own officials, it already did.

Factually, the motion purports to rely upon a bare assertion of a need to train immigration

judges and government attorneys.  This unsworn assertion is insufficient to justify relief as a

matter of law, and also appears to be inaccurate.  The government reportedly *already* trained the

DHS trial attorneys on the *Pereira Brito* requirements in a special session last Wednesday.  And

1

the immigration judges are well aware of the Court's decision and its implications.  For roughly

two weeks, the judges relied upon the decision to offer Pre-Hearing Class members an

opportunity to delay their bond hearings until after the December 13 effective date (an offer

some class members accepted).  The Assistant Chief Immigration Judge for the Boston and

Hartford immigration courts has now stated under oath that the requirements of that decision

went into effect on December 13 as scheduled and remain in effect today.  In bond hearings

conducted *this very morning*, the government acknowledged that it bore the burden of proof.

Reversing the status quo now would be entirely unjustified.  It would also be grossly

inequitable.  Pre-Hearing Class members are in custody *now* and have been waiting for

constitutionally adequate bond hearings to become available (hopefully before the holidays).

Post-Hearing Class members and their counsel have been working diligently to request new bond

hearings through individual habeas petitions as the Court ordered.  Turning back the clock would

halt this forward momentum and needlessly subject these class members to unjust practices that

this Court has repeatedly found unconstitutional.  For these reasons, the motion should be

denied.

## I.      Factual and procedural background.

On November 27, 2019, the Court granted a class-wide motion for summary judgment

and entered a Declaratory Judgment that requires the government to bear the burden of proof in

the class members' immigration bond hearings, and, in setting a class member's bond, to

consider the class member's ability to pay and alternative conditions of release.  *See* Nov. 27,

2019 Mem. & Order (D.E. 88) at 22.  The Court also entered a Permanent Injunction requiring

that "the immigration courts shall follow the requirements set forth in the above declaration,

effective December 13, 2019."  *See id.* at 23.  Members of the Pre-Hearing Class would

consequently receive the benefit of the order at any bond hearing on or after that date, and members of the Post-Hearing Class would receive the benefit if they secured a new bond hearing by establishing "prejudice through individual habeas petitions." *See id.* at 22.

In addition to this substantive relief, the Court's Permanent Injunction imposed notice requirements. *See id.* at 23. Among other things, the government was required to "provide this declaratory judgment and permanent injunction to all members of both classes by December 13, 2019," and to "file a certification that this has occurred by December 16, 2019." *See id.*

For two weeks after the Court's order on November 27, the government was silent. *See* McFadden Decl. ¶4. Class members began to act in reliance upon the impending effective date of the Court's declaration. In the Boston Immigration Court, for example, at least one immigration judge informed detainees that they could postpone their bond hearings until after the *Pereira Brito* requirements became effective on December 13. Church Decl. ¶¶4-5. Some detainees agreed to the delay. *See id.* In federal court, Post-Hearing Class members began filing habeas petitions to secure new bond hearings.[1] And, outside of court, class counsel expended substantial time and resources to prepare a training to teach attorneys how to file *pro bono* habeas petitions on behalf of Post-Hearing Class members. McFadden Decl. ¶9. More than 80 attorneys and legal staff attended that training last Friday, and class counsel expect to begin connecting Post-Hearing Class members with trained *pro bono* counsel this week. *Id.*

On December 12, class counsel learned that the government was providing notice of the Court's declaration and injunction to class members in detention. *Id.* ¶5. Class counsel asked the government for a copy of this notice, but the government did not provide it. *Id.* ¶5 & Ex. A.

---

[1] *See, e.g.*, *Massingue v. Barr et al.*, No. 19-30159-KAR (D. Mass.) (*pro se* habeas petition by apparent Post-Hearing Class member); *Khoja v. Moniz*, No. 19-12508-PBS (D. Mass.) (habeas petition by represented Post-Hearing Class member).

Class counsel later obtained copies of the notice from various immigration attorneys.  *Id.* ¶6.  It appears that the government provided stock notices that are all substantially identical and that contain nothing more than the text of the Court's Declaration and Permanent Injunction in English only.  *Id.* ¶6 & Ex. B.

On December 13, the Court's Declaratory Judgment (*i.e.*, the new bond hearing procedures) went into effect.  Late that afternoon, class counsel received two requests from the government.  McFadden Decl. ¶¶7-8.  First, the government requested to extend the notice deadlines by 14 days.  *Id.* ¶7.  Second, the government requested to delay the effective date of the Court's declaration, even while acknowledging that the effective date had already passed and the new bond procedures were "already in effect."  *Id.* ¶8 & Ex. C.  Class counsel informed the government that they opposed these requests.  *Id.*

On the evening of December 13, the government filed a motion to extend both sets of dates by 14 days.  Mot. (D.E. 89) at 1-2.  The motion does not cite any rule or other legal basis for modifying the Court's final judgment.  It does not explain why the government waited to seek extensions until *after* the notices were required to be delivered, and *after* the Court's declaration was in effect.  And it does not explain why reverting to the prior bond procedures— which this Court has declared unconstitutional—is appropriate or helpful.

Indeed, the government's only proffered justification for delay (besides non-responsiveness in the Solicitor General's office) is that "[c]ompliance would require training all relevant immigration judges and ICE counsel and would further result in docket complications, because compliant bond hearings could not be resolved at initial master calendar hearings."  Mot. (D.E. 89) at 2.  This does not appear to be an accurate statement.  The DHS Trial attorneys who work in the immigration court were reportedly trained on the *Pereira Brito* bond hearing

requirements in a special training session last Wednesday.  *See* Church Decl. ¶5; Nader Decl. ¶2

& Ex. A.  And the immigration judges are already well aware of the decision and its

requirements.  *See* Church Decl. ¶4; Noureddine Decl. ¶¶4-8; *see also* D.E. 90, Ex. B ¶3.

On December 16, the government filed a certification and appended sworn statements

(D.E. 90) verifying (a) that the government completed the notice process on December 13; and

(b) that the requirements of the Court's order have been in effect in the Boston Immigration

Court since December 13.  Given these statements, class counsel contacted the government to

inquire if its motion to extend deadlines is now moot.  McFadden Decl. ¶10.   The government

took the position that the motion is still live and is not being withdrawn.  *See id.*

On the morning of December 17, class counsel observed several bond hearings in the

Boston Immigration Court. *See id.* ¶11.  Class counsel heard the Immigration Judge reference

this Court's decision, and heard both the Immigration Judge and DHS acknowledge the

decision's applicability to the bond hearings being conducted.  *Id.*

**II.    The motion should be denied because there is no procedural or factual basis to modify the Court's judgment, and because granting the requested relief would be prejudicial to class members.**

> *A.   The government has not identified any applicable federal rule, case law, or other authority that permits the requested relief.*

The government's motion should be denied because the government has not cited any

federal rule, case law, or other authority that would authorize the requested modification of the

Court's judgment and Permanent Injunction.  The government's approach places class counsel in

the position of having to oppose a motion without reference to any identified legal standard, a

situation the government itself has previously protested.

Most generously, the government might have argued for relief from a judgment under

Fed. R. Civ. P. 60(b)(5).  But the government has not made such an argument or presented any

evidence capable of meeting the applicable standard.  "Under Rule 60(b)(5) the defendant would have to show that 'it is no longer equitable that the judgment should have prospective application,' and that there has been the kind of 'significant change' in circumstances that the Rule requires."  *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 38 (1st Cir. 2006). Here, the government has not attempted to show either.  Accordingly, there is no basis to grant the motion under Rule 60(b)(5).

Alternatively, the government might have asked to alter or amend the judgment under Fed. R. Civ. P. 59(e).  But similarly, the government has not made an argument under Rule 59(e) or identified any justification for such relief.  Such a motion is granted only if there is a "manifest error of law, if there is newly discovered evidence, or in certain other narrow situations" that are inapplicable here.  *See Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (citation omitted).  It is not suitable for "procedural snafus."  *Id.*  Nor has the government argued that timely compliance with the Court's order was—or ever could be—a manifest injustice.  *See, e.g.*, *Fleming v. Fid. Mgmt. Tr. Co.*, 2018 U.S. Dist. LEXIS 75515, at *13 (D. Mass. May 3, 2018) (denying Rule 59(e) relief despite assertion of manifest injustice); *see also Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 408 (4th Cir. 2010) (affirming denial of Rule 59(e) relief despite assertion of manifest injustice because appellant consciously decided not to take any action to comply with court ordered deadlines).  Accordingly, there is no basis to grant the motion under Rule 59(e) either.

B. *Regardless of the applicable standard, the government has not shown any reason why it should not be required to comply with Court's judgment.*

Here, the government has not carried the heavy burden to modify a permanent injunction and final judgment.  The *Pereira Brito* requirements for bond hearings are already in effect pursuant to the judgment.  The government is consequently seeking an extraordinary order to

substitute *defective* procedures (that the Court has repeatedly found violate the Constitution) in place of the status quo.  The government's only practical justification is a purported desire to train DHS attorneys and immigration judges.  The government has not identified any reason that such training could not have been accomplished between November 27 and the present in the exercise of ordinary diligence.  Moreover, the training appears to be wholly redundant—the DHS trial attorneys reportedly *were* trained last week, and the judges are clearly aware of and are implementing the Court's decision.[2]  *See* Church Decl. ¶¶4-5; Noureddine Decl. ¶¶4-8; Nader Decl. ¶2 & Ex. A; D.E. 90, Ex. B ¶3.

      C.  *Postponing the effect of the Court's order would cause significant prejudice to class members and their counsel.*

Postponing the effective date of the Declaratory Judgment would be highly prejudicial and inequitable to the class members and their counsel.  As described above, immigration judges have relied upon the Permanent Injunction to educate members of the Pre-Hearing Class about their rights, and some class members postponed their bond hearings until after December 13 in reasonable reliance on the anticipated availability of the *Pereira Brito* requirements.  *See* Church Decl. ¶4; Noureddine Decl. ¶¶4-8.  The government is now effectively asking those class members to either agree to stay in jail for two more weeks with no detention hearing (over the holidays, no less), or agree to receive an unconstitutional hearing procedure in which the government will not be required to prove a reason to detain them.  There is no reason to force class members to choose between two unjustified deprivations of their liberty.[3]

---

[2] Indeed, after this Court's individual decisions in *Doe* and *Diaz-Ortiz*, it appears that judges in the Boston Immigration Court were able to conduct the resulting burden-shifted bond hearings without any special training.

[3] The government also seems to threaten that, if its motion is not allowed, it will simply cease providing bond hearings for some period of time.  *See* Mot. (D.E. 89) ¶5.  Any policy decision to

Additionally, the requested delay would be highly prejudicial to members of the Post-Hearing Class.  At least two class members currently have habeas petitions pending to establish the "prejudice" necessary to receive a new bond hearing.  According to the petitions, both of those class members have been detained since last June, with no constitutionally adequate detention hearing.  Beyond the pending petitions, class counsel have been contacted by numerous Post-Hearing Class members, and have made extensive preparations to begin linking class members with dozens of *pro bono* lawyers.  McFadden Decl. ¶9.

### III.    If the Court modifies the notice timeline, the Court should also allow class counsel to participate.

It is unclear why the government moved to extend a notice deadline that, according to its recent declaration (D.E. 90-1), the government had already complied with.  In all events, however, the government also has ongoing notice obligations to newly detained class members. *See* Nov. 27, 2019 Order (D.E. 88) at 23.  If (as appears to be the case) the government has encountered difficulties in the notice process, then class counsel are fully prepared to supplement that process by (for example) providing additional explanatory written materials (in multiple languages) to accompany the bare-bones, English-only notice prepared by the government.  And class counsel are fully prepared to send multi-lingual staff into the detention facilities to address groups of detained class members and explain their rights.  Consequently, although the government's motion should be denied in its entirety, class counsel respectfully request that the Court consider these measures in connection with any modification of the timeline for class member notification.

---

cease providing bond hearings would violate not only this Court's injunction to provide constitutionally adequate hearings, but also DHS's own detention regulations.  *See* 8 C.F.R. 236.1(d) (request for custody redetermination may be made "at any time" prior to final order of removal).  Bond hearings should continue to be scheduled and conducted in the ordinary course.

**IV.      Conclusion**

For all the foregoing reasons, the petitioners respectfully request that the government's motion be denied.

Respectfully submitted,

GILBERTO PEREIRA BRITO, FLORENTIN AVILA LUCAS, and JACKY CELICOURT, individually and on behalf of all those similarly situated,

By their attorneys,

  */s/    Susan M. Finegan*
Susan M. Finegan (BBO # 559156)
Susan J. Cohen (BBO # 546482)
Andrew Nathanson (BBO # 548684)
Mathilda S. McGee-Tubb (BBO # 687434)
Ryan Dougherty (BBO # 703380)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
smfinegan@mintz.com
sjcohen@mintz.com
annathanson@mintz.com
msmcgee-tubb@mintz.com
rtdougherty@mintz.com

Matthew R. Segal (BBO # 654489)
Daniel McFadden (BBO # 676612)
Adriana Lafaille (BBO # 680210)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110

(617) 482-3170
msegal@aclum.org
dmcfadden@aclum.org
alafaille@aclum.org

Gilles R. Bissonnette (BBO # 669225)
Henry R. Klementowicz (BBO # 685512)
SangYeob Kim (N.H. Bar No. 266657)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NEW HAMPSHIRE
New Hampshire Immigrants' Rights Project
Concord, NH 03301
Tel.: 603.333.2081
gilles@aclu-nh.org
henry@aclu-nh.org
sangyeob@aclu-nh.org

Michael K. T. Tan*
ACLU FOUNDATION IMMIGRANTS' RIGHTS
PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Tel: 212-549-2660
mtan@aclu.org
*Admitted *pro hac vice*

*Attorneys for Petitioners*

Dated: December 17, 2019

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

Date: December 17, 2019

                                              */s/ Susan M. Finegan*
                                              Susan M. Finegan

94767138v.1